SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
MICHAEL H. AHRENS, Cal. Bar No. 44766
STEVEN B. SACKS, Cal. Bar No. 98875
ORI KATZ, Cal. Bar No. 209561
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415-434-9100
Facsimile: 415-434-3947

Proposed Attorneys for HUMBOLDT CREAMERY, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re<br><br>HUMBOLDT CREAMERY, LLC, a Delaware limited liability company,<br><br>        Debtor.<br><br>Tax ID: 87-0736033 | Case No. 09-11078<br><br>Chapter 11<br><br>**APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT OF DUFF & PHELPS AS INVESTMENT BANKER TO THE DEBTOR**<br><br>[No Hearing Required] |

1  Humboldt Creamery, LLC, the debtor and debtor-in-possession in the above-captioned case (the "Debtor") hereby applies to this Court pursuant to Section 327 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order in the form attached hereto as <u>Exhibit A</u>: (i) authorizing the Debtor to employ Chanin Capital Partners, LLC and Duff & Phelps Securities, LLC (collectively, "Duff & Phelps") as its exclusive investment banker and financial advisor in connection with the sale of some or all of its assets, or a reorganization based on new investment, pursuant to the terms set forth in that certain engagement letter agreement between Duff & Phelps and the Debtor (the "Engagement Agreement") attached hereto as <u>Exhibit B</u>; and (ii) granting such other and further relief as this Court deems just and proper.

This Application is based on the discussion below, the Declaration of Ken Nofziger in support of this Application (the "Nofziger Declaration"), the Declaration of Len Mayer in support of this Application (the "Mayer Declaration"), the other papers of record in this bankruptcy case, and such other pleadings and evidence as may be filed in support of this Application.

In support of this Application, the Debtor and Duff & Phelps respectfully represent as follows:

## I. <u>INTRODUCTION</u>

The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 21, 2009 (the "Petition Date"). No trustee has been appointed in this case and since the Petition Date the Debtor has operated its business pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The Debtor is a Delaware limited liability company with its principal place of business located in Humboldt County, California. Its business consists of processing, distributing and marketing a wide array of dairy products, including powdered milk, fluid milk, packaged ice cream and various frozen novelty products. A more detailed

description of the Debtor's background and the events leading to the filing of this bankruptcy case is provided in the Declaration of Len Mayer in Support of First Day Motions filed concurrently herewith.

## II. NECESSITY OF SERVICES

The Debtor's exit strategy for this bankruptcy case requires the aid of an investment banker, as the strategy involves either selling all or party of the Debtor's assets under Bankruptcy Code Section 363 or through a plan of reorganization, or attracting new investment for the Debtor. The Debtor currently contemplates that it will most likely sell the assets of the Debtor as a going concern, but the Debtor remains open to pursuing a partial sale or a reorganization based on new investment capital if, after pursuing all options, any of those prove to be the best course of action for the estate, the creditors and other parties in interest. The Debtor requires the aid of an investment banker to evaluate these options, identify prospective bidders or investors, manage the bidding or investment process, and assist the Debtor in the evaluation of bids or other offers once they are received.

The Debtor believes that Duff & Phelps is particularly well-suited to accomplish these tasks given the breadth of Duff & Phelps' experience in the food and agribusiness industries. In particular, Duff & Phelps has acted as investment banker and financial advisor in several sales and investment transactions of food and agribusiness companies in the bankruptcy context.

## III. SCOPE OF SERVICES

By this Application, the Debtor seeks to employ Duff & Phelps to serve as its exclusive investment banker and financial advisor with respect to the sale of some or all of its assets, or with respect to a corporate reorganization centered around new investment into the Debtor. Pursuant to the terms of the Engagement Agreement, Duff & Phelps will perform the following services:

(a) Review and analyze the Debtor's business and financial condition as necessary for the proper marketing of the Debtor's assets for sale;

(b) Evaluate the Debtor's strategic and financial alternatives with respect to (i) a sale of assets, or (ii) a going concern sale of the Debtor;

(c) Render financial advice to the Debtor and participate in meetings or negotiations with stakeholders in connection with the above;

(d) Assist the Debtor in identifying and evaluating candidates for a potential sale transaction and preparing materials required to support any sale transaction;

(e) Contact potential parties to any Transaction (as defined in the Engagement Agreement), which includes a sale of part or all of the Debtor's assets under Bankruptcy Code Section 363 or under a Chapter 11 plan for cash, securities, or a combination thereof;

(f) Assist the Debtor in evaluating, structuring, negotiating and implementing the terms and conditions of any Transaction;

(g) Provide testimony, as necessary, with respect to matters on which Duff & Phelps has been engaged to advise the Debtor in any proceeding in this Court;

(h) Provide the Debtor with other appropriate restructuring advice; and

(i) Perform other such services as Duff & Phelps and the Debtor shall mutually agree.

