# DUFF&PHELPS

PRIVILEGED AND CONFIDENTIAL

April 17, 2009

Humboldt Creamery LLC
572 Highway 1
Fortuna, CA 95540-9711

Attention:     Len Mayer, Acting Chief Executive Officer

This letter confirms the understanding and agreement (the "Agreement") with Humboldt Creamery LLC ("Humboldt" or the "Company") concerning the engagement of Chanin Capital Partners, LLC ("Chanin") and Duff & Phelps Securities, LLC (collectively "DPS") by the Company.

1. <u>Engagement</u>: DPS is being retained to act as the exclusive financial advisor to the Company in connection with any Transaction (as defined below; collectively or individually a "Transaction") involving the Company. Upon retention, DPS will work at the reasonable request and direction of the Company and in conjunction with other advisors retained by the Company to:

    (a)   Review and analyze the Company's business and financial condition as necessary for the proper marketing of the Company's assets for sale;

    (b)   Evaluate the Company's strategic and financial alternatives with respect to (i) a sale of assets, or (ii) a going concern sale of the Company;

    (c)   Render financial advice to the Company and participate in meetings or negotiations with stakeholders in connection with the above;

    (d)   Assist the Company in identifying and evaluating candidates for a potential sale transaction and preparing materials required to support any sale transaction,

    (e)   Contact potential parties to any Transaction;

    (f)   Assist the Company in evaluating, structuring, negotiating and implementing the terms and conditions of any Transaction;

SF:247440.2

    (g)    Provide testimony, as necessary, with respect to matters on which we have been engaged to advise you in any proceeding before the Bankruptcy Court if the Company becomes the subject of a bankruptcy case as described in Paragraph 6 hereof;

    (h)    Provide the Company with other appropriate restructuring advice; and

    (i)    Perform other such services as DPS and the Company shall mutually agree.

The parties acknowledge and agree that all activities which are required to be performed by a FINRA registered broker-dealer entity will be performed by Duff & Phelps Securities, LLC. Such activities include M&A advisory, capital raising and private placements. The advisory services and compensation arrangements set forth herein do not encompass other investment banking or financial advisory services not set forth in this Paragraph 1, if any, for which DPS may be retained by the Company. Any other services will be evidenced by a separate agreement or agreements between the Company and DPS. In performing its services pursuant to this Agreement, DPS is not assuming any responsibility for the Company's decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Transaction; and DPS will not act, or be deemed to have acted, in any managerial or fiduciary capacity whatsoever for the Company. DPS makes no representations or warranties concerning the Company's ability to successfully improve its operations, maintain or secure sufficient liquidity to operate its business or successfully complete a Transaction. The Company agrees that DPS shall not have any obligation or responsibility to provide accounting, audit, or "crisis management" services for the Company and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements, or to provide any valuation opinions or any advice or opinions with respect to solvency in connection with any Transaction. The Company confirms that it will rely on its own counsel, accountants, and similar expert advisors for legal, accounting, tax and other similar advice.

The duties being performed by DPS shall be performed primarily by Ken Nofziger, Glen Clarke, and Brent Williams, using the additional services of such other individuals as they consider appropriate.

2.    <u>Term of Agreement</u>: This Agreement shall commence as of the date of this letter and shall continue until the consummation of a Transaction; provided that either party

    may terminate this Agreement upon 5 business days notice to the other party. If the Company terminates this Agreement other than due to a material breach by DPS, the Company shall be liable for the Transaction Fee provided in paragraph 3(b) below for any Transaction consummated within the twelve months following termination. If DPS terminates this Agreement other than due to a material breach by the Company, then it will not be entitled to the Transaction Fee. The provisions of Paragraphs 4 through 16 and Schedule I shall survive the termination of this Agreement and shall remain in effect.

3.     <u>Fees and Expenses</u>: As compensation for the services rendered by DPS hereunder, the Company shall pay DPS as follows:

    (a)     <u>Retainer Fees</u>: The Company shall be liable for and shall pay to DPS a nonrefundable cash retainer fee ("Retainer Fee") of $25,000 upon execution of this Agreement. In addition, the Company shall pay to DPS a second nonrefundable cash Retainer Fee of $50,000 upon bankruptcy court approval of this agreement, a third nonrefundable cash Retainer Fee of $50,000 thirty days after the execution of this Agreement, followed by monthly nonrefundable cash Retainer Fees of $25,000 per month, which amounts shall be paid in advance no later than the fifth day of each month thereafter of the engagement through the earlier of (i) termination of this agreement in accordance with Paragraph 2 hereof or (ii) the effective date of a Transaction.

