

Signed: June 08, 2009

_____
ALAN JAROSLOVSKY
U.S. Bankruptcy Judge
_____

| | |
|---|---|
| 1 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
| 2 |   A Limited Liability Partnership     Including Professional Corporations |
| 3 | MICHAEL H. AHRENS, Cal. Bar No. 44766 |
| 4 | STEVEN B. SACKS, Cal. Bar No. 98875 |
| 5 | ORI KATZ, Cal. Bar No. 209561 |
| 6 | Four Embarcadero Center, 17th Floor San Francisco, California 94111-4109 |
| 7 | Telephone: 415-434-9100 Facsimile: 415-434-3947 |

Attorneys for HUMBOLDT CREAMERY, LLC

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SANTA ROSA DIVISION

| | |
|---|---|
| In re | Case No. 09-11078 |
| HUMBOLDT CREAMERY, LLC, a Delaware limited liability company | Chapter 11 |
| Debtor. | **FINAL ORDER AUTHORIZING POST-PETITION FINANCING AND GRANTING LIENS AND SUPERPRIORITY CLAIMS** |
| Tax ID: 87-0736033 | |
| | Date: June 3, 2009<br>Time: 9:30 a.m.<br>Place: United States Bankruptcy Court<br>Fifth & H Street,<br>Eureka, CA 95501<br>Judge: Hon. Alan Jaroslovsky |

The Debtor's Emergency Motion for Interim and Final Order (I) Authorizing Post-Petition Financing and Granting Liens and Superpriority Claims, (II) Authorizing Use of Cash Collateral, (III) Authorizing Immediate Payment of Certain Administrative Claims, (IV) Authorizing Use of Existing Bank Accounts, and (V) Providing Related Relief (the "<u>Motion</u>") came on for final hearing on June 3, 2009 at 9:30 a.m.

The above-captioned debtor (the "<u>Debtor</u>") appeared through its counsel, Sheppard Mullin Richter & Hampton LLP. Other parties appeared as noted in the record. Any objections to the Motion either were withdrawn or are hereby overruled.

**THE COURT FINDS AND DETERMINES THAT:**

A. On April 21, 2009 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Northern District of California, Santa Rosa Division (the "<u>Court</u>"). The Debtor has retained possession of its assets and operates its business as a debtor in possession, pursuant to Sections 1107 and 1108 of the Bankruptcy Code. An official committee of unsecured creditors (the "<u>Creditors Committee</u>") was appointed on April 27, 2009.

B. By the Motion, the Debtor seeks authorization to incur post-petition indebtedness (the "<u>DIP Financing</u>"), pursuant to a Final Debtor in Possession Loan Agreement (as it might be modified or amended from time to time, the "<u>DIP Credit Agreement</u>") between the Debtor, CoBank ACB (the "<u>DIP Agent</u>") and the lenders specified in the DIP Credit Agreement (the "<u>DIP Lenders</u>") and a Budget (the "<u>Budget</u>") a copy of which was originally filed in connection with the Motion in the docket of this Court as Docket Entry No. 17. This Budget remains in effect until such time as the Debtor and the DIP Agent agree on a revised budget; provided, however, that the carve-out for the professional fees for the Creditors Committee shall be in the amount of $100,000 instead of the $50,000 included in the Budget as a result of a clerical error. A copy of the DIP Credit Agreement was filed with this Court on June 8, 2009, as a supplemental exhibit to the

-1-

Motion. The Motion also requests that the Court grant liens, security interests and superpriority claims to the DIP Agent on behalf of the DIP Lenders.

C. The Court has jurisdiction to consider the Motion and the relief requested therein under 28 U.S.C. §§ 157(b) and 1334. This Order is entered in a "core" proceeding, as defined in 28 U.S.C. §§ 157(b)(2)(D) and (M).

D. The Debtor has an immediate need to obtain financing in order to permit the continuation of its business pending the orderly sale of assets being planned by the Debtor. Without such financing, the Debtor would not have sufficient funds to carry on its business and would be forced to shut down business operations.

E. The Debtor is unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code or pursuant to Sections 364(a) and 364(b) of the Bankruptcy Code. The Debtor also is unable to obtain secured credit allowable under Sections 364(c)(2) or 364(c)(3) of the Bankruptcy Code, except under the terms and conditions set forth in this Order.

F. The terms of the DIP Financing have been negotiated in good faith and at arm's length and without collusion between the Debtor, the DIP Agent and the DIP Lenders, and are fair and reasonable under the circumstances.

G. Any credit extended and loans made by the DIP Lenders pursuant to the DIP Credit Agreement shall be deemed to have been extended in good faith, as that term is used in Section 364(e) of the Bankruptcy Code. Based on the foregoing, the DIP Lenders shall be given all of the protections provided by Section 364(e) of the Bankruptcy Code to entities that have extended credit in good faith.

H. The relief requested in the Motion with respect to the DIP Financing is necessary, essential and appropriate for the continued operations of the Debtor's business and the management and preservation of its property. Allowing the Debtor to enter into and perform under the DIP Credit Agreement furthers the best interests of the Debtor's estate.

