**Entered on Docket**
**June 08, 2009**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA




**Signed: June 08, 2009**

ALAN JAROSLOVSKY
U.S. Bankruptcy Judge

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
MICHAEL H. AHRENS,
Cal. Bar No. 44766
STEVEN B. SACKS,
Cal. Bar No. 98875
ORI KATZ,
Cal. Bar No. 209561
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415-434-9100
Facsimile: 415-434-3947

Attorneys for HUMBOLDT CREAMERY, LLC

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SANTA ROSA DIVISION**

In re

HUMBOLDT CREAMERY, LLC, a Delaware limited liability company

Debtor.

Tax ID: 87-0736033

Case No. 09-11078

Chapter 11

**FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL**

Date: June 3, 2009
Time: 9:30 a.m.
Place: United States Bankruptcy Court
Fifth & H Street,
Eureka, CA 95501
Judge: Hon. Alan Jaroslovsky

The Emergency Motion for Use of Cash Collateral (the "Motion") filed by Humboldt Creamery, LLC, Debtor and Debtor in Possession herein (the "Debtor"), came on for an interim hearing on April 22, 2009 and for a final hearing on June 3, 2009. Ori Katz, Esq., appeared on behalf of the Debtor, and other appearances were made as noted in the record.

The Court having considered the Debtor's Motion, and all papers on file herein; and having heard the argument of counsel and matters presented at the time of hearing; .

**IT IS HEREBY ORDERED THAT**:

1. The Final Agreement for Use of Cash Collateral (the "Agreement") entered into between Debtor and secured creditor CoBank, ACB (the "Agent") and filed on June 8, 2009 as a supplemental exhibit to the Motion, is hereby approved in all respects, except as specifically modified by the provisions of this Order. Capitalized terms used in this Order but not defined herein shall have the meaning given to them in the Agreement. The Debtor is authorized to enter into the Agreement, and the terms of the Agreement shall be binding upon the Debtor and the Debtor's estate. The Debtor shall be authorized to use Cash Collateral on the terms and conditions set forth in the Agreement.

2. As adequate protection for the Debtor's use of the Agent's Cash Collateral, the Agent shall have and is hereby granted the Replacement Lien, effective as of the filing of the petition for relief. Subject to the following paragraph, the Replacement Lien on Postpetition Like-kind Collateral shall have the same priority, validity, and extent as the Agent's lien on Prepetition Collateral. Subject to the following paragraph, the Replacement Lien on Postpetition Like-kind Collateral shall have the same priority, validity and extent as the Agent's lien on Prepetition Collateral. The Replacement Lien on Additional Collateral shall be subordinate to any liens on such Additional Collateral that on the Petition Date are valid and enforceable and not subject to avoidance.

3. The Replacement Lien shall have priority over other liens and claims to the extent set forth in this paragraph:

(a) The Replacement Lien on Postpetition Like-kind Collateral shall be subordinate to the obligations owed under the DIP Loan Agreement and to the Carveout (as

Case: 09-11078 Doc# 104 Filed: 06/08/09 Entered: 06/08/09 12:47:46 Page 2 of 5

defined below); and

(b) The Replacement Lien on Additional Collateral shall be subordinate to the obligations owed under the DIP Loan Agreement, the Carveout, and the expenses of administration (including professional fees) of a superseding chapter 7 case.

4. In addition to the Replacement Lien, the Secured Obligation shall constitute an administrative expense (the "Superpriority Claim") allowable under § 503(b) of the Bankruptcy Code with a priority over all other administrative expenses of the kind specified in §§ 503(b), 507(a), and 507(b) of the Bankruptcy Code, save and except for (a) obligations owed to the agent and lenders under the DIP Loan Agreement, and (b) the Carveout.

