Stephen P. Arnot (CSB#170245)
The Arnot Law Firm
121 SW Morrison St., 11th Floor
Portland, OR 97204
Telephone: (503) 227-5093
Facsimile: (503) 227-3442
arnotlaw@sbcglobal.net

Attorney for Series A, B & C Note Holders, Rick Santos, Linda Nicholson, Frank and Cecillia Ormonde, Charles and Pam Zana, James and Carol O'Neil, Gary Barnardi, Tom Adam, Loretta Alexandre, Donna Sorensen, Silverio and Sandra Fernandes, Gerald Genzoli, Charles Gersbach, Martin and Barbara Lang, Fernando and Jorlanda Lourenco, Dona Mendes, Jerome and Barbara Davis, Penny Renner, Clifford Sorenson, Susan Johnson and Robert and Mary Johnson, Silvia Leonardo and Diane Porter.

IN THE UNITED STATES BANKRUPTCY COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No.: 09-11078 |
| | Chapter 11 |
| HUMBOLDT CREAMERY, LLC. | CREDITORS' OBJECTION TO MOTION TO SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT |
| Debtor | |
| | **DATE:** August 12, 2009<br>**TIME:** 10:00 a.m.<br>**PLACE:** 99 S. "E" Street, Santa Rosa, CA 95404 |

Series A, B & C Note Holders, noted above, (hereafter "Note Holders"), by and through their counsel, The Arnot Law Firm, Inc., file this objection to the Debtor's Motion to Sale Substantially all of Debtor's Assets, as follows:

Page -1- CREDITORS' OBJECTION TO MOTION TO SALE SUBSTANTIALLY ALL OF DEBTOR'S ASSETS

# INTRODUCTION

The Note Holders object to the Debtor's sale of substantially all of the debtor's assets on the following grounds. First, the justification for the Debtor's proposed sale is totally inconsistent with §363(b) and fails to satisfy the basic criteria of (i) being in the best interest of the Creditors, and (ii) providing a benefit to Note Holders and other unsecured creditors. Second, the approval of a sale of substantially all of the debtor's assets under §363(b) will deny Note Holders specific safeguards and protections under §1129 had the sale been confirmed through a plan of reorganization. Third, the Debtor fails to address the urgency for the sale and has failed to demonstrate that it has exhausted all alternate sources of financing, including further agreement from CoBank for use of cash collateral.

# MEMORANDUM OF POINTS AND AUTHORITIES

1. <u>The Justification For The Debtor's Proposed Sale is Totally Inconsistent with §363(b) and Fails to Satisfy The Basic Criteria of (i) Being in the Best Interest of The Creditors and (ii) Providing a Benefit to Note Holders and Other Unsecured Creditors.</u>

The proposed sale must serve the best interest of the Bankruptcy Estate under §363 of the Bankruptcy Code. Determining whether a sale should be approved under §363 falls within the sound discretion of the court. <u>Stephens Indus., Inc. v. McClung</u>, 789 F.2d 386, 388 (6th Cir.1986); <u>In re New Era Resorts</u>, LLC, 238 B.R. 381, 387 (Bankr.E.D.Tenn.1999). The main justification for a sale under §363(b) is to benefit the unsecured creditors. The court has broad discretion in determining whether to approve a sale outside the ordinary course of business. <u>In re Embrace Sys. Corp.</u>, 178 B.R. 112, 123 (Bankr.W.D.Mich. 1995). The court should exercise its discretion based upon the facts and circumstances of the proposed sale. The Sixth Circuit in <u>In Re Stephens Industries</u> held that a bankruptcy court can authorize a sale of all of a Chapter 11 debtor's assets under §363(b)(1) when a sound business purpose dictates such action. <u>Stephens Industries</u>, 789 F.2d at 390. Thus, when deciding whether to approve a §363 sale, a court must expressly find from the evidence presented before it at the hearing a good business reason to

Page - 2- CREDITORS' OBJECTION TO MOTION TO SALE SUBSTANTIALLY ALL OF DEBTOR'S ASSETS

Case: 09-11078  Doc# 179  Filed: 07/29/09  Entered: 07/29/09 13:09:53  Page 2 of 6

grant such an application to sell.  <u>Stephens Industries</u> 789 F.2d at 389; <u>In re Lionel Corp</u>. 722 F.2d 1063, 1071 (2d Cir.1983).

In <u>Lionel Corp</u>., the Second Circuit ruled that a bankruptcy court should consider certain non-exclusive factors in connection with a §363 sale of substantial assets.  The factors include: 1) the proportionate value of the asset to the estate as a whole; 2) the amount of elapsed time since the chapter 11 filing; 3) the likelihood that a plan of reorganization will be proposed and confirmed in the near future;; 4) the effect of the proposed disposition on future plans of reorganization; 5) any alternative proposals; and 6) whether the asset is increasing or decreasing in value.  These factors are all part of the debtor's burden of demonstrating its sound business justification for a sale under §363(b). <u>In Re Lionel Corp.,</u> 722 F.2d at 1071.

In the case at hand, only three months have elapsed since the bankruptcy filing. Since the inception of this case, the debtor has positioned itself for a sale of assets through a liquidation rather than through a plan of reorganization.  The proposed sale does represent the majority of the assets of the debtor's estate.  The current offer of 20.5 million dollars from Foster Farm is approximately 34 million dollars short of satisfying secured debt to CoBank[1] and will provide no dividend to the unsecured creditors, including the Note Holders.  Even if the sale is approved, the unsecured deficiency claim of CoBank will be in excess of 30 million dollars and further dilute any assets that may eventually be distributed to the unsecured creditors. Any future plans of reorganizing is a highly unlikely based on the proposed motion to sale that provides no dividend to the unsecured creditors.

