SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
MICHAEL H. AHRENS, Cal. Bar No. 44766
STEVEN B. SACKS, Cal. Bar No. 98875
ORI KATZ, Cal. Bar No. 209561
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:   415-434-9100
Facsimile:    415-434-3947

Attorneys for HUMBOLDT CREAMERY, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re<br><br>HUMBOLDT CREAMERY, LLC, a Delaware limited liability company,<br><br>Debtor.<br><br>Tax ID: 87-0736033 | Case No. 09-11078<br><br>Chapter 11<br><br>**FIRST INTERIM FEE APPLICATION OF DUFF & PHELPS FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED AS INVESTMENT BANKER TO THE DEBTOR**<br><br>Date:   August 21, 2009<br>Time:   10:30 a.m.<br>Place:   99 South E. Street<br>            Santa Rosa, CA 95404<br>Judge:  Hon. Alan Jaroslovsky |

## INTRODUCTION

This is the first interim fee application (the "Application") for allowance of compensation and reimbursement of expenses of Chanin Capital Partners, LLC and Duff & Phelps Securities, LLC (collectively, "Duff & Phelps") as investment banker and financial advisor to Humboldt Creamery, LLC, the debtor and debtor-in-possession in the above-captioned case (the "Debtor").

Duff & Phelps seeks approval of the $150,000 in Retainer Fees it has earned from the Debtor during from April 21, 2009 through July 17, 2009 (the "Application Period"), approval of the $34,199.65 in expenses incurred during the Application Period, and payment of the Transaction Fee set forth set forth in Duff & Phelps' employment application on the closing of a sale of the Debtor's assets, which is expected to occur in late August, 2009. As the Retainer Fees, expense reimbursements, and Transaction Fee were explicitly approved by this Court in the order granting Duff & Phelps' employment application, and given Duff & Phelps' significant achievements in a short time period in facilitating a sale of the Debtor's assets, this Court should grant this Application, approve the Retainer Fees paid and the expenses accrued on an interim basis, and approve the payment of the Transaction Fee on the closing of a sale of the Debtor's assets, all subject to the further review of this Court upon the filing of a final fee application pursuant to 11 U.S.C. § 330, Bankruptcy Rule 2016 and applicable local rules and guidelines.

## RELIEF REQUESTED AND BASIS FOR RELIEF

Duff & Phelps seeks an order of the Court granting interim approval of $150,000.00 in retainer fees earned during the Application Period, $34,199.65 in expenses accrued during the Application Period, and payment of the Transaction Fee on

the closing of a sale of the Debtor's assets, which is contemplated to occur at the end of August, 2009, all subject to final review and approval of this Court upon the filing of a final fee application. As set forth in Duff & Phelps' amended employment application filed with this Court on June 4, 2009 [Docket #98], the Transaction Fee is to be an amount equal to the greater of 2.5% of the gross sale proceeds or $500,000.00, reduced by fifty percent (50%) of the Retainer Fees, provided that in no event shall the Transaction Fee paid to Duff & Phelps be less than $500,000.00. If the sale of the Creamery Assets contemplated in the Debtor's sale motion filed on July 13, 2009 [Docket #153] is consummated with the stalking horse bidder for the stated amount of $20,500,000.00, and the Debtor's other assets sell for their suggested minimum price of $2,700,000.00, then the Transaction Fee payable to Duff & Phelps will be $500,000.00. The Transaction Fee may be higher than $500,000.00 if the Debtor's assets are sold for amounts greater than the stalking horse bid for the Creamery Assets and the suggested minimum price for the other assets. By this Application, Duff & Phelps seeks Court approval for payment of the Transaction Fee on the closing date of an asset sale in any such greater amount that may be warranted by a higher sale price. By the time of the hearing on this Application, the contemplated auction of the Debtor's assets should have occurred, and so the final Transaction Fee should be known. Duff & Phelps will supplement this Application with a statement regarding the amount of the Transaction Fee as soon as said Fee becomes known to Duff & Phelps.

