SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
MICHAEL H. AHRENS,
Cal. Bar No. 44766
STEVEN B. SACKS,
Cal. Bar No. 98875
ORI KATZ,
Cal. Bar No. 209561
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415-434-9100
Facsimile: 415-434-3947

Attorneys for HUMBOLDT CREAMERY, LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SANTA ROSA DIVISION

| | |
|---|---|
| In re | Case No. 09-11078 |
| HUMBOLDT CREAMERY, LLC, a Delaware limited liability company, | Chapter 11 |
| Debtor. | **ORDER (I) AUTHORIZING AND APPROVING THE SALE OF THE DEBTOR'S CREAMERY ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, AND (II) AUTHORIZING SALE, AND ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES** |
| Tax ID: 87-0736033 | |
| | Date: August 12, 2009<br>Time: 10:00 a.m.<br>Place: 99 South E. Street<br>       Santa Rosa, CA 95404<br>Judge: Hon. Alan Jaroslovsky |

Upon the *Motion for Order (I) Authorizing and Approving the Sale of the Majority of the Debtor's Assets Free and Clear of All Liens, Claims and Encumbrances, and (II) Authorizing Sale, and Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* (the "Sale Motion") filed by Humboldt Creamery, LLC, the debtor and debtor-in-possession in the above-captioned case (the "Debtor"), brought pursuant to 11 U.S.C. §§ 105, 363, and 365, and based on the authorities therein, the supporting declarations, the other papers of record in this case, and upon such further oral and documentary evidence as were presented prior to or at the time of the hearing on the Sale Motion (the "Sale Hearing"), pursuant to which the Debtor sought an order (1) approving the sale of its creamery assets pursuant to an asset purchase agreement (the "Initial Asset Purchase Agreement"), attached as Exhibit A to the declaration of Len Mayer filed in support of the Sale Motion (the "Mayer Declaration"), which the Debtor has negotiated with a "stalking horse" bidder, Foster Dairy Farms, a California corporation ("Foster Farms"), pursuant to which Foster Farms is to acquire the Debtor's creamery assets (the "Creamery Assets" which shall have herein the same definition as the "Assets" in the Initial Asset Purchase Agreement) for a purchase price of $20.5 million, subject to certain adjustments to the extent Net Working Capital (as defined in the Initial Asset Purchase Agreement) exceeds, or is less than, $10 million; and (2) approving the assumption, cure and assignment of certain contracts and leases (collectively, the "Assigned Contracts"), each as described in the Initial Asset Purchase Agreement along with the amounts ("Cure Amounts") which are listed on Exhibit B to the Mayer Declaration and are necessary to cure any existing defaults under the Assigned Contracts (the sale, assumption and assignment, collectively, the "Sale"); and a hearing having been held on July 27, 2009 (the "Bidding Procedures Hearing") at which the Court entered an Order dated July 28, 2009 (the "Bid Procedures Order"), (i) approving the form and manner of notice of the Sale Hearing, setting objection bar dates to the sale of the Creamery Assets, to the assumption, cure and assignment of the Assigned Contracts, and to the lack of adequate

assurance of future performance of the Assigned Contracts, and scheduling the hearing on the approval of the Sale and confirmation of the winning bidder at the Sale Hearing; and (ii) fixing the proposed bidding procedures; and due notice of the Bidding Procedures Hearing, the Sale Motion, and the Sale Hearing having been given in accordance with the Bidding Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court, and it appearing that no other or further notice need be given.

**NOW, THEREFORE,** based upon all of the evidence presented to the court, and it appearing that all objections have been withdrawn, and it appearing that all notices have been properly given, and for the reasons stated in the court's Memorandum filed herewith which constitute the court's findings and conclusions;

**IT IS HEREBY ORDERED** that:

1. The Sale Motion is granted and the Sale to Foster Farms is approved as the highest and best offer. The Initial Asset Purchase Agreement between Foster Farms and the Debtor is approved as amended or supplemented by the Amendment to Initial Purchase Agreement. Both documents may be found in document #209 filed August 13, 2009. They are hereinafter referred to together as the Asset Purchase Agreement.

2. The Debtor is authorized to sell the Creamery Assets to Foster Farms for the purchase price of $19,250,000, subject to certain adjustments to the extent Net Working Capital (as defined in the Asset Purchase Agreement) exceeds, or is less than, $10 million, and the other consideration described in the Asset Purchase Agreement that is attached to this Order.

3. The Debtor, subject to the terms of the Asset Purchase Agreement, is authorized, but not required, to assume and assign to the Foster Farms only the Assigned Contracts, and Foster Farms is not assuming any executory contracts or leases other than the Assigned Contracts pursuant to the terms of the Asset Purchase Agreement.

4. The Debtor is authorized to assume and assign in its sole discretion the Remaining Contracts listed on Exhibit B to the Mayer Declaration.

