UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

HUMBOLDT CREAMERY, LLC,                                              No. 09-11078

                     Debtor(s).
_____/

Memorandum on Sale of Creamery Assets
_____

      Debtor Humboldt Creamery, LLC, filed its Chapter 11 petition on April 21, 2009. Its business consists of processing, distributing and marketing an array of dairy products, including powdered milk, fluid milk, packaged ice cream and various frozen novelty products.

      On July 7, 2009, the debtor filed a motion to establish bid and sale procedures for the sale of its creamery operations, which are essentially all of its assets. The "stalking horse" buyer was named as Foster Farms Dairy, which would either be the successful bidder at a price of $20.5 million or be paid a $300,000.00 break-up fee. The court with the concurrence of the Creditors Committee, approved the procedure on a provisional basis.

      There were no bidders other than Foster Farms. The principal secured creditor, CoBank, is owed over $50 million. Thus, approval of the sale leaves little for the unsecured creditors other than some tort claims which may or may not be covered by insurance. CoBank, which supports the sale, has agreed to some concession in order to keep the bankruptcy estate at least administratively solvent.

      Objections to the sale were filed by the Creditors Committee and by a large group of unsecured note holders. The court ordered a full hearing with witnesses to be held on August 13, 2009. At the hearing, the debtor announced that both objections had been withdrawn. There were no objections to the court making its necessary findings based on the declarations filed in support of the sale.

      The sale of substantially all of a Chapter 11 debtor's assets outside a confirmed plan of

1

reorganization is often called "*sub rosa*" plan, although a more accurate description might be a "*de facto*" plan, a "rump" plan, or a "reorganization in effect"[1] in that it is a court-approved financial restructuring stripped of all the procedural safeguards built into Chapter 11 of the Bankruptcy Code by Congress, including disclosure and voting. Legal rights are reduced to the sole discretion of a lone and often over-worked bankruptcy judge.

Courts have articulated various factors the court should consider when presented with a reorganization in effect. The factors generally include a business justification based on sound judgment, the nature of the asset and whether it is increasing or decreasing, whether the sale furthers the interests of the debtor, creditors and equity holders alike, and whether it renders creditors' rights under Chapter 11 meaningless. *In re Lionel Corp.,* 722 F.2d 1063, 1071 (2nd Cir. 1983); *In re Braniff Airways, Inc.,* 700 F.2d 935 (5th Cir.1983); *In re Continental Airlines, Inc.,* 780 F.2d 1223, 1228 (5th Cir. 1986); *In re Work Recovery, Inc.*, 202 B.R. 301, 304 (Bkrtcy.D.Ariz.1996).

Modernly, one overriding factor has come to dominate consideration of sales of substantially all of a debtor's assets outside a proper plan: whether the asset is a "melting ice cube" with its value decreasing day after day and no ability to continue in business for any length of time. See *In re Chrysler LLC,* supra, at *8. That is certainly the case here, with the debtor arguing that it will not have funds to operate after September 4, 2009, so the entire going concern value of the debtor's business will be lost if the sale is not approved. This is the debtor's major support for its desired finding that there is a compelling business justification for a sale without a formal plan.

The problem with the "melting ice cube" argument is that it is easy enough for the debtor to unplug the freezer prior to bankruptcy. Historically, the best preparation for a successful Chapter 11 reorganization was to file early, husband resources and arrange postpetition financing to give the debtor the best possible chance to continue its business in Chapter 11. Modernly, it is a better tactic to wait until the last minute and then file with no ability to survive in Chapter 11. This compels the court

---

[1] See *In re Chrysler LLC,* – F.3d –, 2009 WL 2382766*6 (2nd Cir. 2009).

2

to find the urgency and sound business reason necessary to approve the sale.[2] Unless the bankruptcy judge is willing to show exceptional judicial courage, he or she must approve the sale. While nominally "presiding" over the case, the judge is reduced to a figurehead without any meaningful discretion and might as well leave his or her signature stamp with the debtor's counsel and go on vacation or shift attention to consumer cases where the law may still mean something.

Since all objections to the sale in this case have been withdrawn, the court accepts the debtor's representations that the property has been fully marketed and the only offer is that of Foster Farms. The court also accepts that a sale is necessary because the debtor has no ability to continue its operations. The court would like to extend an inquiry into the relationship between insiders of the debtor and Foster Farms, but will not do so *sua sponte* since the creditors have acquiesced in the sale after raising the issue. Accordingly, the court accepts the debtor's representations that the sale is put forth in good faith and that Foster Farms has proceeded in good faith. The court also finds that notice was proper, the court has jurisdiction by virtue of 28 U.S.C. § 1334 and this proceeding is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A), (M), (N) and (O). The court reluctantly concludes that the purchase price is fair and reasonable and in the best interests of the bankruptcy estate.

For the foregoing reasons, the sale will be approved. A separate order will be entered. This memorandum constitutes the court's findings and conclusions pursuant to FRCP 52(a) and FRBP 7052.

Dated: August 14, 2009

Alan Jaroslovsky
U.S. Bankruptcy Judge

---

[2] It also places the creditors, like the court, "under the gun" with no meaningful alternative to the debtor's sale even though they get little or nothing out of it.

3

Case: 09-11078    Doc# 212    Filed: 08/14/09    Entered: 08/14/09 15:01:18    Page 3 of 3