Stephen P. Arnot (CSB # 170245)
E-Mail: steve.arnot@bullivant.com
BULLIVANT HOUSER BAILEY, PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

Attorney for Series A, B & C Note Holders,
Linda Nicholson, Rick Santos, James and
Carol O'Neil, Frank and Cecillia Ormonde,
Gary Barnardi, Tom Adam, Loretta Alexandre,
Donna Sorensen, Silverio and Sandra Fernandes,
Gerald Genzoli, Charles Gersbach, Martin and
Barbara Lang, Fernando and Jorlanda Lourenco,
Jerome and Barbara Davis, Clifford Sorensen,
Silvia Leonardo and Leon and Diane Porter, Pam
Cavanagh, Jim West, Rick Litttlefield, Jerry Carlson,
John Petrusha, Jerome Davis and Don Becker

IN THE UNITED STATES BANKRUPTCY COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re | Case No.: 09-11078 |
| | Chapter 11 |
| HUMBOLDT CREAMERY, LLC, <br> a Delaware limited liability company, | CREDITORS' OBJECTION TO PROPOSED DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF REORGANIZATION |
| Debtor. <br> Tax ID: 8700736003 | HEARING DATE: November 13, 2009 <br> HEARING TIME: 10:00 a.m. <br> PLACE: 99 South "E" Street <br> Santa Rosa, CA 95404 <br> JUDGE: Hon. Alan Jaroslavsky |

///

///

Page 1 – CREDITORS' OBJECTION TO PROPOSED DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF REORGANIZATION

Series A, B & C Note Holders, other creditors and interest holders, noted above, (hereafter "Note Holders"), by and through their counsel, file this objection to the Debtor's Proposed Disclosure Statement as follows:

## INTRODUCTION

The debtor states in the disclosure statement that the proposed plan will be funded by litigation against third parties. However, neither the disclosure statement nor the plan that it refers to provides any detail on any litigation against third parties, the names of the third parties, the monetary amount of the claims against third parties, any defenses to the claims, whether the debtor has standing to pursue claims against its own employees, or any other information that may be relevant to the litigation. The proposed Disclosure Statement provides no insight or information for a creditor in this case to make an informed decision whether to vote for or against the proposed plan of reorganization. Creditors not only rely on the disclosure statement to form their ideas about what sort of distribution or other assets they will receive but also what risks they will face in pursuing the claims as proposed in the plan. Since the debtor's plan is based entirely on litigation against third parties, these objecting creditors are entitled to receive this basic information to make an informed decision before voting.

## ARGUMENT

**1. THE DISCLOSURE STATEMENT IS INADEQUATE AND FAILS TO PROVIDE BASIC INFORMATION TO MAKE AN INFORMED DECISION REGARDING THE PROPOSED CHAPTER 11 PLAN**

Bankruptcy courts and creditors rely on a debtor's disclosure statement in determining whether to vote for or approve a proposed plan of reorganization. *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3rd Cir.1996); *Nelson v. Dalkon Shield Claimants Trust (In re A.H. Robins Co., Inc.)*, 216 B.R. 175, 180 (E.D.Va.1997), aff'd without opinion 163 F.3d 598, 1998 WL 637401 (4th Cir.1998). Creditors not only rely on the disclosure statement to form their ideas about what sort of distribution or other assets

they will receive, but also what risks they will face. *In re Nelson*, 216 B.R. at 180. As such, the importance of full and honest disclosure is critical and cannot be overstated. *In re Ryan Operations*, 81 F.3d at 362.

Section 1125(a)(1) of the Bankruptcy Code defines adequate information as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor; any successor to the debtor; and a hypothetical investor typical of the holders of claims or interest in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

In determining the adequacy of information under Section 1125(a)(1), the bankruptcy court reviews the information on a case by case basis. *In re A.H. Robins, Co.*, 880 F.2d 694 (4th Cir.1989). Adequate information was vaguely defined by Congress so that courts could view the circumstances of each particular case. *In re Oxford Homes, Inc.*, 204 B.R. 264, 269 (Bankr.Me.1997).

In the case at hand, the disclosure statement provides that any payments to the allowed general unsecured creditors under the plan are contingent on the outcome of litigation claims and causes of action that may be pursued by the Liquidation Trust. The litigation claims are apparently summarized in Exhibit "B" to the Plan of Reorganization. However, Exhibit "B" provides minimal information. There are no statements as to who the claims are against, the amount of the damages alleged by the debtor, any defenses to the claims by the debtor, whether the debtor has standing to pursue claims against its employees,

or the likely recovery, if any. The disclosure is inadequate and the Court should require the debtor to provide adequate information on the litigation for this objecting party, and all other creditors, to be able to make an informed decision before voting on the proposed plan.

The disclosure statement provides at Page 28, under the heading Permanent Injunction, that all persons with respect to any Liquidating Trust Retained Claim are enjoined from pursuing these claims. This creditor again objects that this information is inadequate. For example, what are the Liquidating Trust Retained Claims that the debtor seeks to enjoin creditors from pursuing? How can the Court enjoin a creditor without any information as to what a Liquidating Trust Retained Claims are? The Note Holders have claims for misrepresentation and negligence against individuals who have worked for the debtor. Those claims are not subject to the automatic stay. The Note Holders raised this concern in their objection to the compromise of claims, between the Debtor, CoBank and The Unsecured Creditors Committee. On August 27, 2009, this Court entered an Order approving a compromise with the debtor, The Creditors Committee and CoBank. However, within the Order, the Court made it very clear that the Note Holders and other creditors were not restrained from and could proceed in the state court with their claims against third parties (individuals and/or entities other than the debtor) who may have defrauded the Note Holders. Is the debtor attempting to restrain the Note Holders from pursuing these same claims the Court allowed to proceed forward in state court? The disclosure statement is lacking information to determine such.

The Note Holders request that future proceedings relating to plan confirmation be moved to the Eureka Bankruptcy Court.

/ / /

/ / /

/ / /

/ / /

# **CONCLUSION**

Based on the foregoing, the Note Holders, respectfully request that their objections to the Disclosure Statement be sustained and for such other relief that the Court deems proper.

Dated: November 6, 2009.

BULLIVANT HOUSER BAILEY PC

By  */s/ Stephen P. Arnot*
Stephen P. Arnot, SBN 170245
E-Mail: steve.arnot@bullivant.com

Attorneys for Series A, B & C Note Holders, et al.

12110547.2
98/261