| | |
|---|---|
| SHEPPARD, MULLIN, RICHTER & HAMPTON LLP<br>A Limited Liability Partnership<br>Including Professional Corporations<br>MICHAEL H. AHRENS, Cal. Bar No. 44766<br>STEVEN B. SACKS, Cal. Bar No. 98875<br>ORI KATZ, Cal. Bar No. 209561<br>Four Embarcadero Center, 17th Floor<br>San Francisco, California 94111-4109<br>Telephone: 415-434-9100<br>Facsimile: 415-434-3947<br><br>Attorneys for HUMBOLDT CREAMERY, LLC | |

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SANTA ROSA DIVISION

| | |
|---|---|
| In re<br><br>HUMBOLDT CREAMERY, LLC, a Delaware limited liability company,<br><br>Debtor.<br><br>Tax ID: 87-0736033 | Case No. 09-11078<br><br>Chapter 11<br><br>**DEBTOR'S SECOND OMNIBUS OBJECTION TO CLAIMS, REGARDING CLAIMS FILED BY THE EMPLOYEES LISTED ON SCHEDULE 1 HERETO, BASED ON (i) THE DEBTOR'S BOOKS AND RECORDS, (ii) THE FACT THAT HUMBOLDT'S PENSION PLAN CONTRIBUTIONS ARE VOLUNTARY, (iii) APPLICABLE LAW REGARDING PRIORITY STATUS UNDER 11 U.S.C. § 507(a)(4) AND (a)(5), AND (iv) REDUCTIONS FOR PREPAYMENT OF PRIORITY CLAIMS;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[SEE NEXT PAGE FOR LIST OF CLAIMANTS]*<br><br>*[No Hearing Required Unless Requested]* |

## LIST OF CLAIMANTS

| Name | Claim Number |
|---|---|
| Mona Daly | 46 |
| Craig Vevoda | 122 |
| David Hayes | 160 |
| Anthony Titus | 215 |
| Paul Adams | 222 |
| Nick Ruff | 233 |
| Ken Land Jr. | 235 |
| Nathan Nelson | 241 |
| Steven Culver | 242 |
| Matthew Bettiga | 243 |
| Mike Farfan | 244 |
| Orlando R. Giannini Jr. | 251 |
| Kurtiss Ober | 252 |
| Jerry Branson | 254 |
| Len Mayer | 260 |
| Dale Wohlwend | 265 |
| Casey Emmons | 270 |
| Orval Crowl | 273 |
| Robert Miranda | 277 |
| Michael Callihan | 280 |
| Renae Will | 282 |
| Russel Durrett | 288 |
| Michael Wright | 296 |
| Daren Fisher | 302 |
| Jesse Chittenden | 308 |
| Ven Letter | 311 |
| Lawrence Belli | 312 |
| Lawrence Albin | 313 |
| Sarah Renner | 314 |
| Kao Saechao | 316 |
| Richard Heredia | 326 |
| Sheila Crandell | 327 |
| Keri Douglas | 332 |
| Jeffrey Sussman | 334 |
| Rick Dewberry | 337 |
| Victorine Travis | 338 |
| Tracy Black | 341 |
| Todd Mikkelsen | 348 |
| Jessie Coleman | 351 |
| Travis Betts | 352 |
| Terri Fisher | 353 |
| Lance Avila | 386 |
| JoAnn Comalli | 388 |
| Tami Schleef | 390 |
| Gary Green | 395 |
| Rudy Vidales | 399 |

-2-

W02-WEST:5MML1\402524869.2   SECOND OMNIBUS OBJECTION TO CLAIMS

## OMNIBUS OBJECTION TO CLAIMS

Humboldt Creamery, LLC (the "Debtor") hereby files this second omnibus objection regarding certain employee claims (the "Omnibus Objection"). This Omnibus Objection concerns the claims listed above, which are also reflected on Schedule 1 hereto.

This Omnibus Objection is based on the grounds that:

(i) The amount of priority asserted in certain claims exceeds that which is reflected in the Debtor's books and records.

(ii) The amount of priority asserted in certain claims exceeds the $10,950 per employee cap found in Bankruptcy Code section 507(a)(4) and (a)(5).

(iii) The Debtor's obligations to its pension plan for salaried employees is voluntary, and the Debtor has exercised its discretion not to make these contributions in light of its scarce resources, so there can be no priority claim under section 507(a)(5) for such contributions.

(iv) The amount of priority asserted in certain claims must be reduced by vacation and sick days taken postpetition.