Duff & Phelps has worked on over 600 engagements in the food and agribusiness industry and has a dedicated team who collectively have over 30 years of industry experience, and relationships with dairy cooperatives, fluid milk companies and ice cream companies that may prove valuable in undertaking the services described above. In particular, the Duff & Phelps professionals who will be advising and

representing the Debtor have extensive experience in the food and agribusiness industries and in arranging and managing sales of assets in the bankruptcy context. The Duff & Phelps professionals with primary responsibility for this engagement will be Ken Nofziger, managing director, H. Glen Clarke, managing director, and Brent Williams, managing director.

Duff & Phelps has been providing financial advisory and investment banking services to the Debtor since the date of the Engagement Agreement – April 17, 2009. The Engagement Agreement provides for an up front nonrefundable cash Retainer Fee (as defined in the Engagement Agreement) of $25,000, and for additional Retainer Fees to be paid upon the entry of an order approving this Application and upon certain postpetition dates as the engagement continues. Duff & Phelps received full payment on account of the initial $25,000 Retainer Fee prior to the Debtor's bankruptcy filing, and consequently does not currently hold any non-contingent claims against the Debtor.

To the best of the Debtor's and Duff & Phelps' knowledge, information and belief, Duff & Phelps is disinterested as contemplated by Bankruptcy Code Section 101(14), does not hold an interest adverse to the Debtor's estate, and with the exception of the relationship formed by the Engagement Agreement shortly before the Petition Date and the matters listed on Exhibit A to Nofziger Declaration, has no connection with the Debtor, its creditors, or other parties in interest, their respective attorneys and accountants, the United States Trustee, any person employed in the office of the United States Trustee, or the judge presiding over this Case.

### IV. TERMS OF EMPLOYMENT

The terms and conditions of Duff & Phelps' employment are set forth and described in the Engagement Agreement, the material provisions of which may be summarized as follows:

(a) <u>Retainer Fees</u>. The Engagement Agreement provides that the Debtor shall pay to Duff & Phelps an initial nonrefundable cash Retainer Fee of $25,000, which

was paid in full prior to the Petition Date.  The Engagement Agreement also provides for a second nonrefundable cash Retainer Fee of $50,000 to be paid to Duff & Phelps upon the entry of an order approving this Application, and a third nonrefundable cash Retainer Fee of $50,000 to be paid thirty days after the execution of the Engagement Agreement.  Thereafter, the Engagement Agreement provides for successive monthly Retainer Fees of $25,000 to be paid no later than the fifth day of each month thereafter until the termination of the Engagement Agreement or the occurrence of a Transaction.

    (b) <u>Transaction Fee</u>.  If a transaction is consummated during the term of the Engagement Agreement, the Debtor shall pay to Duff & Phelps a Transaction Fee on the closing of the Transaction in an amount equal to the difference between: (x) the greater of (i) 2.5% of the gross sale proceeds, or (ii) $500,000; less (y) fifty percent of the Retainer Fees; <u>provided</u>, <u>however</u>, that in no event shall the Transaction Fee be less than $500,000.

    (c) <u>Expense Reimbursement</u>.  The Debtor shall reimburse Duff & Phelps on a monthly basis for reasonable and documented out-of-pocket expenses incurred in connection with the services provided under the Engagement Agreement.  Invoices are due and payable within ten days of receipt.  Such out-of-pocket expenses include reasonable travel expenses (coach airfare), computer and research charges, attorney fees not to exceed $10,000 without the prior written consent of the Debtor, messenger services and long distance telephone services.

    (d) <u>Termination</u>.  Duff & Phelps' engagement may be terminated at any time by either party with five (5) business days' notice to the other party.  If the Debtor terminates the Engagement Agreement other than by reason of a material breach by Duff & Phelps, then the Debtor shall be liable for the Transaction Fee noted above for any Transaction consummated within twelve months following the termination.  If Duff & Phelps terminates the Engagement Agreement other than by reason of a material breach by the Debtor, then Duff & Phelps shall not be entitled to the Transaction Fee.  Other

than the scope of services, the term and termination provisions, and the fee and expense provisions, the terms of the Engagement Agreement survive the termination of the Engagement Agreement.

(f) <u>Timekeeping</u>. Duff & Phelps will not keep records of its time as its compensation is based on Retainer Fees and the closing of a Transaction, rather than on billable hours.

Of note, the fees and expense reimbursements noted above have been approved by the lenders under the proposed Debtor-in-Possession Loan Agreement and the Agreement for Use of Cash Collateral, and form a part of the "Budget" referred to in each such agreement. The Debtor has filed a motion seeking approval of the Debtor-in-Possession and Agreement for Use of Cash Collateral concurrently with the filing of this Application.

## V. CONCLUSION

WHEREFORE, in light of the foregoing, the Debtor respectfully requests that this Court enter an order substantially in the form attached hereto as Exhibit A: (i) approving this Application; (ii) authorizing the Debtor to employ Duff & Phelps as its exclusive investment banker and financial advisor to provide the services described herein on the terms and conditions recited above; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: April 23, 2009

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      */s/ Michael H. Ahrens*
MICHAEL H. AHRENS

Proposed Attorneys for Debtor,
HUMBOLDT CREAMERY, LLC