    (b)     <u>Transaction Fee</u>: In addition, if during the term of this engagement, any Transaction is consummated, DPS shall be entitled to receive a Transaction Fee in cash, contingent upon the consummation of a Transaction and payable at the closing thereof, equal to the greater of 2.5% of the gross sale proceeds or $500,000, reduced by fifty percent (50%) of the Retainer Fees, provided that in no event shall the Transaction Fee paid to DPS be less than $500,000..

    "Transaction" means the sale of any assets of the Company under Section 363 of the Bankruptcy Code or through a chapter 11 plan for cash, securities, or a combination thereof.

    (c)     <u>Expense Reimbursement</u>: The Company shall reimburse DPS on a monthly basis for its reasonable and documented out-of-pocket expenses incurred in connection with the services to be provided under this Agreement within ten days after being invoiced by DPS for such expenses. Out-of-pocket

        expenses shall include, but not be limited to, all reasonable travel expenses (coach airfare), computer and research charges, attorney fees (not to exceed $10,000 without the prior written consent of the Company,) messenger services and long-distance telephone calls incurred by DPS in connection with the services to be provided to the Company.

4.  **Company Information and Coordination**: DPS acknowledges that the Company has advised it that the Company's historical financial statements are inaccurate and cannot be relied upon; however the Company recognizes that in order to effectively provide the services contemplated hereunder, DPS requires certain information regarding the Company. Accordingly, the Company will use its best efforts to provide DPS with accurate current information as well as information concerning previous periods (the "Information"). The Company recognizes and confirms that in rendering services hereunder, DPS will not be responsible for creating financial or other information for the Company and that DPS shall not be liable for inaccuracies in any such information. The Company also acknowledges and agrees that DPS will use and rely on, and assume the accuracy of, without any independent verification, data, material and other information furnished to DPS by or on behalf of the Company or other third parties (including their agents, counsel, employees and representatives). The Company understands that DPS will not be responsible for independently verifying the accuracy of the Information. Any projections provided by the Company will have been prepared in good faith and will be based upon assumptions which, in light of the circumstances under which they are made, are reasonable. Furthermore, the Company will reasonably cooperate with DPS in all phases of its financial advisory services.

    In order to coordinate efforts to effect a Transaction, during the period of DPS's engagement hereunder, neither the Company nor any other person acting on the Company's behalf shall, directly or indirectly (except through DPS), solicit any offer from any party to enter into a Transaction or other corporate transaction which would effect a Transaction without promptly informing DPS of such discussions. In order that DPS can evaluate the party and its interest and assist the Company in any subsequent discussions, the Company will promptly inform DPS of: any parties (a) previously contacted within the six months immediately preceding the date of this Agreement with respect to or interested in a Transaction; and (b), during the period of DPS's engagement hereunder, which are in contact concerning the possibility of a Transaction. In addition, during the term of this Agreement, DPS will promptly inform the Company if DPS is contacted by any third party with respect to the Company.

5.     <u>Indemnification</u>: The Company shall provide indemnification and shall satisfy other obligations set forth in Schedule I hereto, which is an integral part hereof and is hereby incorporated by reference. DPS agrees that it shall not seek disgorgement from any holder of administrative claims against the Company in the event of the Company's inability to satisfy any indemnification obligations it has hereunder. Further, if an Indemnified Person (as defined in Schedule I) is requested or required to appear as a witness in any Action (as defined in Schedule I) that is brought by or on behalf of or against the Company or that otherwise relates to this Agreement or the services rendered by DPS hereunder, the Company shall, subject to the provisions of Schedule I, reimburse DPS and the Indemnified Person for all reasonable expenses incurred by them in connection with such Indemnified Person appearing or preparing to appear as such a witness, including without limitation, the reasonable fees and disbursements of legal counsel. The foregoing reimbursement obligation does not cover testimony at court hearings in support of motions to sell property or confirm a chapter 11 plan or other similar hearings in the Company's bankruptcy case ("Standard Bankruptcy Hearings"). DFS representatives appearing at Standard Bankruptcy Hearings shall be entitled to reimbursement of out of pocket expenses as provided in this Agreement, but not for expenses of legal counsel.