I. The Debtor has served the Motion and notice of this hearing in accordance

with Federal Rule of Bankruptcy Procedure 4001(d) and the applicable local rules of this Court, on the United States Trustee, its prepetition lenders and their agent, the DIP Agent and the DIP Lenders, the Debtor's 20 largest unsecured creditors, the Creditors Committee, other parties with liens or security interests of record, and any party having requested special notice in this case. Such notice was adequate and sufficient under the circumstances of this case.

Based on the foregoing,

**IT IS HEREBY ORDERED AND ADJUDGED THAT:**

1. The Motion is **GRANTED**.

2. The Debtor is authorized to borrow, pursuant to the DIP Credit Agreement, an aggregate amount not to exceed $3,000,000.

3. The terms and conditions of the DIP Financing and the Loan Documents (as defined in the DIP Credit Agreement), including the Budget, are hereby approved in all respects and shall be binding upon the Debtor and other parties in interest. The Budget is hereby approved. The Debtor and the DIP Agent are authorized to agree to amendments to the Budget without further notice or approval of this Court; provided that (a) the Budget shall not be amended without further order of this Court to increase the maximum principal amount in excess of $3,000,000, and (b) prior notice of any amended Budget shall be provided to counsel for the Creditors Committee. In furtherance of the foregoing, the Debtor is authorized and directed to do and perform all acts, and to make, execute and deliver all instruments and documents that may be reasonably required or necessary for the Debtor's performance under the DIP Credit Agreement.

4. As security for the DIP Obligations, the Debtor is authorized to grant to the DIP Agent, and the Court by this order hereby grants to the DIP Agent, a lien and security interest (the "<u>DIP Lien</u>") for the benefit of the DIP Lenders on all real and personal property of the Debtor (the "<u>DIP Collateral</u>"), whether acquired before or after the Petition Date, but not including avoidance actions under Bankruptcy Code Sections 544, 545, 547, or 548 and

the proceeds thereof. The DIP Lien shall be immediately and automatically perfected upon entry of this Order and the DIP Agent shall not be required to file financing statements, deeds of trust, or other documents to perfect the DIP Lien, although the DIP Agent may file such documents, or this Order, in its discretion.

5. Pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code, and subject to the Carveout (as defined below), the DIP Lien shall be of first priority with respect to all DIP Collateral other than equipment and real property (and any personal property that relates to ownership or operation of real property such as permits, licenses, and the like) (the "Fixed Assets"), and the DIP Lien shall be senior to any other security interests or liens on such property. With regard to the Fixed Assets, the DIP Lien shall be junior in priority to any liens or security interests that on the Petition Date constituted valid, perfected and non-avoidable liens on any of the Fixed Assets.

6. As security for the DIP Obligations, the DIP Agent is hereby granted, pursuant to Section 364(c)(1) of the Bankruptcy Code, a claim (the "Superpriority Claim") with priority over any and all administrative expenses or other claims of the kind specified in, or ordered pursuant to, Sections 105, 326, 327, 328, 330, 331, 503(b), 506(c), 507(a), the "equity" exception in Section 552(b), 726 or any other provision of the Bankruptcy Code (whether in this case or in any subsequent case filed by the Debtor) subject to the payment of the Carveout (as defined below).

7. The automatic stay of Section 362 of the Bankruptcy Code is modified to the extent necessary to permit the Debtor to grant the DIP Lien and to perform the Debtor's obligations under the DIP Loan Documents and to permit the DIP Agent to deliver a notice to the Debtor (the "Default Declaration Notice") that an Event of Default has occurred under the DIP Loan Documents, to terminate funding commitments under the DIP Loan Documents, and declare the DIP Financing to be due and payable. A copy of any such Default Declaration Notice shall also be delivered to counsel to the Creditors Committee.

8. After delivery of a Default Declaration Notice, (a) the Debtor shall not use any

Cash Collateral (as defined in the Bankruptcy Code) without consent of the DIP Agent (a copy of any such consent shall be provided to counsel for the Creditors Committee) or approval of this Court (other than for payroll related expenses incurred in the ordinary course consistent with the Budget), (b) the Debtor shall be entitled to a hearing on use of Cash Collateral upon 48 hours prior notice to the DIP Agent, the United States trustee, and any official committee appointed in the Chapter 11 Case, and (c) the DIP Agent shall be entitled to a hearing on a motion for relief from the automatic stay upon 48 hours prior notice to the Debtor, the United States trustee, and any official committee appointed in the Chapter 11 Case (and any such notices may be delivered by email or facsimile). The DIP Agent shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.

9. No borrowings under the DIP Financing shall be used to (a) challenge the validity, priority, perfection, or enforceability of obligations owed to the DIP Lenders or the Debtor's prepetition lenders, or to challenge any liens or security interests held by the DIP Agent or by the agent for the Debtor's prepetition lenders, (b) assert any claims, counterclaims, or defenses against the DIP Agent, the DIP Lenders, or any prepetition lenders or their agent or their affiliates, including any avoidance actions, or (c) prevent, hinder or otherwise delay the DIP Agent's, the DIP Lenders' or the prepetition lenders or their agent's exercise of any remedies with respect to their collateral or loan documents (the items in the foregoing clauses (a), (b), and (c) being the "Adverse Actions"). The foregoing clauses (a) and (b) shall not preclude the use of borrowings under the DIP Financing by the Creditors Committee to investigate the matters referred to in such clauses.