5. The Replacement Lien and the Superpriority Claim shall be subordinated to the following (the "Carveout"): (a) the compensation and expense reimbursement (other than for professional fees and expenses) allowed to a trustee in any successor Chapter 7 case, (b) unpaid fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930, (c) the Debtor's Professionals Carveout Amount (as defined in the DIP Credit Agreement), and (d) allowed fees and expenses of professionals for the Committee to the extent such fees and expenses were incurred before the occurrence of an Event of Default and do not exceed (i) $100,000 in the aggregate, and (ii) with respect to any fees incurred in connection with the investigation of the claim of the Agent and the Lenders, such fees shall not exceed $10,000; provided that the foregoing shall be reduced by the amount of any fees paid to such professionals during the Chapter 11 Case. Notwithstanding the foregoing, the Carveout shall not include any fees or expenses in connection with any Adverse Actions (as defined below) nor shall any amounts paid with respect to the Carveout reduce any amount owed to the Agent or the Lenders. Neither the Agent nor the Lenders shall be responsible for payment of any amounts constituting the Carveout.

6. The Replacement Lien granted to the Agent pursuant to the Agreement shall be perfected by operation of law, *nunc pro tunc*, as of the filing of the petition for relief upon entry of this Order. The Agent shall not be required to file or record any financing statements, mortgages, or other documents in any jurisdiction or to take any other action in

order to validate or perfect the Replacement Lien granted hereunder. This Order shall be deemed sufficient and conclusive evidence of the security interests and liens granted hereunder. If the Agent shall, in its sole discretion, choose to file financing statements or record mortgages or other documents, or otherwise confirm perfection of such security interests and liens, the Agent is hereby authorized to effect such filings and recordations, and all such financing statements, mortgages, or similar documents shall be deemed to have been filed, recorded, or made on the date of entry of this Order.

7. The Debtor is not authorized to use Cash Collateral to (a) challenge the validity, priority, perfection, or enforceability of obligations owed to the Agent or the Lenders, or to challenge any liens or security interests held by the Agent, (b) assert any claims, counterclaims, or defenses against the Agent or the Lenders, including any avoidance actions, or (c) prevent, hinder or otherwise delay the Agent's or the DIP Lenders exercise of any remedies with respect to their collateral or loan documents (the items in the foregoing clauses (a), (b), and (c) being the "Adverse Actions"). The foregoing clauses (a) and (b) shall not preclude the use of Cash Collateral by the Creditors Committee to investigate the matters referred to in such clauses.

8. In the event the Debtor's right to use cash collateral pursuant to the Agreement is terminated based on the Debtor's default thereunder, the Debtor shall not use any cash collateral without consent of the Agent or further order of this Court; provided that the Debtor is authorized to pay any payroll related expenses accrued up to the date of such termination.

9. A separate order of this Court (the "DIP Order") approves a final DIP financing agreement (the "DIP Credit Agreement") between the Debtor, CoBank, ACB (as the DIP Agent) and the lenders specified in the DIP Credit Agreement. Notwithstanding anything to the contrary in this Order, the Agreement, the DIP Credit Agreement, and the DIP Order:

(a) The Debtor may seek relief from the Court with respect to the use of cash collateral, and all parties reserve their rights and defenses with respect to any such request;

(b) All Court approved professionals under Sections 327 and 330 of the

Case: 09-11078 Doc# 104 Filed: 06/08/09 Entered: 06/08/09 12:47:46 Page 4 of 5

Bankruptcy Code shall have pro-rata claims against the aggregate amount carved-out for all such professionals, subject to the Court's discretion;

(c) The Debtor retains all discretion and authority to manage the case and propose a chapter 11 plan without prejudice to the rights of all other parties under this and previously entered orders of the Court;

(d) Any pre-petition claim of the Agent or the Lenders shall not be secured by Additional Collateral or its proceeds;

(e) The Debtor may surcharge the Agent's Cash Collateral for unpaid expenses that are permitted by the Budget (defined in the DIP Order) and that were incurred by the Debtor before an Event of Default; and

(f) The Superpriority Claim shall not extend to the avoidance actions or their proceeds.

**** END OF ORDER ****

Case: 09-11078 Doc# 104 Filed: 06/08/09 Entered: 06/08/09 12:47:46 Page 5 of 5