Did the debtor thoroughly evaluate alternative proposals and demonstrate that it cannot reorganize, but instead must liquidate?  If the debtor were able to further cut expenses from its monthly budget, it may be at a break even point?  The most recent filed Monthly Operating Report ("MOR") by the debtor provides evidence to support the fact that the debtor is reducing

---

[1]. Schedule D of the debtor's petition filed on May 27, 2009, lists CoBank's claim at $54,000,000.00

its expenses and increasing sales over the previous month. In fact, the MOR is forecasting a net profit of $76,072.00 for the period ending July 31, 2009. All of these issues are important in the analysis to determine if the debtor met its burden and exercised sound business judgment in recommending immediate liquidation. Moreover, it's not clear that the Board of Directors has reviewed alternative proposals and concurs with the current recommendation. Based upon the motion as proposed, the debtor has not exercised its sound business judgment in requesting approval of the sale when there is little likelihood of any benefit to the unsecured creditors for this estate.

2. <u>The Sale of Substantially all of the Debtor's Assets will deny Note Holders the protections afforded them through a Plan of Reorganization</u>.

The debtor has the option to propose a sale of assets through the confirmation process of a chapter 11 plan of reorganization. Confirmation of a Chapter 11 plan involves preparation of and distribution of a disclosure statement and chapter 11 plan, voting by creditors to accept or to reject the plan, and determination by the Court of whether the plan meets statutory confirmation standards and safeguards to the creditors. In contrast, section 363(b) authorizes a trustee to sell property of the estate other than in the ordinary course of business. Only a motion is required, and most courts apply a "business judgment test" to determine whether to approve the sale. The Bankruptcy Code does not provide any explicit guidance to determine when §363(b) is the appropriate procedure and when §1123 is the appropriate procedure. <u>In Re Gulf Coast Oil Corp</u>., 404 BR 407 (S.D. Tex 2009). This is left to the sound discretion of the court. In all instances, however, the court needs to determine what is in the best interest of the unsecured creditors.

In this case, the sale of substantially all of the debtor's assets does not provide the same procedural safeguards as confirmation through a Chapter 11 plan. During the confirmation process, the Court must determine that the requirements of §1129 are satisfied. The court would be required to consider whether the plan as proposed is fair and equitable to all creditors,

provides for appropriate classification of creditors[2], the proposed distribution to creditors under the plan, and voting by each impaired class on the proposed plan. Several significant safeguards of the confirmation process are lost in the debtor's §363(b) sale. For example, there is no determination whether the distribution of sale proceeds is appropriate and not contrary to the statutory framework in §1129. A §363(b) sale prohibits each class of creditors from voting on the proposed sale, and the court from determining if the sale is fair and equitable to the creditors and does not unfairly discriminate.

The debtor's sale under §363 provides that certain creditors (leasehold obligations), will be assumed and paid while others receive no distribution. The sale also provides for the transfer of the "Crown Jewel" without creditors approval. If the Court approves the sale pursuant to §363(b), it is likely that there is nothing left to reorganize and the bankruptcy case could conceivably be dismissed or converted to Chapter 7, with the only effect of the bankruptcy process would be the transfer the debtor's assets and payment to the secured creditor, CoBank.

3. <u>The Debtor Fails to Demonstrate the Urgency for The Motion to Sale And That It Has Exhausted All Alternate Sources of Financing, Including Further Agreement from CoBank for Use of Cash Collateral</u>

The debtor asserts that the proposed bidding procedures and sale under §363 is necessary because it does not have adequate time to put forth a plan of reorganization under the current constraints of its cash collateral agreement with CoBank. The debtor fails to provide that it cannot obtain a further agreement from CoBank for use of cash collateral so as to allow more time to market the creamery and propose a plan of reorganization. The debtor has failed to establish alternative sources of financing that would allow the debtor to reorganize through a plan of reorganization. The debtor has not met its burden to establish the urgency for a sale under §363(b).

---

[2]. The Note Holders believe that they should be separately classified from trade creditors given the legal nature of their claims and are entitled to priority in payment over certain creditors.

In addition, the debtor, arguably had time to propose a plan, had it elected to do such. For example, the debtor had to give 20 days notice of the filing of a Motion for bidding procedures and an additional 20 days for a sale of property of the estate. In contrast, the timelines to file and notice a hearing on a disclosure statement and plan of reorganization is not significantly different. There appears no reason why it is more appropriate to apply equitable powers aggressively to facilitate a § 363(b) sale than it is appropriate to apply equitable powers aggressively to let creditors vote on that proposal in a plan. Therefore, the argument that there is a need for speed is not apparent.

## CONCLUSION

Based on the foregoing, the objecting creditors, respectfully request that the motion be denied and for such other relief that the court deems proper.

Dated this 29th day of July 2009

The Arnot Law Firm, Inc.

By: /s/ Stephen P. Arnot
Stephen P. Arnot, Attorney for the Note Holders

Page - 6 - CREDITORS' OBJECTION TO MOTION TO SALE SUBSTANTIALLY ALL OF DEBTOR'S ASSETS

Case: 09-11078   Doc# 179   Filed: 07/29/09   Entered: 07/29/09 13:09:53   Page 6 of 6