Duff & Phelps was employed as the Debtor's exclusive investment banker and financial advisor pursuant to an order of this Court dated June 11, 2009 [Docket #110] (the "Retention Order"). A copy of the Retention Order is attached to this Application as Exhibit A. The Retention Order provides that Duff & Phelps' employment was effective as of the petition date in this case: April 21, 2009. The Retention Order approved Duff & Phelps' employment on the terms set forth in Duff & Phelps' amended employment

1  application filed on June 4, 2009 [Docket #98]. That employment application explicitly
2  stated that Duff & Phelps' compensation was to be based on Retainer Fees and a
3  Transaction Fee as opposed to hourly compensation. The Transaction Fee set forth in the
4  employment application is as set forth in the above paragraph.

As to Retainer Fees, $150,000.00 in such Fees have been earned during the Application Period, with Duff & Phelps having received payment on $125,000.00 of such Fees. The Retainer Fees set forth in the employment application mirrored those in the engagement letter attached to the employment application, and were as follows: (i) $25,000.00 on the signing of the engagement letter (which amount was paid pre-petition, since the engagement letter is dated April 17, 2009), (ii) $50,000.00 upon bankruptcy court approval of Duff & Phelps' employment, (iii) $50,000.00 thirty days after the execution of the engagement letter; and (iv) $25,000.00 per month thereafter, payable on the fifth day of each month. Excluding the first Retainer Fee of $25,000.00 which was paid pre-petition, Duff & Phelps has earned the $50,000.00 Retainer Fee upon the approval of Duff & Phelps' employment on June 11, 2009, the $50,000.00 Retainer Fee that was due thirty days after the execution of the engagement letter, and the monthly $25,000.00 Retainer Fees that became due on June 5 and July 5, 2009, making for a total of $150,000.00 in Retainer Fees earned by Duff & Phelps since the petition date. As of the date of this Application, Duff & Phelps has received payment for $125,000.00 of these Retainer Fees, the lone exception being the $25,000.00 Retainer Fee for July which per the engagement letter was earned on July 5, 2009, and which was recently invoiced on July 20, 2009. These Retainer Fees were earned, and payment was made thereon, pursuant to the express terms set forth in Duff & Phelps' employment application. The Retainer Fees should be approved, along with the sought after expense reimbursement and the Transaction Fee, for the reasons set forth in this Application.

Duff & Phelps has achieved a great deal in a very short time in this bankruptcy case, as its efforts have made possible one of the main objectives of this case: the sale of substantially all of the Debtor's assets pursuant to Section 363 of the Bankruptcy Code. Duff & Phelps worked tirelessly on a short time frame to solicit approximately 150 potentially interested bidders, to set up a private data room with the aid of Debtor's counsel and provide access to such information to over 50 potential purchasers who executed confidentiality agreements, to receive and evaluate indications of interest from eleven potential purchasers, and to negotiate the terms of a stalking horse bid by Foster Dairy Farms. All the while Duff & Phelps provided periodic updates and reports to the Debtor, the Creditors' Committee, and the Debtor-in-Possession Lenders, coordinating the efforts and addressing the concerns of the various parties in interest in this bankruptcy case so as to position the Debtor to accomplish a sale within the timeline required by the Debtor's financial situation.

Duff & Phelps' request for relief is based on this Application, the notice (the "Notice") of hearing on the Application, the declaration of Kenneth Nofziger filed in support of the Application, and all related declarations and pleadings previously filed, or that may be filed, prior to the hearing on this matter.

This Application is made pursuant to the provisions of Bankruptcy Rule 2016 and Section 330 of title 11 of the United States Code (the "Bankruptcy Code"). Except as otherwise noted herein, the Application conforms with the United States Trustee's guidelines for compensation and expense reimbursement for professionals (the "UST Guidelines") and the Guidelines for Compensation and Expense Reimbursement of Professionals and Trustee's for the United States Bankruptcy Court, Northern District of California ("District Guidelines"). The UST Guidelines and the District Guidelines are referred to together as the "Guidelines" in this Application. Of note, this Application

does not comply with the Guidelines pertaining to project billing and maintenance of time-based billing records because, as set forth in Duff & Phelps' employment application, Duff & Phelps is not being compensated on an hourly basis, but rather on the basis of the Retainer Fees and the Transaction Fee as set forth above.