5. Pursuant to Section 363(f) of the Bankruptcy Code, effective upon the closing of the sale ("<u>Closing</u>"), the sale of the Creamery Assets will vest in Foster Farms all right, title and interest of the Debtor and the bankruptcy estate in the Creamery Assets, free and clear of the following liens, claims or interests listed below (collectively, the "<u>Affected Interests</u>"):

    a. CoBank, ACB
    b. American AgCredit, FLCA
    c. American AgCredit, PCA
    d. Farm Credit Leasing Services Corp.
    e. Berry Plastics Technical Services, Inc.
    f. Farm Credit Leasing Services Corporation.
    g. Cold Storage Manufacturing, Inc.
    h. Tetra Pak Inc.
    i. Norse Dairy Systems
    j. NMHG Financial Services, Inc.

6. Unless the holders of the liens, claims or interests identified in paragraph 5 above have agreed to other treatment, their liens, claims or interests shall attach to the proceeds of the sale with the same force, effect, validity and priority that previously existed against the Creamery Assets.

7. The sale to Foster Farms does not include the Debtor's assets which may be subject to a claim or interest for VAResources, Inc., Wells Fargo Financial Leasing, Inc. and/or TCF Equipment Finance, Inc.

8. Except as provided herein and in the Asset Purchase Agreement, Foster Farms has not assumed any liabilities of the Debtor.

9. The Debtor, and any escrow agent upon the Debtor's written instruction, shall be authorized to make such disbursements on or after the Closing as are required by the Asset Purchase Agreement or order of this Court, including, but not limited to, all

delinquent real property taxes and current fiscal year real property taxes pro-rated as of the Closing with respect to the real property included among the purchased assets. 'Property taxes' includes ad valorem real property taxes, special assessments on real property, delinquent penalties, and costs authorized by law.

10. The Debtor and its officers, employees and agents be and they hereby are authorized to execute the Asset Purchase Agreement, or other related documents that are reasonably necessary or appropriate to complete the Sale, and to undertake such other actions as may be reasonably necessary or appropriate to complete the Sale.

11. In accordance with section 365 of the Bankruptcy Code, and pursuant to the terms of the Asset Purchase Agreement, the Debtor is hereby authorized and empowered and directed to assume and assign to Foster Farms each of the Assigned Contracts.

12. All defaults or other obligations of the Debtor under the Assigned Contracts arising or accruing prior to the date of this Order (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured upon Closing. Payment of the Cure Amounts in respect of each Assigned Contract are the sole amounts and sole actions required to cure all defaults existing under the Assigned Contracts as of the Closing, and such Cure Amounts are those amounts set forth on Exhibit B to the Mayer Declaration, or such lesser amount as agreed to by the Debtor and the non-debtor party to such Assigned Contracts and the Remainder Contracts.

13. Except as set forth in the Asset Purchase Agreement, the Debtor is solely responsible for the payment of the Cure Amounts.

14. Foster Farms is approved as a buyer in good faith in accordance with Section 363(m) of the Bankruptcy Code, and Buyer shall be entitled to all protections of Section 363(m) of the Bankruptcy Code. The provisions of Bankruptcy code Section 363(n) do not apply to this Sale.

15. This Order shall be effective immediately upon entry. No automatic stay of execution, pursuant to Rule 62(a) of the Federal Rules of Civil Procedure, or Bankruptcy Rules 6004(h) or 6006(d), applies with respect to this Order, provided however that no Closing shall occur prior to the conclusion of the compromise hearing set to occur on August 25, 2009 at 10:30 a.m.

16. This Order shall be binding in all respects upon the Debtor, its estate, all creditors of, and holders of any equity interests in, the Debtor (whether known or unknown), any holders of interests in the Creamery Assets, all non-debtor parties to the Assigned Contracts assumed pursuant to the terms of the Asset Purchase Agreement, the non-debtor parties to the Remaining Contracts, all successors and assigns of Foster Farms all affiliates and subsidiaries of the Debtor and any Trustee appointed in this chapter 11 case or in any chapter 7 case to which this case might be converted. This Order and the Asset Purchase Agreement shall inure to the benefit of the Debtor, its estate, its creditors, Foster Farms and their respective successors and assigns.

17. This Court retains jurisdiction to enforce and implement the terms and provisions of this Order and the purchase agreement, all amendments thereto, any waivers and consents thereunder, and each of the documents executed in connection therewith in all respects, including retaining jurisdiction to (a) compel delivery of the Creamery Assets to Foster Farms, (b) resolve any disputes arising under or related to the Asset Purchase Agreement, and (c) resolve any disputes regarding liens, claims, or interests asserted against the Creamery Assets.

18. The Asset Purchase Agreement and any related documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's bankruptcy estate or the rights of third parties. Notwithstanding the foregoing,

no modification, amendment or supplement shall effect the assets specifically excluded from this sale.

Dated: August 14, 2009

_____
Alan Jaroslovsky
U.S. Bankruptcy Judge