This Omnibus Objection is based upon the Notice and Opportunity for Hearing on this Objection and the Declaration of Len Mayer (the "Mayer Declaration"), each filed concurrently herewith, as well as the proofs of claim evidencing the claims listed on Schedule 1 (copies of which are attached as <u>Exhibits B-1 through B-46</u> to the Mayer Declaration), the pleadings and records on file in this case, and such further evidence as the Court may consider prior to a final ruling on this Omnibus Objection.

This Omnibus Objection is without prejudice to Debtor's right to further object to the claims listed on Schedule 1 hereto, or to any other claims by any other past or present employees of the Debtor, including an objection based on grounds in addition to those set forth herein.

| | |
|---|---|
| 1 | Dated: November 25, 2009 |
| 2 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
| 3 | |
| 4 | By          */s/ Ori Katz* |
| 5 | ORI KATZ |
| 6 | Attorneys for Debtor<br>HUMBOLDT CREAMERY, LLC |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Until the closing of the sale of substantially all of its assets on August 27, 2009, the Debtor was operating as a producer and distributor of dairy products. As such, it had approximately 196 employees working for it during the 180 day period prior to bankruptcy. Many of these employees filed claims against the estate seeking priority claims for accrued vacation and sick days, wages, severance and contributions to employee benefit plans.

A portion of these claims are indeed entitled to priority status, but the amount asserted as priority by the employees must be reduced by the following factors. First, most of the claimants did not limit their priority claims to wages or employee benefits earned within 180 days of the bankruptcy filing, as they must under Bankruptcy Code sections 507(a)(4) and (a)(5). The Debtor reviewed its books and records and determined the amounts which are allocable to said 180 day period.

Second, the only employees that asserted priority claims for pension obligations are those that are salaried employees. These employees are covered by the Debtor's own retirement plan, under which contributions on the part of the Debtor of the Debtor are voluntary. Given the Debtor's scarce resources and its duty to preserve the estate for the benefit of all of its creditors, it has elected not to make any such contributions. Consequently, no salaried employee should have a priority claim or even an unsecured claim for retirement plan contributions. Since no employees other than salaried employees filed claims seeking payments for missed plan contributions, the total priority claims for employees under 507(a)(5) should be zero. That said, the multiemployer pension plan representing the majority of the Debtor's hourly employees has filed claims for pension obligations, which the Debtor proposes to allow as priority in the amount of $223,522.01.[1] Those claims are not reflected in the calculations on Schedule 1 hereto.

---

[1] *See* the Debtor's Fist Omnibus Objection to Claims, Regarding Claims filed by the Western Conference of Teamsters Pension Trust Fund, filed concurrently herewith.

Third, even after calculating the 180 day claims entitled to priority and reducing the 507(a)(5) claims to zero, one of the claims exceeded in the $10,950 cap per employee set forth by Bankruptcy Code sections 507(a)(4) and (a)(5).

Fourth, after calculating the priority claims to which each employee is entitled, these claims must be reduced by the amount paid out to employees on account of sick days and vacation days postpetition. These payments to employees constituted payment of prepetition claims during the postpetition period. The Debtor's only authority to make these payments came from this Court's April 22, 2009 Order [Dckt. #19], which specifically contemplated that these payments would be made from the employees' priority claims. Indeed, the rationale for the Debtor's authority to pay employees on account of sick and vacation days during the postpetition period was that it was merely early payment of their priority claims under Bankruptcy Code sections 507(a)(4) and (a)(5).

Taking into account all of the above, the priority claims owing under Bankruptcy Code section 507(a)(4) and (a)(5) to employees that filed claims must be reduced to the amounts reflected in the "Total Allowed Claim" column on the far right hand of the chart found in Schedule 1 attached hereto.

## II. FACTUAL STATEMENT

Approximately 196 different people worked as employees of the Debtor during the 180 days prior to its bankruptcy filing. Eighty-one of these employees have filed claims in this bankruptcy case. The names of the claimants, claim numbers and asserted amounts are set forth on Schedule 1 attached hereto and incorporated herein. The majority of these claimants asserted priority status under either Bankruptcy Code section 507(a)(4) for wages, severance, sick pay and vacation pay, and/or under Bankruptcy Code section 507(a)(5) for pension plan contributions.

With regard to the pension plan claims, the only employees asserting such claims are salaried employees, who are covered by the Humboldt Creamery Retirement

Plan.[2] That Plan provides that the Debtor "may make a discretionary matching contribution" and "may make a discretionary profit sharing contribution" to the Plan on an annual basis on behalf of the employees.[3] It is clear then that the Debtor's obligations to make contributions to the Humboldt Creamery Retirement Plan are voluntary. In light of the Debtor's scarce resources and its duty to preserve the value of the estate for the benefit of all creditors, the Debtor has exercised its discretion not make any contributions to the Humboldt Creamery Retirement Plan.