6.     <u>Bankruptcy Court Approval</u>: DPS understands that the Company expects to commence a Chapter 11 case. When a case is commenced, the Company shall timely seek an order of the bankruptcy court in which such Chapter 11 case was commenced authorizing the Company to employ DPS as a professional person pursuant to sections 327 and 328 of the Bankruptcy Code, but with compensation subject to the reasonableness standard of review provided in section 330(a) of the Bankruptcy Code, pursuant to and consistent with the terms of this Agreement. The parties agree to submit to the jurisdiction of the bankruptcy court any disputes between them following the commencement of a bankruptcy case by the Company.

7.     <u>Entire Agreement</u>: This Agreement represents the entire Agreement between the parties and may not be modified except in writing signed by both parties. This Agreement may be executed in counterparts, each of which shall constitute an original. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision.

8.     <u>Affiliation</u>: The Company recognizes that DPS has been retained only by the Company and that the Company's engagement of DPS is not deemed to be on behalf of, and is not intended to and does not confer rights upon, any security holders of the Company or any officers, agents, employees or representatives of either the

SF:247440.2

      Company or any of the Company's affiliates. No one other than the Company is authorized to rely upon the engagement of DPS hereunder or any statements, advice, opinions or conduct of DPS.

9.    Confidentiality: Except as contemplated by the terms hereof or as otherwise may be necessary for DPS to carry out its obligations hereunder, and except as required by applicable law and regulations or by a governmental authority or court of competent jurisdiction, DPS shall keep confidential all material nonpublic information provided to it by the Company until the earlier to occur of (i) the date eighteen months from the date of this agreement or (ii) the date such information shall have been made publicly available by the Company or by others without breach of a confidentiality agreement, and shall not disclose such information to third parties other than to such of its employees and advisors as DPS determines have a need to know without the consent of the Company. Except as may be required by applicable law and regulations or by a governmental authority or court of competent jurisdiction, any advice to be provided by DPS pursuant to its engagement hereunder shall not be disclosed publicly or made available to third parties by the Company.

10.   Advertisements: Upon completion of the transactions contemplated by this Agreement, DPS may place advertisement in financial and other media at its own expense describing its services to the Company hereunder.

11.   Choice of Law: This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed by and construed in accordance with the laws of the State of New York without regard to the principles of conflicts of law.

12.   Power and Authority: The Company has all requisite corporate power to enter into this Agreement. This Agreement has been duly authorized by all necessary corporate action on the part of the Company and has been duly executed and delivered by the Company and constitutes a legal, valid and binding agreement of the Company, enforceable in accordance with its terms.

13.   Representations, Warranties and Covenants: The Company further represents, warrants and covenants to DPS that:

    (a)   neither the Company nor its affiliates have taken any action that would give any brokers, representatives, finders or other persons an interest in the compensation due to DPS in connection with any transaction contemplated

        herein and there are no other financial advisors or similar persons entitled to receive compensation from the Company in connection with any transaction contemplated herein; and

    (b)    Until the termination of this Agreement, the Company will not solicit or negotiate with or retain any other financial advisor, placement agent or underwriter in connection with a Transaction.

14. <u>No Third Party Claims</u>: Other than Chanin and Duff & Phelps Securities, LLC, no (a) direct or indirect holder of any equity interests or securities of DPS whether such holder is a limited or general partner, member, stockholder or otherwise, (b) affiliate of DPS, or (c) director, officer, employee, representative, or agent of DPS, or of an affiliate of DPS or of any such direct or indirect holder of any equity interests or securities of DPS (collectively, the "Party Affiliates") shall have any liability or obligation of any nature whatsoever in connection with or under this letter Agreement or the transactions contemplated hereby, and the Company waives and releases all claims against such Party Affiliates related to any such liability or obligation.

15. <u>Successors and Assigns</u>: The benefits of this Agreement, together with Schedule I hereto, shall inure to the respective successors and permitted assigns of the Parties hereto and any Indemnified Person, and their respective successors, permitted assigns and representatives, and the obligations and liabilities assumed in this Agreement by the Parties hereto shall be binding upon their respective successors and assigns. This Agreement and Schedule I hereto may not be assigned by contract without the prior written consent of the non-assigning party (or parties). If the form of Transaction is a sale of substantially all of the assets of the Company other than in connection with a bankruptcy case of the Company, the Company shall assure that the obligations of the Company hereunder shall be assumed by such purchaser.