10. The DIP Liens and the Superpriority Claim shall be subordinated to the following (the "Carveout"): (a) the compensation and expense reimbursement (other than for professional fees and expenses) allowed to a trustee in any successor Chapter 7 case, (b) unpaid fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930, (c) the Debtor's Professionals Carveout Amount (as defined in the DIP Credit Agreement), and

(d) allowed fees and expenses of professionals for the Committee to the extent such fees and expenses were incurred before the occurrence of an Event of Default (as defined in the DIP Loan Documents) and do not exceed (i) $100,000 in the aggregate, and (ii) with respect to any fees incurred in connection with the investigation of the claim of the Prior Lender, such fees shall not exceed $10,000; provided that the foregoing shall be reduced by the amount of any fees paid to such professionals during the Chapter 11 Case. Notwithstanding the foregoing, the Carveout shall not include any fees or expenses in connection with any Adverse Actions nor shall any amounts paid with respect to the Carveout reduce any amount owed to the DIP Agent or the DIP Lenders. Neither the DIP Agent nor the DIP Lenders shall be responsible for payment of any amounts constituting the Carveout.

11. The protection afforded to the DIP Agent and the DIP Lenders under this Order and the Loan Documents shall survive the entry of any order confirming a plan or converting this case to chapter 7, and the DIP liens and the Superpriority Claim shall continue and shall maintain their priority as provided by this Order until the DIP Obligations have been paid in full in cash.

12. No claim having a priority superior to or *pari passu* with that granted by this Order to the DIP Agent shall be granted while any portion of the DIP Financing or the commitment thereunder remains outstanding. The DIP Lien shall not be (a) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under Section 551 of the Bankruptcy Code, or (b) subordinated to or made *pari passu* with any other lien or security interest under Section 364(d) of the Bankruptcy Code, or otherwise.

13. If an order dismissing this case is entered at any time, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that the DIP Lien shall continue in full force and effect with the priority provided in this Order.

14. The obligations of the Debtor under this Order shall not be discharged by the entry of an order confirming a plan in this case, unless the DIP Obligations are

unconditionally and indefeasibly repaid in full, in cash, as a condition to the effectiveness of any such plan.

15. The provisions of this Order are expressly intended by all parties to be in lieu of any right to surcharge the expenses of bankruptcy administration to the DIP Collateral or any expenses arising or accruing prior to the delivery of a Default Declaration Notice by the DIP Agent, whether pursuant to Section 506(c) of the Bankruptcy Code or otherwise. Nothing contained in this Order shall be construed as an agreement or consent by (a) the DIP Agent or the DIP Lenders to be surcharged for any of the Debtor's post-petition expenses, and (b) the Debtor to waive its rights under Section 506(c) of the Bankruptcy Code after Delivery of a Default Declaration Notice.

16. If any provision of this Order is hereafter modified, vacated or stayed by a subsequent order of this or any other court, for any reason, such modification, vacatur or stay shall not affect the validity of (a) any liability incurred pursuant to this Order prior to the effective date of such modification, vacatur or stay, or (b) the validity, priority, extent or enforceability of any lien or security interest granted hereunder.

17. Other than as expressly provided herein or in the DIP Credit Agreement, nothing in this Order shall be deemed a waiver by the Debtor, the DIP Agent, the DIP Lenders or any prepetition lenders or their agent of any claim, right or remedy held by any of them.

18. This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon the Court's execution hereof.

19. A separate order of this Court (the "<u>Cash Collateral Order</u>") approves a final agreement of the use of CoBank, ACB's cash collateral (the "<u>Cash Collateral Agreement</u>"). Notwithstanding anything to the contrary in this Order, the DIP Credit Agreement, the Cash Collateral Agreement and the Cash Collateral Order:

(a) The Debtor may seek relief from the Court with respect to the use of cash collateral, and all parties reserve their rights and defenses with respect to any such request;

Case: 09-11078    Doc# 103    Filed: 06/08/09    Entered: 06/08/09 12:43:42    Page 8 of 9

(b) All Court approved professionals under Sections 327 and 330 of the Bankruptcy Code shall have pro-rata claims against the aggregate amount carved-out for all such professionals, subject to the Court's discretion;

(c) The Debtor retains all discretion and authority to manage the case and propose a chapter 11 plan without prejudice to the rights of all other parties under this and previously entered orders of the Court;

(d) Any pre-petition claim of the Agent or the Lenders shall not be secured by Additional Collateral or its proceeds;

(e) The Debtor may surcharge the DIP Agent's and the DIP Lender's Cash Collateral for unpaid expenses that are permitted by the Budget and that were incurred by the Debtor before an Event of Default; and

(f) The Superpriority Claim shall not extend to the avoidance actions or their proceeds.

**\*\* END OF ORDER \*\***