Duff & Phelps enlisted the aid of Debtor's counsel in preparing this Application and it is estimated that Debtor's counsel will incur $3,500.00 in fees preparing the Application. This amount represents approximately 0.5% of the amount sought in the Application, assuming a $500,000.00 Transaction Fee.

In support of the Application, Duff & Phelps respectfully represents as follows:

## EMPLOYMENT AND PRIOR COMPENSATION

As set forth above, Duff & Phelps' employment was approved by the Retention Order, which was issued by this Court on June 11, 2009.

Duff & Phelps received a $25,000.00 initial Retainer Fee upon the signing of the engagement agreement with the Debtor on April 17, 2009, four days prior to the petition date. Post-petition, the Debtor has earned $150,000.00 in Retainer Fees pursuant to the terms of its engagement set forth in its employment application and approved by the Retention Order, as set forth in greater detail above. Of these post-petition Retainer Fees, Duff & Phelps has received payment on $125,000.00, with only the monthly $25,000.00 Retainer Fee for July remaining outstanding.

This is Duff & Phelps' first application for approval of compensation and reimbursement of costs in this case.

## CASE STATUS

A general background discussion regarding the status of the case is contained in the contemporaneously filed fee application of Debtor's counsel and is incorporated by this reference as contemplated under District Guideline, I.2.[1]

## EXHIBITS TO APPLICATION

The exhibits attached to this Application are as follows:

A copy of the Retention Order is attached as Exhibit A.

A copy of an invoice detailing the costs advanced by Duff & Phelps for which reimbursement is sought in this Application is attached as Exhibit B.

A copy of Duff & Phelps' letter to Len Mayer, the designated Responsible Individual for the Debtor, inviting discussion, questions, comments, concerns or objections to the Application, is attached as Exhibit C.

## SUMMARY OF PROFESSIONAL SERVICES RENDERED

Duff & Phelps has acted as the Debtor's investment banker and financial advisor since it was retained on April 17, 2009, just days before this bankruptcy case was filed. Immediately upon its retention, Duff & Phelps began exploring the pool of parties that may potentially be interested in acquiring all or substantially all of the Debtor's business

---
[1] *See* District Guideline, I.2.

or assets. Duff & Phelps identified and approached national and major international strategic companies and private equity firms who have been active in the dairy industry or have had an interest in entering this market. In addition, Duff & Phelps solicited the interest of various financial firms with experience in the acquisition of distressed assets or transactions in the food industry. This list included more than 150 potentially interested parties, both strategic and financial.

Among the tasks that Duff & Phelps has undertaken in the process of marketing and negotiating the sale of the Debtor's assets is preparing an information memorandum on the Debtor's operations and assembling extensive information on the Debtor's assets for review by potential buyers or investors, including copies of relevant contracts, financial information, and the like. With the assistance of the Debtor's counsel, a data room was set up to house this due diligence information and facilitate access by interested parties to such information. Duff & Phelps provided these parties with confidentiality agreements and then accommodated numerous requests for due diligence information and documents. During late May of 2009, and after providing access to the data room and accommodating information requests for over 50 potential purchasers that had executed confidentiality agreements, Duff & Phelps received eleven non-binding indications of interest, written and oral, from potential bidders outlining their proposed bids for the Debtor's assets. Duff & Phelps then coordinated visits by these interested parties to the Debtor's facilities and sites, and circulated a proposed form of asset purchase agreement along with instructions for submitting a letter of intent and mark up of the asset purchase agreement for consideration as the stalking horse bidder. This process continued through the week of June 15, 2009, when the stalking horse bids were due.