As to pension claims on behalf of hourly employees, the Western Conference of Teamsters Pension Trust Fund has filed Claim Nos. 102, 205, 206, 220, 230 and 419, asserting priority claims in the aggregate amount of $1,970,449.22.

### III. ARGUMENT

A. <u>The Asserted Priority Amounts for Certain Employee Claims Are Greater Than Set Forth in the Debtor's Books and Records</u>.

Many of the employee claims that were filed do not appear to limit the priority claim asserted to the amounts pertaining to the 180 day period prior to the Debtor's bankruptcy filing, as they must under Bankruptcy Code sections 507(a)(4) and (a)(5). The Debtor has reviewed its books and records and has determined the amount of priority claims owing to its employees under sections 507(a)(4) and 507(a)(5) for that 180 day period. In certain cases, the amount of priority asserted by the employee in question exceeds the amount reflected in the Debtor's books and records. The priority claims have thus been reduced in accordance with the Debtor's books and records, as reflected in the calculations on Schedule 1 hereto.

---

[2] *See* Mayer Declaration, Ex. A, for a copy of the Summary Plan Description.
[3] *See* Mayer Declaration, Ex. A, Article III.

B. <u>The Asserted Priority Claims for Pension Plan Contributions Under 507(a)(5) Should Be Disallowed Because the Contributions are Voluntary.</u>

Certain claims assert priority claims under Bankruptcy Code section 507(a)(5) for contributions to employee benefit plans. Only salaried employees made 507(a)(5) claims, so all 507(a)(5) claims are made pursuant the Humboldt Creamery Retirement Plan. Under that Plan, the contributions to be made by the Debtor are voluntary, left to the discretion of the Debtor. In light of its scarce resources and its duty to preserve value in the estate for the benefit of all creditors, the Debtor has exercised its discretion not to make any contributions to the Humboldt Creamery Retirement Plan. As a result, no employee that asserted a 507(a)(5) claim has a valid basis for either a priority claim or an unsecured claim. Any such priority should be disallowed, and the unsecured claim should be reduced to reflect that no pension obligation is owing by the Debtor on behalf of such employee.

Of note, the Debtor's unionized hourly employees are largely represented by the Western Conference of Teamsters Pension Trust Fund, which bargained with the Debtor for obligatory pension contributions. Teamsters has filed several claims in this estate based on outstanding pension contributions and related charges, which the Debtor proposes to allow in the priority amount of $223,522.01.

C. <u>The Priority Amount of Claim No. 122 Is Greater Than the Limit Imposed by 507(a)(4) and (a)(5).</u>

Bankruptcy Code sections 507(a)(4) and (a)(5) provide for a cap of $10,950 per employee for priority claims based on wages and contributions employee benefit plans. Importantly, the same $10,950 cap applies to priority claims under both subsections. That is, a claim for contributions to employee benefit plans only has priority to the extent that there is any room left in the $10,950 cap after priority wage claims are taken into account.[4]

---

[4] *See* 11 U.S.C. § 507(a)(5) (providing that the priority for employee benefit claims is reduced by "the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to

-8-

Case: 09-11078   Doc# 360   Filed: 11/25/09   Entered: 11/25/09 23:53:03   Page 8 of 14
W02-WEST:5MML1\402324869.2                          SECOND OMNIBUS OBJECTION TO CLAIMS

While recent case law instructs that the $10,950 limit operates as an aggregate limit for the purposes of 507(a)(5), as opposed to the individualized limit set forth in 507(a)(4), it also recognizes that 507(a)(5) priority is reduced by the individual priority claims under 507(a)(4).[5] Further, this aggregate limit is reduced by not only 507(a)(4) claims, but also any amounts paid by the estate on behalf of its employees to any other employee benefit plan.[6] Thus, we must look to the 507(a)(4) claims and 507(a)(5) claims filed by the pension plans themselves in order to calculate the aggregate amount available for individual 507(a)(5) claims.

Here, the calculation is fairly simple, as the potential aggregate priority left for 507(a)(5) claims exceeds the $223,522.01 that the Debtor asserts is the priority amount owing to the Teamsters. The only question then is whether any 507(a)(4) claims exceed the $10,950 cap. Only one such claim does, Claim No. 122 filed by Craig Vevoda. As to that priority claim, it should be reduced to the statutory $10,950 per employee cap, prior to being reduced by any amount of such claim that has been paid postpetition, as set forth in the next section.