16. <u>Other Matters</u>: If this letter correctly sets forth our Agreement on the matters covered herein, please so indicate by signing and returning the enclosed copy of this letter and signing and retaining the duplicate we are enclosing for your records. Upon execution by both parties, this letter will constitute a legally binding Agreement between the Company and DPS.

SF:247440.2

We trust the foregoing terms and provisions are agreeable to you, and request that you sign and return the enclosed copy of this Agreement to us at your earliest convenience.

SF:247440.2

Humboldt Creamery LLC
April 17, 2009
Page 9 of 13

Very truly yours,

**DUFF & PHELPS SECURITIES LLC**

By: _____
Mr. Ken A. Notziger
Managing Director

By: _____
Mr. H. Glen Clarke
Managing Director

**CHANIN CAPITAL PARTNERS, LLC**

By: _____
Mr. Brent C. Williams
Managing Director

Agreed and Accepted:

**HUMBOLDT CREAMERY LLC**

By: _____
Mr. Len Mayer
Acting Chief Executive Officer

SF:247440.2

Very truly yours,

**DUFF & PHELPS SECURITIES LLC**

By:_____
    Mr. Ken A. Nofziger
    Managing Director


By:_____
    Mr. H. Glen Clarke
    Managing Director

**CHANIN CAPITAL PARTNERS, LLC**

By:_____
    Mr. Brent C. Williams
    Managing Director

Agreed and Accepted:

**HUMBOLDT CREAMERY LLC**

By:_____
    Mr. Len Mayer
    Acting Chief Executive Officer

SF:247440.2

SCHEDULE I

INDEMNIFICATION PROVISIONS

A.  <u>Indemnification</u>. To the fullest extent lawful, the Company will promptly, upon demand, indemnify and hold harmless Chanin Capital Partners, LLC and Duff & Phelps Securities, LLC (collectively "DPS"), and each director, officer, employee, agent, member and controlling person of DPS or its affiliates (any or all of the foregoing hereinafter referred to as an "Indemnified Person"), from and against all losses, claims, damages, reasonably documented expenses (including reasonable fees and disbursements of counsel and accountants), reasonably documented costs (including, without limitation, expenses, fees and disbursements and time charges related to giving testimony or furnishing documents in response to a subpoena or otherwise) and liabilities (joint or several), (collectively, "Losses"), as and when incurred, resulting directly or indirectly from any threatened or pending investigation, action, claim, proceeding or dispute, including securityholder actions (whether or not DPS or any other Indemnified Person is a potential or actual named party or witness) (collectively, a "Claim"), which (1) are related to or arise out of any untrue statement or alleged untrue statement of a material fact contained in any oral or written information provided to DPS or any other person by the Company or used by the Company in connection with the transaction contemplated by the engagement letter or any omission or alleged omission by the Company to state therein a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, or (2) are otherwise related to or arise out of DPS's engagement, role, activities or the performance or non-performance of professional services on the Company's behalf. The Company will not be responsible, however, for any portion of any Losses pursuant to clause (2) of the preceding sentence which are judicially determined to have resulted primarily from the willful misconduct or gross negligence of any Indemnified Person seeking indemnification hereunder; but pending any such judicial determination, the Company shall continue to be obligated on, and shall continue to perform its indemnification and reimbursement obligations. Each Indemnification Person shall promptly repay the Company such portion of any Losses previously paid to such Indemnified Person pursuant to this Schedule I or Section 5 of the Agreement in relation to the act or omission that is the subject of the judicial determination referred to above. The Company also agrees that neither DPS nor any Indemnified Person shall have any liability to the Company, its owners, parents, creditors or securityholders for or in connection with its engagement, except such liability for Losses incurred by the Company which are judicially determined to have resulted primarily from DPS's willful misconduct or gross

SF:247440.2

negligence. For purposes of the foregoing, "judicially determined" shall mean determined by a court of competent jurisdiction in a final non-appealable judgment on the merits.