On June 16, 2009, Foster Dairy Farms submitted an offer to purchase the Creamery Assets[2] for approximately $20,500,000.00, subject to certain potential adjustments. Duff & Phelps worked closely with the Debtor and the Debtor's counsel to negotiate an Asset Purchase Agreement with Foster Dairy so that Foster could serve as a stalking horse bidder. This in turn allowed the Debtor to file a motion to sell the Creamery Assets on July 13, 2009 with a stalking horse bidder in play to maximize the value of those Assets to the estate.

In short, Duff & Phelps' efforts in aggressively marketing the Debtor's assets have produced a stalking horse bidder on the bulk of the Debtor's assets, along with a number of other interested parties who have evaluated the Debtor's assets and may be prepared to bid on the same at an auction. This should promote competitive overbidding at an auction on those assets and therefore maximize the value of those assets for the estate. In addition, Duff & Phelps was able to bring the Debtor to this point within three months, satisfying the timelines created by the Debtor's financial situation.

**EXPENSE REIMBURSEMENT**

Duff & Phelps seeks expense reimbursement for costs totaling $34,199.65. A summary of expenses advanced by Duff & Phelps is set forth on the invoice attached hereto as Exhibit B. These expenses include travel expenses, long distance telephone

---

[2] The Creamery Assets are described in detail in the Asset Purchase Agreement with Foster Dairy Farms that is attached to the sale motion, and include the majority of the Debtor's personal property; its right, title and interest in certain inventory, receivables, equipments and machinery; certain contracts and leases; certain intellectual property; and certain real property related to its operations in Fernbridge and Stockton, California. The Creamery Assets do not include the Debtor's real and personal property in Los Angeles, the Debtor's real property in Loleta, or a vacant lot in Stockton.

services and professional services. These expenses are billed at the actual cost to Duff & Phelps.

Duff & Phelps' employment application and engagement letter provide for the monthly reimbursement of reasonable and documented out-of-pocket expenses. To date, the Debtor has paid one such monthly invoice dated 06/24/2009 reflecting expenses totaling $24,293.65 for the period from 04/17/2009 through 05/31/2009. Duff & Phelps has also transmitted a second invoice dated 07/20/2009 reflecting expenses totaling $7,626.61 for the period from 06/01/2009 through 06/30/2009. Additionally, from 07/01/2009 through the end of the Application Period (07/17/2009), Duff & Phelps has incurred an additional $2,279.39 in expenses. By this Application, Duff & Phelps seeks approval of the $24,293.65 in expenses already reimbursed by the Debtor, and also for the remaining $9,906.00 in expenses which have been incurred by Duff & Phelps but have not yet been reimbursed by the Debtor.

All compensation and expense reimbursements requested herein have been billed at rates in accordance with practices no less favorable than those customarily employed by Duff & Phelps and generally accepted by Duff & Phelps' clients. Documentation for all expenses in excess of $50.00 has been retained and will be made available upon request.

## CONCLUSION

WHEREFORE, Duff & Phelps prays that the Court enter an order:

(1) Granting interim approval of the $150,000.00 in Retainer Fees earned by Duff & Phelps to date, and of that amount, authorizing and directing the Debtor to pay the $25,000.00 July Retainer Fee which remains outstanding;

(2) Granting interim approval of Duff & Phelps' expenses incurred during the Application Period, totaling $34,199.65, and authorizing and directing the Debtor to immediately reimburse Duff & Phelps for the $9,906.00 of such expenses which have not yet been reimbursed;

(3) Granting interim approval of the Transaction Fee contemplated in Duff & Phelps' employment agreement and authorizing and directing the Debtor to pay such Transaction Fee to Duff & Phelps on the closing of a sale of the Debtor's assets, which is contemplated to occur in late August, 2009; and

(4) Granting such other and further relief as the Court may deem just and proper.

Dated: July 31, 2009

By /s/ Ken Nofziger
KEN NOFZIGER

DUFF & PHELPS SECURITIES, LLC and
CHANIN CAPITAL PARTNERS. LLC