D.  The Priority Claims Must Be Reduced by Sick Days and Vacation Days Taken Postpetition.

After calculating the amount of employee claims properly entitled to priority under sections 507(a)(4) and (a)(5) per the above, these claims still need to be reduced to the extent that they have already been paid. Any amount of sick days or vacation days taken postpetition constituted such an early payment of an employee's priority claim, requiring the claim's reduction by the amount paid. As these paid sick days and vacation

---

any other employee benefit plan."); *see also* 4 Collier on Bankruptcy (15th ed. rev.) P 507.06.

[5] *See In re Consolidated Freightways Corp.*, 564 F.3d 1161, 1168 (9th Cir. 2009).

[6] *See* 11 U.S.C. § 507(a)(5)(B)(ii) (providing that the priority claim for contributions to employee benefit plans is, in addition to being reduced by 507(a)(4) wage claims, is reduced by "the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.").

days (which constitute wage claims under 507(a)(4))[7] were earned prepetition and paid postpetition, the authorization for paying employees on account of sick days and vacation days during the postpetition period came from this Court's *Order Authorizing Debtor to Honor Prepetition Obligations to Employees* [Dckt. #19] entered on April 22, 2009 (the "Employee Order"). The Employee Order expressly authorized (but did not require) the Debtor to honor vacation days and other employee benefit plans and programs, provided that such benefits would be subject to the $10,950 cap on priority employee claims in Bankruptcy Code sections 507(a)(4) and (a)(5). (Employee Order, ¶ 1.) This means that any sick and vacation days taken postpetition were taken not from the "first earned" sick or vacation days (which could have been outside of the 180 day priority window), but must necessarily have been taken from each employee's priority wage claim under section 507(a)(4). Otherwise, pursuant to paragraph 1 of the Employee Order, the Debtor would not have had the authority to pay its employees for sick and vacation days taken postpetition.

Case law confirms that this must be the case, as bankruptcy courts have routinely held that the authority for authorizing debtors to honor such employee benefit programs postpetition (and so pay its employees on account of prepetition claims) arises out of the fact that it is merely an early payment of a priority claim under 507(a)(4) and (a)(5).[8]

---

[7] *See* 11 U.S.C. § 507(a)(4) (creating priority status for claims based on "wages, salaries, or commissions, including *vacation*, severance, and *sick leave* pay") (emphasis added).

[8] *See e.g., In re CEI Roofing, Inc.*, 315 B.R. 50, 53 (Bankr. N.D. Tex. 2004) ("According to the Debtors, the prepetition claims of the employees for which payment authority is sought are priority claims under Bankruptcy Code § 507 (a)(3) [now (a)(4)] (wages and commissions of $4,650 or less) and (4) (claims for contributions to employee benefit plans). Thus, argue the Debtors, granting authority to pay such claims is a timing issue only…[the Court then held as follows] To the extent that the existing holders of claims of higher priority than the wage claims consent or do not timely object, such priority claims may be made during the pendency of the bankruptcy case. The treatment and payment of such claims before confirmation does no violence to the Code or existing case law in this circuit. In fact, such orders are usually 'necessary' and 'appropriate' to implement a debtor's reorganization under Chapter 11."); *see also* 4 Coller on Bankruptcy 15th ed. rev. P 507.05 ("If wage claims were not entitled to priority, it would be difficult to justify "first day" orders approving payment of prepetition wages. There is no clear statutory authority

Thus, the priority claims asserted by the Debtor's employees listed on Schedule 1 hereto should be reduced by the amount of sick and vacation pay that the Debtor paid on account of such claims postpetition.[9] As a result, the final amount of employee claims entitled to priority payment at this time should be the amounts listed in the "Total Allowed Claim" column on the far right hand side of the chart appearing in Schedule 1 hereto.

E.  **Schedule E Provides No Basis for Priority**.

Of note, the Debtor's Schedule E reflects a claim for contributions to the Humboldt Creamery Retirement Plan for salaried employees. The claim is listed at $219,553.83. However, Schedule E provides no basis for a priority claim because the amount of priority is listed as "unknown." Likewise, a claim for Employees' Vacation and Sick Pay is listed on Schedule E at $270,387.92, but the priority amount is shown as "unknown". Since the amounts were noted as "unknown" on Schedule E, there is no basis for priority based on Schedule E for either claim.

### IV.  CONCLUSION

Based on the foregoing, the Debtor prays that this Court enter an Order as follows:

1. Sustaining the Omnibus Objection;

2. Disallowing the priority status of the claims listed on Schedule 1 to the extent inconsistent with Schedule 1; and

3. Granting such other and further relief as this Court deems just and appropriate.

---

for such first day orders, although a court with some confidence in the debtor's ability to satisfy claims through the third priority could justify the order under section 105.").