      B.    Proceedings. DPS will notify the Company if it learns that any investigation, lawsuit, administrative proceeding or self-regulatory organization proceeding has been instituted based, directly or indirectly, on the transactions which were the subject of DPS's engagement under the Agreement, although failure to do so will not relieve the Company from any obligation or liability it has hereunder or otherwise, except to the extent such failure causes the Company to forfeit substantial rights and defenses. Should any lawsuit, administrative proceeding or self-regulatory organization proceeding (collectively, a "Proceeding") be formally instituted against DPS or any Indemnified Person based, directly or indirectly, on DPS's engagement under the Agreement, the Company will be entitled to participate therein and, to the extent that it may wish, to assume the defense of the Proceeding, with counsel reasonably satisfactory to DPS, so long as the Company continues to pay all costs and expenses of the defense and preparation for such Proceeding. Even if the Company assumes the defense of a Proceeding, each Indemnified Person will have the right to participate in such Proceeding and to retain its own counsel at such Indemnified Person's own expense. Furthermore, each Indemnified Person shall have the right to employ its own counsel in any Proceeding and to require the Company to pay all reasonable fees and expenses of such counsel as they are incurred if (1) such Indemnified Person has been advised by such counsel that there may be legal defenses available to it which are different from or additional to defenses available to the Company, (2) the Company shall not have assumed the defense of the Proceeding and employed counsel reasonably satisfactory to such Indemnified Person in a timely matter or (3) the Company shall have authorized the employment of such counsel in connection with the defense of the Proceeding.

      C.    Contribution. If any indemnification sought by an Indemnified Person pursuant to the terms hereof is held by a court of competent jurisdiction to be unavailable for any reason (other than as a result of the gross negligence or willful misconduct of any such Indemnified Person) or insufficient to hold such Indemnified Person harmless, then the Company and DPS will contribute to the Losses for which such indemnification is held unavailable or insufficient (1) in such proportion as is appropriate to reflect the relative benefits received from the proposed transaction by the Company on the one hand and the Indemnified Person on the other, in connection with DPS's engagement referred to above (whether or not the transaction contemplated by the engagement is consummated) or (2) if (but only if) the allocation provided in clause (1) is for any reason unenforceable, in such proportion as is appropriate to reflect not only the relative benefits received from the proposed transaction by the Company on the one hand and the Indemnified Person on the

SF:247440.2

other, but also the relative fault of the Company and the Indemnified Person, as well as any other relevant equitable considerations. No person found liable for fraudulent misrepresentation shall be entitled to contribution from any person who is not also found liable for such fraudulent misrepresentation. It is hereby agreed that for purposes of clause (1) above, the relative benefit to the Company on the one hand and DPS on the other, with respect to DPS's engagement, shall be deemed to be in the same proportion as (x) the total value paid or proposed to be paid or received by the Company or its stockholders, as the case may be pursuant to the transaction, whether or not consummated, for which DPS is engaged to render financial advisory services bears to (y) the fee paid or proposed to be paid to DPS in connection with such engagement (excluding reimbursable expenses).

D. <u>Settlement of Claims</u>. The Company will not, without the prior written consent of DPS which consent will not be unreasonably withheld, settle or compromise or consent to the entry of any judgment in any pending or threatened Claim or Proceeding in respect of which indemnification could be sought hereunder (whether or not DPS or any Indemnified Person is an actual party to such Claim or Proceeding) unless such settlement, compromise or consent includes provisions holding harmless and unconditionally releasing DPS and each other Indemnified Person hereunder from all liability related to or arising out of such Claim or Proceeding, including claims for contribution. The Company shall not be liable for any settlement of any Claim effected by DPS without its written consent (which consent shall not be unreasonably withheld).

E. <u>Miscellaneous</u>. The obligations of DPS are solely corporate obligations. No director, officer, employee, agent, shareholder or controlling person of DPS shall be subjected to any liability to any person, nor will any such claim be asserted by or on behalf of any other party to this Agreement. The Company's indemnity, reimbursement and contribution obligations provided for herein are solely corporate obligations and shall: (1) be in addition to any liability that the Company otherwise may have to DPS and any rights that DPS or any Indemnified Person may have at common law or otherwise; (2) survive the completion or termination of professional services rendered by DPS under the Agreement; (3) apply to any activities prior to this date and any amendment, modification or future addition to DPS's engagement; and (4) inure to the benefit of the heirs, personal representatives, successors, and assigns of DPS and each other Indemnified Person.

If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

SF:247440.2

Humboldt Creamery LLC
April 17, 2009
Page 13 of 13

The Company hereby consents to personal jurisdiction and service and venue in any court in which any Claim and Proceeding which is subject to the terms provided for herein is brought against DPS or any other Indemnified Person. THE PARTIES WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR PROCEEDING RELATED TO OR ARISING OUT OF DPS'S ENGAGEMENT, ANY TRANSACTION OR CONDUCT IN CONNECTION THEREWITH OR THIS AGREEMENT.

SF:247440.2