[9] *See e.g. In re Ground Round, Inc.*, 316 B.R. 423, 426 (Bankr. D. Mass 2004) ("Of course, to the extent that previous orders have resulted in the payment to a particular employee of wages entitled to the statutory priority, the vacation pay limit for that person will be reduced.").

-11-

DATED: November 25, 2009

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  _____*/s/ Ori Katz*_____
ORI KATZ

Attorneys for Debtor
HUMBOLDT CREAMERY, LLC

## SCHEDULE 1

Chart of Employee Claims and Debtor's Calculations of Priority Amounts

| Employee Name | Claim No. | Claim Amount Asserted | Total Allowed Claim (fn1) |
|---|---|---|---|
| Mona Daly | 46 | $12,500.00 | $0.00 |
| Craig Vevoda | 122 | $45,909.24 | $0.00 |
| David Hayes | 160 | $4,119.30 | $372.24 |
| Anthony Titus | 215 | $7,530.98 | $2,030.98 |
| Paul Adams | 222 | $15,303.72 | $3,127.31 |
| Nick Ruff | 233 | $8,121.96 | $1,175.12 |
| Ken Land Jr. | 235 | $3,645.24 | $1,326.82 |
| Nathan Nelson | 241 | $2,213.28 | $1,175.12 |
| Steven Culver | 242 | $3,682.01 | $1,741.36 |
| Matthew Bettiga | 243 | $5,047.01 | $0.00 |
| Mike Farfan | 244 | $1,370.84 | $605.04 |
| Orlando R. Giannini Jr. | 251 | $11,604.40 | $2,754.39 |
| Kurtiss Ober | 252 | $6,283.19 | $1,221.05 |
| Jerry Branson | 254 | $11,164.06 | $1,645.49 |
| Len Mayer | 260 | $12,134.93 | $5,979.32 |
| Dale Wohlwend | 265 | $3,261.23 | $579.67 |
| Casey Emmons | 270 | $11,361.75 | $1,561.96 |
| Orval Crowl | 273 | $1,380.76 | $176.08 |
| Robert Miranda | 277 | $8,358.00 | $2,857.08 |
| Michael Callihan | 280 | $10,950.00 | $5,459.52 |
| Renae Will | 282 | $9,262.76 | $3,762.76 |
| Russel Durrett | 288 | $7,607.45 | $1,362.00 |
| Michael Wright | 296 | $6,738.94 | $1,326.88 |
| Daren Fisher | 302 | $16,331.56 | $2,014.47 |
| Jesse Chittenden | 308 | $7,663.60 | $2,163.60 |
| Ven Letter | 311 | $9,677.00 | $2,442.26 |
| Lawrence Belli | 312 | $2,934.21 | $2,277.03 |
| Lawrence Albin | 313 | $7,330.77 | $1,830.56 |
| Sarah Renner | 314 | $6,106.72 | $606.72 |
| Kao Saechao | 316 | $2,407.00 | $875.75 |
| Richard Heredia | 326 | $12,504.24 | $1,687.08 |
| Sheila Crandell | 327 | $198,013.44 | $3,179.08 |
| Keri Douglas | 332 | $4,920.00 | $0.00 |
| Jeffrey Sussman | 334 | $10,547.80 | $5,047.80 |
| Rick Dewberry | 337 | $7,265.28 | $1,765.28 |
| Victorine Travis | 338 | $4,240.54 | $1,789.80 |

| | | | |
|---|---|---|---|
| Tracy Black (fn2) | 341 | $5,305.36 | $1,872.25 |
| Todd Mikkelsen | 348 | $7,159.09 | $2,258.92 |
| Jessie Coleman | 351 | $3,669.70 | $469.71 |
| Travis Betts | 352 | $6,240.30 | $740.30 |
| Terri Fisher | 353 | $4,741.08 | $888.97 |
| Lance Avila | 386 | $3,413.02 | $1,285.24 |
| JoAnn Comalli | 388 | $7,498.00 | $2,029.19 |
| Tami Schleef | 390 | $7,297.00 | $1,797.00 |
| Gary Green (fn2) | 395 | $9,213.63 | $2,631.12 |
| Rudy Vidales | 399 | $3,840.00 | $2,199.44 |
| **Total** | | **$557,870.39** | **$82,091.76** |

fn1. This amount reflects the 180 day claim under 507(a)(4) shown in the Debtor's books and records, less any amounts paid to the employee on account of sick and/or vacation pay taken postpetition.

fn2. Unclear from the face of the claim how much was asserted under 507(a)(5).