# EXHIBIT A

HUMBOLDT CREAMERY RETIREMENT PLAN

SUMMARY PLAN DESCRIPTION

## TABLE OF CONTENTS

## INTRODUCTION TO YOUR PLAN

What kind of Plan is this?...................................................................................................................................... 1

What information does this Summary provide?........................................................................................... 1

## ARTICLE I
## PARTICIPATION IN THE PLAN

How do I participate in the Plan?............................................................................................................. 1

What happens if I'm a Participant, terminate employment and then I'm rehired?................................. 2

## ARTICLE II
## EMPLOYEE CONTRIBUTIONS

What are salary deferrals and how do I contribute them to the Plan?..................................................... 2

What are rollover contributions?............................................................................................................... 3

## ARTICLE III
## EMPLOYER CONTRIBUTIONS

What is the Employer matching contribution and how is it allocated?................................................... 3

What is the Employer profit sharing contribution and how is it allocated? ........................................... 3

How is my service determined for allocation purposes?.......................................................................... 4

What are forfeitures and how are they allocated?.................................................................................... 4

## ARTICLE IV
## COMPENSATION AND ACCOUNT BALANCE

What compensation is used to determine my Plan benefits? ................................................................... 4

Is there a limit on the amount of compensation which can be considered? ........................................... 5

Is there a limit on how much can be contributed to my account each year?........................................... 5

How is the money in the Plan invested? .................................................................................................. 5

Will Plan expenses be deducted from my account balance?................................................................... 6

## ARTICLE V
## VESTING

What is my vested interest in my account?............................................................................................... 6

How is my service determined for vesting purposes?.............................................................................. 7

What service is counted for vesting purposes?........................................................................................ 7

What happens to my non-vested account balance if I'm rehired? .......................................................... 8

What happens if the Plan becomes a "top-heavy plan"?......................................................................... 8

## ARTICLE VI
## DISTRIBUTIONS PRIOR TO TERMINATION

Can I withdraw money from my account in the event of financial hardship?......................................... 8

## ARTICLE VII
## BENEFITS AND DISTRIBUTIONS UPON TERMINATION OF EMPLOYMENT

When can I get money out of the Plan?.................................................................................................... 9

i

What happens if I terminate employment before death, disability or retirement? ........................................................... 10

What happens if I terminate employment at Normal Retirement Date? ...................................................................... 10

What happens if I terminate employment due to disability? ..................................................................................... 10

How will my benefits be paid to me? ........................................................................................................................ 10

May I elect another form of benefit? ......................................................................................................................... 10

## ARTICLE VIII
## BENEFITS AND DISTRIBUTIONS UPON DEATH

What happens if I die while working for the Employer? ............................................................................................ 11

Who is the beneficiary of my death benefit? ............................................................................................................. 11

How will the death benefit be paid to my beneficiary? ............................................................................................. 11

When must the last payment be made to my beneficiary? ......................................................................................... 12

What happens if I'm a Participant, terminate employment and die before receiving all my benefits? ..................... 12

## ARTICLE IX
## TAX TREATMENT OF DISTRIBUTIONS

What are my tax consequences when I receive a distribution from the Plan? .............................................................. 12

Can I elect a rollover to reduce or defer tax on my distribution? ............................................................................. 12

## ARTICLE X
## PROTECTED BENEFITS AND CLAIMS PROCEDURES

Are my benefits protected? ....................................................................................................................................... 13

Are there any exceptions to the general rule? ........................................................................................................... 13

Can the Plan be amended? ........................................................................................................................................ 13

What happens if the Plan is discontinued or terminated? .......................................................................................... 13

How do I submit a claim for Plan benefits? .............................................................................................................. 13

What if my benefits are denied? ................................................................................................................................ 13

What is the Claims Review Procedure? ..................................................................................................................... 14

What are my rights as a Plan Participant? ................................................................................................................ 15

What can I do if I have questions or my rights are violated? ..................................................................................... 16

## ARTICLE XI
## GENERAL INFORMATION ABOUT THE PLAN

Plan Name .................................................................................................................................................................. 16

Plan Number .............................................................................................................................................................. 16

Plan Effective Dates .................................................................................................................................................. 16

Other Plan Information .............................................................................................................................................. 16

Employer Information ................................................................................................................................................ 16

Plan Administrator Information ................................................................................................................................. 17

Plan Trustee Information and Plan Funding Medium ................................................................................................ 17

HUMBOLDT CREAMERY RETIREMENT PLAN

SUMMARY PLAN DESCRIPTION

INTRODUCTION TO YOUR PLAN

**What kind of Plan is this?**

Humboldt Creamery Retirement Plan (the "Plan") has been adopted to provide you with the opportunity to save for retirement on a tax-advantage basis. This Plan is a type of qualified retirement plan commonly referred to as a 401(k) Plan. As a Participant under the Plan, you may elect to contribute a portion of your compensation to the Plan. In addition, your Employer may make contributions to the Plan on your behalf.

**Types of Contributions.** The following types of contributions may be made under this Plan:

- employee salary deferrals

- employee rollover contributions

- employer matching contributions

- employer profit sharing contributions

**What information does this Summary provide?**

This Summary Plan Description ("SPD") contains information regarding when you may become eligible to participate in the Plan, your Plan benefits, your distribution options, and many other features of the Plan. You should take the time to read this SPD to get a better understanding of your rights and obligations in the Plan.

In this summary, your Employer has addressed the most common questions you may have regarding the Plan. If this SPD does not answer all of your questions, please contact the Administrator or other plan representative. The Administrator is responsible for responding to questions and making determinations related to the administration, interpretation, and application of the Plan. The name and address of the Administrator can be found at the end of this SPD in the Article entitled "General Information About the Plan."

This SPD describes the Plan's benefits and obligations as contained in the legal Plan document, which governs the operation of the Plan. The Plan document is written in much more technical and precise language and is designed to comply with applicable legal requirements. If the non-technical language in this SPD and the technical, legal language of the Plan document conflict, the Plan document always governs. If you wish to receive a copy of the legal Plan document, please contact the Administrator.

The Plan and your rights under the Plan are subject to federal laws, such as the Employee Retirement Income Security Act (ERISA) and the Internal Revenue Code, as well as some state laws. The provisions of the Plan are subject to revision due to a change in laws or due to pronouncements by the Internal Revenue Service (IRS) or Department of Labor (DOL). Your Employer may also amend or terminate this Plan. If the provisions of the Plan that are described in this SPD change, your Employer will notify you.

ARTICLE I
PARTICIPATION IN THE PLAN

**How do I participate in the Plan?**

Provided you are not an Excluded Employee, you may begin participating under the Plan once you have satisfied the eligibility requirements and reached your "Entry Date." The following describes the eligibility requirements and Entry Dates that apply. You should contact the Administrator if you have questions about the timing of your Plan participation.

**Salary Deferrals**

**Excluded Employees.** If you are a member of a class of employees identified below, you are an Excluded Employee and you are not entitled to participate in the Plan for purposes of salary deferrals. The Excluded Employees are:

- union employees whose employment is governed by a collective bargaining agreement under which retirement benefits were the subject of good faith bargaining

**Eligibility Conditions.** You will be eligible to participate for purposes of salary deferrals when you have attained age 21. However, you will actually enter the Plan once you reach the Entry Date as described below.

1

**Entry Date.** For purposes of salary deferrals, your Entry Date will be the first day of the Plan Year or the first day of the seventh month of the Plan Year coinciding with or next following the date you satisfy the eligibility requirements.

### Matching Contributions

**Excluded Employees.** If you are a member of a class of employees identified below, you are an Excluded Employee and you are not entitled to participate in the Plan for purposes of matching contributions. The Excluded Employees are:

- union employees whose employment is governed by a collective bargaining agreement under which retirement benefits were the subject of good faith bargaining

**Eligibility Conditions.** You will be eligible to participate for purposes of matching contributions when you have attained age 21. However, you will actually enter the Plan once you reach the Entry Date as described below.

**Entry Date.** For purposes of matching contributions, your Entry Date will be the first day of the Plan Year or the first day of the seventh month of the Plan Year coinciding with or next following the date you satisfy the eligibility requirements.

### Profit Sharing Contributions

**Excluded Employees.** If you are a member of a class of employees identified below, you are an Excluded Employee and you are not entitled to participate in the Plan for purposes of profit sharing contributions. The Excluded Employees are:

- union employees whose employment is governed by a collective bargaining agreement under which retirement benefits were the subject of good faith bargaining

**Eligibility Conditions.** You will be eligible to participate for purposes of profit sharing contributions when you have attained age 21. However, you will actually enter the Plan once you reach the Entry Date as described below.

**Entry Date.** For purposes of profit sharing contributions, your Entry Date will be the first day of the Plan Year or the first day of the seventh month of the Plan Year coinciding with or next following the date you satisfy the eligibility requirements.

### What happens if I'm a Participant, terminate employment and then I'm rehired?

If you are no longer a Participant because you terminated employment, and you are rehired, then you will be able to participate in the Plan on your date of rehire provided you are otherwise eligible to participate in the Plan.

## ARTICLE II
## EMPLOYEE CONTRIBUTIONS

### What are salary deferrals and how do I contribute them to the Plan?

**Salary Deferrals.** As a Participant under the Plan, you may elect to reduce your compensation by a specific percentage or dollar amount and have that amount contributed to the Plan on a pre-tax basis as a salary deferral. Your taxable income is reduced by the deferral contribution so you pay less in federal income taxes (however, the amount you defer is still counted as compensation for purposes of Social Security taxes). Later, when the Plan distributes the deferrals and earnings, you will pay the taxes on those deferrals and the earnings. Therefore, federal income taxes on the deferral contributions and on the earnings are only postponed. Eventually, you will have to pay taxes on these amounts.

**Deferral procedure.** The amount you elect to defer will be deducted from your pay in accordance with a procedure established by the Administrator. The procedure allows you to enter into a salary deferral agreement after you satisfy the Plan's eligibility requirements. You may elect to defer a portion of your salary as of your Entry Date. Such election will become effective as soon as administratively feasible after it is received by the Administrator. Your election will remain in effect until you modify or terminate it.

**Deferral modifications.** You are permitted to revoke your salary deferral election any time during the Plan Year. You may make any other modification as of any date determined by the Plan Administrator or in accordance with any other procedure that your Employer provides. Any modification will become effective as soon as administratively feasible after received by the Administrator.

**Deferral Limit.** As a Participant, you may elect to defer a percentage of your compensation each year instead of receiving that amount in cash. Your total deferrals in any taxable year may not exceed a dollar limit which is set by law. The limit for 2008 is $15,500. After 2008, the dollar limit may increase for cost-of-living adjustments. See the paragraph below called "Annual dollar limit." The Administrator will notify you of the maximum percentage you may defer.

**Catch-up contributions.** Effective January 1, 2002, if you are age 50 or over (or will attain age 50 before the end of a calendar year), then you may elect to defer additional amounts (called "catch-up contributions") to the Plan as of the January 1st of that year. The additional amounts may be deferred regardless of any other limitations on the amount that you may defer to the Plan. The maximum "catch-up contribution" that you can make in 2008 is $5,000. After 2008, the maximum may increase for cost-of-living adjustments.

2

**Annual dollar limit.** You should also be aware that each separately stated annual dollar limit on the amount you may defer (the annual deferral limit and the "catch-up contribution" limit) is a separate aggregate limit that applies to all such similar salary deferral amounts and "catch-up contributions" you may make under this Plan and any other cash or deferred arrangements (including tax-sheltered 403(b) annuity contracts, simplified employee pensions or other 401(k) plans) in which you may be participating. Generally, if an annual dollar limit is exceeded, then the excess must be returned to you in order to avoid adverse tax consequences. For this reason, it is desirable to request in writing that any such excess salary deferral amounts and "catch-up contributions" be returned to you.

If you are in more than one plan, you must decide which plan or arrangement you would like to return the excess. If you decide that the excess should be distributed from this Plan, then you must communicate this in writing to the Administrator no later than the March 1st following the close of the calendar year in which such excess deferrals were made. However, if the entire dollar limit is exceeded in this Plan or any other plan your Employer maintains, then you will be deemed to have notified the Administrator of the excess. The Administrator will then return the excess deferral and any earnings to you by April 15th.

**Allocation of deferrals.** The Administrator will allocate the amount you elect to defer to an account maintained on your behalf. You will always be 100% vested in this account (see the Article in this SPD entitled "Vesting"). This means that you will always be entitled to all amounts that you defer. This money will, however, be affected by any investment gains or losses. If there is an investment gain, then the balance in your account will increase. If there is an investment loss, then the balance in your account will decrease.

**Distribution of deferrals.** The rules regarding distributions of amounts attributable to your salary deferrals are explained later in this SPD.

## What are rollover contributions?

**Rollover contributions.** At the discretion of the Administrator, once you become a Participant (for so long as you remain employed), or if you are an eligible employee still within the waiting period, you may be permitted to deposit into the Plan distributions you have received from other plans and certain IRAs. Such a deposit is called a "rollover" and may result in tax savings to you. You may ask the administrator or trustee of the other plan or IRA to directly transfer (a "direct rollover") to this Plan all or a portion of any amount that you are entitled to receive as a distribution from such plan. Alternatively, if you received a distribution from a prior plan, you may elect to deposit any amount eligible to be rolled over within 60 days of your receipt of the distribution. You should consult qualified counsel to determine if a rollover is permitted and in your best interest.

**Rollover account.** Your rollover will be accounted for in a "rollover account." You will always be 100% vested in your "rollover account" (see the Article in this SPD entitled "Vesting"). This means that you will always be entitled to all amounts in your rollover account. Rollover contributions will be affected by any investment gains or losses.

**Withdrawal of rollover contributions.** You may withdraw the amounts in your "rollover account" at any time.

## ARTICLE III
## EMPLOYER CONTRIBUTIONS

In addition to any deferrals you elect to make, your Employer may make additional contributions to the Plan on your behalf. This Article describes Employer contributions that may be made to the Plan and how your share of the contributions is determined.

### What is the Employer matching contribution and how is it allocated?

**Matching Contribution.** Your Employer may make a discretionary matching contribution equal to a uniform percentage of your salary deferrals. Each year, your Employer will determine the amount of the discretionary percentage.

**Limit on matching percentage.** In applying this matching percentage, however, your Employer has the option to disregard salary deferrals that exceed a certain dollar amount or a certain percentage of your compensation for such period.

**Allocation conditions.** In order to share in the matching contribution for a Plan Year, you must satisfy the following conditions:

- If you are employed on the last day of the Plan Year, you will share if you completed a Year of Service during the Plan Year.

- You will share in the matching contribution for the year regardless of the amount of service you complete during the Plan Year in the year of your death, disability or retirement.

### What is the Employer profit sharing contribution and how is it allocated?

**Profit sharing contribution.** Each year, your Employer may make a discretionary profit sharing contribution to the Plan. Your share of any contribution is determined below.

**Allocation conditions.** In order to share in the profit sharing contribution you must satisfy the following conditions:

- If you are employed on the last day of the Plan Year, you will share if you completed a Year of Service during the Plan Year.

- You will share in the profit sharing contribution for the year regardless of the amount of service you complete during the Plan Year in the year of your death, disability or retirement.

**Your share of the contribution.** The profit sharing contribution will be "allocated" or divided among Participants eligible to share in the contribution for the Plan Year.

Your share of the profit sharing contribution is determined by the following fraction:

$$\text{Profit Sharing Contribution} \quad \times \quad \frac{\text{Your Compensation}}{\substack{\text{Total Compensation of All} \\ \text{Participants Eligible to} \\ \text{Share}}}$$

For example: Suppose the profit sharing contribution for the Plan Year is $20,000. Employee A's compensation for the Plan Year is $25,000. The total compensation of all Participants eligible to share, including Employee A, is $250,000. Employee A's share will be:

$$\$20,000 \quad \times \quad \frac{\$25,000}{\$250,000} \quad \text{or} \quad \$2,000$$

**How is my service determined for allocation purposes?**

**Year of Service.** You will have completed a Year of Service for a Plan Year if you have completed at least 1,000 Hours of Service during the Plan Year.

**Hour of Service.** You will be credited with your actual Hours of Service for:

(a) each hour for which you are directly or indirectly compensated by the Employer for the performance of duties during the Plan Year;

(b) each hour for which you are directly or indirectly compensated by the Employer for reasons other than the performance of duties (such as vacation, holidays, sickness, disability, lay-off, military duty, jury duty or leave of absence during the Plan Year); and

(c) each hour for back pay awarded or agreed to by the Employer.

You will not be credited for the same Hours of Service both under (a) or (b), as the case may be, and under (c).

**What are forfeitures and how are they allocated?**

**Definition of forfeitures.** In order to reward employees who remain employed with the Employer for a long period of time, the law permits a "vesting schedule" to be applied to certain contributions that your Employer makes to the Plan. This means that you will not be entitled ("vested") in all of the contributions until you have been employed with the Employer for a specified period of time (see the Article entitled "Vesting"). If a Participant terminates employment before being fully vested, then the non-vested portion of the terminated Participant's account balance remains in the Plan and is called a forfeiture. Forfeitures may be used by the Plan for several purposes.

**Allocation of forfeitures.** Forfeitures will be allocated as follows:

- Forfeitures may first be used to pay any administrative expenses.

- Any remaining forfeitures attributable to amounts other than Employer matching contributions will be used to reduce any Employer contribution.

- Any remaining forfeitures attributable to matching contributions will be used to reduce any Employer contribution.

## ARTICLE IV
## COMPENSATION AND ACCOUNT BALANCE

**What compensation is used to determine my Plan benefits?**

**Definition of compensation.** For the purposes of the Plan, compensation has a special meaning. Compensation is generally defined as your total compensation that is subject to income tax and paid to you by your Employer during the Plan Year. However, the definition of compensation will vary depending on the type of contribution under the Plan. Amounts paid to you after you terminate employment are generally not treated as compensation (except as may be provided below, and then only if paid by the earlier of 2 1/2 months following termination, or if later, the end of the plan year of termination). If you are a self-employed individual, your compensation will be equal to your earned income. The following describes the adjustments to compensation that may apply for the different types of contributions provided under the Plan.

4

## Salary Deferrals

**Adjustments to compensation.** The following adjustments to compensation will be made for purposes of salary deferrals:

- salary deferrals to this Plan and to any other plan or arrangement (such as a cafeteria plan) will be included

- compensation paid after you terminate employment for services performed during your regular working hours, or for services outside your regular working hours (such as overtime or shift differential), commissions, bonuses, or other similar payments that would have been made to you had you continued employment will be included

- compensation paid for unused accrued bona fide sick, vacation or other leave, if such amounts would have been included in compensation if paid prior to your termination of employment and you would have been able to use the leave if employment had continued will be included. In addition, compensation will also include nonqualified unfunded deferred compensation if the payment is includible in gross income and would have been paid to you had you continued employment

## Matching Contributions

**Adjustments to compensation.** The following adjustments to compensation will be made for purposes of matching contributions:

- salary deferrals to this Plan and to any other plan or arrangement (such as a cafeteria plan) will be included

- compensation paid after you terminate employment for services performed during your regular working hours, or for services outside your regular working hours (such as overtime or shift differential), commissions, bonuses, or other similar payments that would have been made to you had you continued employment will be included

- compensation paid for unused accrued bona fide sick, vacation or other leave, if such amounts would have been included in compensation if paid prior to your termination of employment and you would have been able to use the leave if employment had continued will be included. In addition, compensation will also include nonqualified unfunded deferred compensation if the payment is includible in gross income and would have been paid to you had you continued employment

## Profit Sharing Contributions

**Adjustments to compensation.** The following adjustments to compensation will be made for purposes of profit sharing contributions:

- salary deferrals to this Plan and to any other plan or arrangement (such as a cafeteria plan) will be included

- Exclude Compensation in Excess of $55,000

- compensation paid after you terminate employment for services performed during your regular working hours, or for services outside your regular working hours (such as overtime or shift differential), commissions, bonuses, or other similar payments that would have been made to you had you continued employment will be included

- compensation paid for unused accrued bona fide sick, vacation or other leave, if such amounts would have been included in compensation if paid prior to your termination of employment and you would have been able to use the leave if employment had continued will be included. In addition, compensation will also include nonqualified unfunded deferred compensation if the payment is includible in gross income and would have been paid to you had you continued employment

**Is there a limit on the amount of compensation which can be considered?**

The Plan, by law, cannot recognize annual compensation in excess of a certain dollar limit. The limit for the Plan Year beginning in 2008 is $230,000. After 2008, the dollar limit may increase for cost-of-living adjustments.

**Is there a limit on how much can be contributed to my account each year?**

Generally, the law imposes a maximum limit on the amount of contributions (excluding catch-up contributions) that may be made to your account and any other amounts allocated to any of your accounts during the Plan Year, excluding earnings. Beginning in 2008, this total cannot exceed the lesser of $46,000 or 100% of your annual compensation. After 2008, the dollar limit may increase for cost-of-living adjustments.

**How is the money in the Plan invested?**

The Trustee of the Plan has been designated to hold the assets of the Plan for the benefit of Plan Participants and their beneficiaries in accordance with the terms of this Plan. The trust fund established by the Plan's Trustee will be the funding medium used for the accumulation of assets from which Plan benefits will be distributed.

Case: 09-11078    Doc# 360-2    Filed: 11/25/09    Entered: 11/25/09 23:53:03    Page 9
of 56

**Participant directed investments.** You will be able to direct the investment of your entire interest in the Plan. The Administrator will provide you with information on the investment choices available to you, the procedures for making investment elections, the frequency with which you can change your investment choices and other important information. You need to follow the procedures for making investment elections and you should carefully review the information provided to you before you give investment directions. If you do not direct the investment of your applicable Plan accounts, then your accounts will be invested in accordance with the default investment alternatives established under the Plan.

The Plan is intended to comply with Section 404(c) of ERISA (the Employee Retirement Income Security Act). If the Plan complies with this Section, then the fiduciaries of the Plan, including your Employer, the Trustee and the Administrator, will be relieved of any legal liability for any losses which are the direct and necessary result of the investment directions that you give.

**Earnings or losses.** When you direct investments, your accounts are segregated for purposes of determining the earnings or losses on these investments. Your account does not share in the investment performance of other Participants who have directed their own investments. You should remember that the amount of your benefits under the Plan will depend in part upon your choice of investments. Gains as well as losses can occur and your Employer, the Administrator, and the Trustee will not provide investment advice or guarantee the performance of any investment you choose.

### Will Plan expenses be deducted from my account balance?

**Expenses allocated to all accounts.** The Plan permits the payment of Plan expenses to be made from the Plan's assets. If expenses are paid using the Plan's assets, then the expenses will generally be allocated among the accounts of all Participants in the Plan. These expenses will be allocated either proportionately based on the value of the account balances or as an equal dollar amount based on the number of Participants in the Plan. The method of allocating the expenses depends on the nature of the expense itself. For example, certain administrative (or recordkeeping) expenses would typically be allocated proportionately to each Participant. If the Plan pays $1,000 in expenses and there are 100 Participants, your account balance would be charged $10 ($1,000/100) of the expense.

**Expenses allocated to individual accounts.** There are certain other expenses that may be paid just from your account. These are expenses that are specifically incurred by, or attributable to, you. For example, if you are married and get divorced, the Plan may incur additional expenses if a court mandates that a portion of your account be paid to your ex-spouse. These additional expenses may be paid directly from your account (and not the accounts of other Participants) because they are directly attributable to you under the Plan. The Administrator will inform you when there will be a charge (or charges) directly to your account.

Your Employer may, from time to time, change the manner in which expenses are allocated.

## ARTICLE V
## VESTING

### What is my vested interest in my account?

In order to reward employees who remain employed with the Employer for a long period of time, the law permits a "vesting schedule" to be applied to certain contributions that your Employer makes to the Plan. This means that you will not be entitled ("vested") in all of the contributions until you have been employed with the Employer for a specified period of time.

**100% vested contributions.** You are always 100% vested (which means that you are entitled to all of the amounts) in your accounts attributable to the following contributions:

- salary deferrals including catch-up contributions
- rollover contributions

**Vesting schedules.** Your "vested percentage" for certain Employer contributions is based on vesting Years of Service. This means at the time you stop working for a reason other than your death, disability, or retirement, your account balance attributable to contributions subject to a vesting schedule is multiplied by your vested percentage. The result, when added to the amounts that are always 100% vested as shown above, is your vested interest in the Plan, which is what you will actually receive from the Plan. You will always, however, be 100% vested if you are employed on or after your Normal Retirement Age, or if you die or become disabled while employed by your Employer.

Your "vested percentage" in your account attributable to profit sharing contributions is determined under the following schedule.

6

### Vesting Schedule
### Profit Sharing Contributions

| Years of Service | Percentage |
|---|---|
| Less than 2 | 0% |
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 | 80% |
| 6 | 100% |

However, the vesting schedule above will only apply to profit sharing contributions that are made to the Plan in Plan Years beginning after December 31, 2006. The following schedule will apply to Employer profit sharing contributions made in prior Plan Years: 7 year graded. However, effective January 1, 2009 the 6 year graded schedule will apply to all profit sharing account balances.

If you have completed an Hour of Service in a Plan Year beginning after December 31, 2001, then your "vested percentage" in your account attributable to matching contributions made for Plan Years beginning after December 31, 2001, is determined under the following schedule.

### Vesting Schedule
### Matching Contributions

| Years of Service | Percentage |
|---|---|
| Less than 2 | 0% |
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 | 80% |
| 6 | 100% |

However, the vesting schedule above will only apply to matching contributions that are made to the Plan in Plan Years beginning after December 31, 2001. The following schedule will apply to Employer matching contributions made in prior Plan Years: 7 year graded. However, effective January 1, 2009 the 6 year graded schedule will apply to all matching account balances.

**How is my service determined for vesting purposes?**

**Year of Service.** To earn a Year of Service, you must be credited with at least 1,000 Hours of Service during a Plan Year. The Plan contains specific rules for crediting Hours of Service for vesting purposes. The Administrator will track your service and will credit you with a Year of Service for each Plan Year in which you are credited with the required Hours of Service, in accordance with the terms of the Plan. If you have any questions regarding your vesting service, you should contact the Administrator.

**Hour of Service.** You will be credited with your actual Hours of Service for:

(a) each hour for which you are directly or indirectly compensated by the Employer for the performance of duties during the Plan Year;

(b) each hour for which you are directly or indirectly compensated by the Employer for reasons other than the performance of duties (such as vacation, holidays, sickness, disability, lay-off, military duty, jury duty or leave of absence during the Plan Year); and

(c) each hour for back pay awarded or agreed to by the Employer.

You will not be credited for the same Hours of Service both under (a) or (b), as the case may be, and under (c).

**What service is counted for vesting purposes?**

**Service with the Employer.** In calculating your vested percentage, all service you perform for the Employer will generally be counted. However, there are some exceptions to this general rule.

**Break in Service rules.** If you terminate employment and are rehired, you may lose credit for prior service under the Plan's Break in Service rules.

For vesting purposes, you will have a Break in Service if you complete less than 501 Hours of Service during the computation period used to determine whether you have a Year of Service. However, if you are absent from work for certain leaves of absence such as a maternity or paternity leave, you may be credited with enough Hours of Service to prevent a Break in Service.

Case: 09-11078   Doc# 360-2   Filed: 11/25/09   Entered: 11/25/09 23:53:03   Page 11
of 56

**Five-year Break in Service rule.** The five-year Break in Service rule applies only to Participants who had no vested interest in the Plan when employment had terminated. If you were not vested in any amounts when you terminated employment and you have five 1-Year Breaks in Service (as defined above), all the service you earned before the 5-year period no longer counts for vesting purposes. Thus, if you return to employment after incurring five 1-Year Breaks in Service, you will be treated as a new employee (with no service) for purposes of determining your vested percentage under the Plan.

**Service with another Employer.** For vesting purposes, your Years of Service with Moovin Ice Cream will be counted.

**Military Service.** If you are a veteran and are reemployed under the Uniformed Services Employment and Reemployment Rights Act of 1994, your qualified military service may be considered service with the Employer. If you may be affected by this law, ask the Administrator for further details.

**What happens to my non-vested account balance if I'm rehired?**

If you have no vested interest in the Plan when you leave, your account balance will be forfeited. However, if you are rehired before incurring five 1-Year Breaks in Service, your account balance as of your termination date will be restored, unadjusted for any gains or losses.

If you are partially vested in your account balance when you leave, the non-vested portion of your account balance will be forfeited on the earlier of the date:

    (a)  of the distribution of your vested account balance, or

    (b)  when you incur five consecutive 1-year Breaks in Service.

If you received a distribution of your vested account balance and are rehired, you may have the right to repay this distribution. If you repay the entire amount of the distribution, your Employer will restore your account balance with your forfeited amount. You must repay this distribution within five years from your date of reemployment, or, if earlier, before you incur five 1-Year Breaks in Service. If you were 100% vested when you left, you do not have the opportunity to repay your distribution.

**What happens if the Plan becomes a "top-heavy plan"?**

**Top-heavy plan.** A retirement plan that primarily benefits "key employees" is called a "top-heavy plan." Key employees are certain owners or officers of your Employer. A plan is generally a "top-heavy plan" when more than 60% of the plan assets are attributable to key employees. Each year, the Administrator is responsible for determining whether the Plan is a "top-heavy plan."

**Top-heavy rules.** If the Plan becomes top-heavy in any Plan Year, then non-key employees may be entitled to certain "top-heavy minimum benefits," and other special rules will apply. These top-heavy rules include the following:

- Your Employer may be required to make a contribution on your behalf in order to provide you with at least "top-heavy minimum benefits."

- If you are a Participant in more than one Plan, you may not be entitled to "top-heavy minimum benefits" under both Plans.

## ARTICLE VI
## DISTRIBUTIONS PRIOR TO TERMINATION

**Can I withdraw money from my account in the event of financial hardship?**

**Hardship distributions.** You may withdraw money for financial hardship if you satisfy certain conditions. This hardship distribution is not in addition to your other benefits and will therefore reduce the value of the benefits you will receive at retirement.

**Qualifying expenses.** A hardship distribution may be made to satisfy certain immediate and heavy financial needs that you have. A hardship distribution may only be made for payment of the following:

- Expenses for medical care (described in Section 213(d) of the Internal Revenue Code) previously incurred by you, your spouse or your dependent or necessary for you, your spouse or your dependent to obtain medical care.

- Costs directly related to the purchase of your principal residence (excluding mortgage payments).

- Tuition, related educational fees, and room and board expenses for the next twelve (12) months of post-secondary education for yourself, your spouse or your dependent.

- Amounts necessary to prevent your eviction from your principal residence or foreclosure on the mortgage of your principal residence.

Case: 09-11078    Doc# 360-2    Filed: 11/25/09    Entered: 11/25/09 23:53:03    Page 12 of 56

- Payments for burial or funeral expenses for your deceased parent, spouse, children or other dependents.

- Expenses for the repair of damage to your principal residence that would qualify for the casualty deduction under the Internal Revenue Code.

**Conditions.** If you have any of the above expenses, a hardship distribution can only be made if you certify and agree that all of the following conditions are satisfied:

(a) The distribution is not in excess of the amount of your immediate and heavy financial need. The amount of your immediate and heavy financial need may include any amounts necessary to pay any federal, state, or local income taxes or penalties reasonably anticipated to result from the distribution;

(b) You have obtained all distributions, other than hardship distributions, and all nontaxable loans currently available under all plans that your Employer maintains; and

(c) That your salary deferrals will be suspended for at least six (6) months after your receipt of the hardship distribution.

**Limitations.** The following limitations apply to hardship distributions:

- You must be employed with the Employer at the time of the hardship distribution

**Account restrictions.** You may request a hardship distribution only from the vested portion of the following accounts:

- salary deferral accounts

In addition, there are restrictions placed on hardship distributions which are made from certain accounts. These accounts are the ones set up to receive your salary deferral contributions and other Employer contributions which are used to satisfy special rules that apply to 401(k) plans. Generally, the only amounts that can be distributed to you on account of a hardship from these accounts are your salary deferrals. The earnings on your salary deferrals and special Employer contributions may not be distributed to you on account of a hardship. Ask the Administrator if you need further details.

In the event you receive a hardship distribution, you will not be allowed to make salary deferrals for a period of six (6) months after you receive the distribution.

**Annuity waiver.** If you wish to receive a hardship distribution from the Plan in a single payment from your account, you (and your spouse, if you are married) must first waive the annuity form of payment if the in-service distribution is taken from amounts transferred from a pension plan. (See the Article entitled "Benefits and Distributions Upon Termination of Employment" for a further explanation of how benefits are paid from the Plan.)

**Amounts accumulated under pension plan.** The portion of your vested account balance attributable to amounts accumulated during your participation in a pension plan (other than your rollover contributions) cannot be distributed prior to death, disability or attainment of your Normal Retirement Date.

## ARTICLE VII
## BENEFITS AND DISTRIBUTIONS UPON TERMINATION OF EMPLOYMENT

**When can I get money out of the Plan?**

This Plan is designed to provide you with retirement benefits. However, distributions are permitted if you die or become disabled. In addition, certain payments are permitted when you terminate employment for any other reason. The rules under which you can receive a distribution are described in this Article. The rules regarding the payment of death benefits to your beneficiary are described in the Article entitled "Benefits and Distributions Upon Death."

You may receive a distribution of the vested portion of some or all of your accounts in the Plan for the following reasons:

- termination of employment for reasons other than death, disability or retirement

- normal retirement

- disability

You may also receive distributions while you are still employed with the Employer. (See the Article entitled "Distributions Prior to Termination" for a further explanation.)

9

**What happens if I terminate employment before death, disability or retirement?**

If your employment terminates for reasons other than death, disability or normal retirement, you will be entitled to receive only the "vested percentage" of your account balance.

You may elect to have your vested account balance distributed to you as soon as administratively feasible following your termination of employment. (See the question entitled "How will my benefits be paid to me?" for additional information.)

Amounts in your rollover account will not be considered as part of your benefit in determining whether the $5,000 threshold for timing of payments described above has been exceeded.

**What happens if I terminate employment at Normal Retirement Date?**

**Normal Retirement Date.** You will attain your Normal Retirement Age when you reach your 65th birthday. Your Normal Retirement Date is the date on which you attain your Normal Retirement Age.

**Payment of benefits.** You will become 100% vested in all of your accounts under the Plan if you retire on or after your Normal Retirement Age. However, the actual payment of benefits generally will not begin until you have terminated employment and reached your Normal Retirement Date. In such event, a distribution will be made, at your election, as soon as administratively feasible. If you remain employed past your Normal Retirement Date, you may generally defer the receipt of benefits until you actually terminate employment. In such event, benefit payments will begin as soon as feasible at your request, but not later than age 70 1/2. (See the question entitled "How will my benefits be paid to me?" for an explanation of how these benefits will be paid.)

**What happens if I terminate employment due to disability?**

**Definition of disability.** Under the Plan, disability is defined as a physical or mental condition resulting from bodily injury, disease, or mental disorder which renders you incapable of continuing any gainful occupation and which constitutes total disability under the federal Social Security Act.

**Payment of benefits.** If you become disabled while a Participant, you will become 100% vested in all of your accounts under the Plan. Payment of your disability benefits will be made to you as if you had retired. However, if the value of your account balance does not exceed $1,000, then a distribution of your account balance will be made to you, regardless of whether you consent to receive it. (See the question entitled "How will my benefits be paid to me?" for an explanation of how these benefits will be paid.)

**How will my benefits be paid to me?**

**Annuity Distribution.** If you are married on the date your benefits are to begin, you will automatically receive a joint and 50% survivor annuity, unless you elect an alternative form of payment. This means that you will receive payments for your life, and after your death, your surviving spouse will receive a monthly benefit for the remainder of his or her life equal to 50% of the benefit you were receiving at the time of your death. You may elect a joint and 75%, or 100% survivor annuity instead of the standard joint and 50% survivor annuity. You should consult an advisor before making such election.

If you are not married on the date your benefits are to begin, you will automatically receive a life annuity, unless you elect an alternative form of payment. This means you will receive payments for as long as you live. However, if your vested account balance does not exceed $5,000, then your vested account balance may only be distributed to you in a single lump-sum payment. In determining whether your vested account balance exceeds the $5,000 dollar threshold, "rollovers" (and any earnings allocable to "rollover" contributions) will not be taken into account.

**Consent requirements.** If your vested account balance exceeds $1,000, you must consent to any distribution before it may be made. In addition, if your vested account balance exceeds $5,000 and you want the distribution to be in a form other than an annuity, you (and your spouse, if you are married) must first waive the annuity form of payment. In determining whether your vested account balance exceeds the $5,000 dollar threshold, "rollovers" (and any earnings allocable to "rollover" contributions) will not be taken into account.

**Medium of payment.** Benefits under the Plan will generally be paid to you in cash.

**May I elect another form of benefit?**

**Waiver of annuity.** If your vested benefit in the Plan exceeds $5,000, then when you are about to receive any distribution, the Administrator will explain the joint and survivor annuity or the life annuity to you in greater detail. You will be given the option of waiving the joint and survivor annuity or the life annuity form of payment during the 180-day period before the annuity is to begin. IF YOU ARE MARRIED, YOUR SPOUSE MUST IRREVOCABLY CONSENT IN WRITING TO THE WAIVER IN THE PRESENCE OF A NOTARY OR A PLAN REPRESENTATIVE. You may revoke any waiver. The Administrator will provide you with forms to make these elections. Since your spouse participates in these elections, you must immediately inform the Administrator of any change in your marital status.

**Other form of distribution.** If your vested account balance exceeds $5,000 and you and your spouse elect not to take a joint and survivor annuity, or if you are not married when your benefits are scheduled to begin and have elected not to take a life annuity, you may elect to

Case: 09-11078    Doc# 360-2    Filed: 11/25/09    Entered: 11/25/09 23:53:03    Page 14
of 56

receive a distribution of your vested account balance in an alternative form of payment. This payment may be made in one of the following methods:

- a single lump-sum payment

- the purchase of a different form of annuity

**Delaying distributions.** You may delay the distribution of your vested account balance unless a distribution is required to be made, as explained earlier, because your vested account balance does not exceed $1,000. However, if you elect to delay the distribution of your vested account balance, there are rules that require that certain minimum distributions be made from the Plan. If you are a 5% owner, distributions are required to begin not later than the April 1st following the end of the year in which you reach age 70 1/2. If you are not a 5% owner, distributions are required to begin not later than the April 1st following the later of the end of the year in which you reach age 70 1/2 or retire. You should see the Administrator if you think you may be affected by these rules.

## ARTICLE VIII
## BENEFITS AND DISTRIBUTIONS UPON DEATH

**What happens if I die while working for the Employer?**

If you die while still employed by the Employer, then 100% of your account balance will be used to provide your beneficiary with a death benefit.

**Who is the beneficiary of my death benefit?**

**Married Participant.** If you are married at the time of your death, your spouse will be the beneficiary of 50% of the death benefit unless an election is made to change the beneficiary. IF YOU WISH TO DESIGNATE A BENEFICIARY OTHER THAN YOUR SPOUSE, YOUR SPOUSE MUST IRREVOCABLY CONSENT TO WAIVE ANY RIGHT TO THE PORTION OF THE DEATH BENEFIT PAYABLE TO YOUR SPOUSE. YOUR SPOUSE'S CONSENT MUST BE IN WRITING, BE WITNESSED BY A NOTARY OR A PLAN REPRESENTATIVE AND ACKNOWLEDGE THE SPECIFIC NONSPOUSE BENEFICIARY.

If you are married and you change your designation, then your spouse must again consent to the change. Also, since your death benefit is your entire account balance, you may, at any time, designate the beneficiary for amounts in excess of the portion of the death benefit payable to your spouse without your spouse's consent. In addition, you may elect a beneficiary other than your spouse without your spouse's consent if your spouse cannot be located.

**Unmarried Participant.** If you are not married, you may designate a beneficiary on a form to be supplied to you by the Administrator.

**No beneficiary designation.** At the time of your death, if you have not designated a beneficiary or your beneficiary is also not alive, the death benefit will be paid in the following order of priority to:

(a) your surviving spouse

(b) your children, including adopted children in equal shares (and if a child is not living, that child's share will be distributed to that child's heirs)

(c) your surviving parents, in equal shares

(d) your estate

**How will the death benefit be paid to my beneficiary?**

**Annuity distribution.** If the death benefit payable to your spouse does not exceed $5,000, then the benefit may only be paid as a lump sum. If the death benefit exceeds $5,000, the death benefit will be paid in the form of an annuity, that is, periodic payments over the life of your spouse. Your spouse may direct that payments begin within a reasonable period of time after your death. The size of the monthly payments will depend on the value of your vested account at the time of your death.

**Waiver of annuity.** You may waive the annuity form of distribution. Generally, the period during which you and your spouse may waive the annuity begins as of the first day of the Plan Year in which you reach age 35 and ends when you die. The Administrator must provide you with a detailed explanation of the annuity. This explanation must generally be given to you during the period of time beginning on the first day of the Plan Year in which you will reach age 32 and ending on the first day of the Plan Year in which you reach age 35. It is important that you inform the Administrator when you reach age 32 so that you may receive this information.

Under a special rule, you and your spouse may waive the survivor annuity form of payment any time before you turn age 35. However, any waiver will become invalid at the beginning of the Plan Year in which you turn age 35, and you and your spouse will be required to make another waiver.

Case: 09-11078    Doc# 360-2    Filed: 11/25/09    Entered: 11/25/09 23:53:03    Page 15 of 56

If you waive the annuity form of distribution, you are not married, or for amounts in excess of the minimum spouse's death benefit, then your beneficiary may elect an alternative form of payment. This payment may be made in:

- a single lump-sum payment

- the purchase of a different form of annuity

**When must the last payment be made to my beneficiary?**

The law generally restricts the ability of a retirement plan to be used as a method of retaining money for purposes of your death estate. Thus, there are rules that are designed to ensure that death benefits are distributable to beneficiaries within certain time periods.

Regardless of the method of distribution selected, your entire death benefit must be paid to your beneficiaries within five years after your death. However, if your spouse is your designated beneficiary, then payment of your death benefit may be delayed until the year in which you would have attained age 70 1/2. Minimum distributions must then be made over a period which does not exceed your spouse's life expectancy.

Since your spouse has certain rights to the death benefit, you should immediately report any change in your marital status to the Administrator.

**What happens if I'm a Participant, terminate employment and die before receiving all my benefits?**

If you terminate employment with the Employer and subsequently die, your beneficiary will be entitled to your remaining interest in the Plan at the time of your death. The provision in the Plan providing for full vesting of your benefit upon death does not apply if you die after terminating employment.

### ARTICLE IX
### TAX TREATMENT OF DISTRIBUTIONS

**What are my tax consequences when I receive a distribution from the Plan?**

Generally, you must include any Plan distribution in your taxable income in the year in which you receive the distribution. The tax treatment may also depend on your age when you receive the distribution. Certain distributions made to you when you are under age 59 1/2 could be subject to an additional 10% tax.

**Can I elect a rollover to reduce or defer tax on my distribution?**

**Rollover or Direct Transfer.** You may reduce, or defer entirely, the tax due on your distribution through use of one of the following methods:

(a)   **60-day rollover.** The rollover of all or a portion of the distribution to an Individual Retirement Account or Annuity (IRA) or another employer retirement plan willing to accept the rollover. This will result in no tax being due until you begin withdrawing funds from the IRA or other qualified employer plan. The rollover of the distribution, however, MUST be made within strict time frames (normally, within 60 days after you receive your distribution). Under certain circumstances all or a portion of a distribution (such as a hardship distribution) may not qualify for this rollover treatment. In addition, most distributions will be subject to mandatory federal income tax withholding at a rate of 20%. This will reduce the amount you actually receive. For this reason, if you wish to roll over all or a portion of your distribution amount, the direct transfer option described in paragraph (b) below would be the better choice.

(b)   **Direct rollover.** For most distributions, you may request that a direct transfer (sometimes referred to as a direct rollover) of all or a portion of a distribution be made to either an Individual Retirement Account or Annuity (IRA) or another employer retirement plan willing to accept the transfer. A direct transfer will result in no tax being due until you withdraw funds from the IRA or other employer plan. Like the rollover, under certain circumstances all or a portion of the amount to be distributed may not qualify for this direct transfer. If you elect to actually receive the distribution rather than request a direct transfer, then in most cases 20% of the distribution amount will be withheld for federal income tax purposes. If you decide to directly transfer all or a portion of a distribution, you (and your spouse, if you are married) must first waive the annuity form of payment. (See the question entitled "How will my benefits be paid to me?" for a further explanation of this waiver requirement.)

**Tax Notice.** WHENEVER YOU RECEIVE A DISTRIBUTION, THE ADMINISTRATOR WILL DELIVER TO YOU A MORE DETAILED EXPLANATION OF THESE OPTIONS. HOWEVER, THE RULES WHICH DETERMINE WHETHER YOU QUALIFY FOR FAVORABLE TAX TREATMENT ARE VERY COMPLEX. YOU SHOULD CONSULT WITH QUALIFIED TAX COUNSEL BEFORE MAKING A CHOICE.

Case: 09-11078   Doc# 360-2   Filed: 11/25/09   Entered: 11/25/09 23:53:03   Page 16
of 56

# ARTICLE X
## PROTECTED BENEFITS AND CLAIMS PROCEDURES

**Are my benefits protected?**

As a general rule, your interest in your account, including your "vested interest," may not be alienated. This means that your interest may not be sold, used as collateral for a loan, given away or otherwise transferred. In addition, your creditors may not attach, garnish or otherwise interfere with your account.

**Are there any exceptions to the general rule?**

There are two exceptions to this general rule. The Administrator must honor a "qualified domestic relations order." A "qualified domestic relations order" is defined as a decree or order issued by a court that obligates you to pay child support or alimony, or otherwise allocates a portion of your assets in the Plan to your spouse, former spouse, child or other dependent. If a qualified domestic relations order is received by the Administrator, all or a portion of your benefits may be used to satisfy that obligation. The Administrator will determine the validity of any domestic relations order received. You and your beneficiaries can obtain, without charge, a copy of the QUALIFIED DOMESTIC RELATIONS ORDER PROCEDURE from the Administrator.

The second exception applies if you are involved with the Plan's operation. If you are found liable for any action that adversely affects the Plan, the Administrator can offset your benefits by the amount that you are ordered or required by a court to pay the Plan. All or a portion of your benefits may be used to satisfy any such obligation to the Plan.

**Can the Plan be amended?**

Your Employer has the right to amend the Plan at any time. In no event, however, will any amendment authorize or permit any part of the Plan assets to be used for purposes other than the exclusive benefit of Participants or their beneficiaries. Additionally, no amendment will cause any reduction in the amount credited to your account.

**What happens if the Plan is discontinued or terminated?**

Although your Employer intends to maintain the Plan indefinitely, your Employer reserves the right to terminate the Plan at any time. Upon termination, no further contributions will be made to the Plan and all amounts credited to your accounts will become 100% vested. Your Employer will direct the distribution of your accounts in a manner permitted by the Plan as soon as practicable. (See the question entitled "How will my benefits be paid to me?" for a further explanation.) You will be notified if the Plan is terminated.

**How do I submit a claim for Plan benefits?**

Benefits will be paid to you and your beneficiaries without the necessity for formal claims. However, if you think an error has been made in determining your benefits, then you or your beneficiaries may make a request for any Plan benefits to which you believe you are entitled. Any such request should be in writing and should be made to the Administrator.

If the Administrator determines the claim is valid, then you will receive a statement describing the amount of benefit, the method or methods of payment, the timing of distributions and other information relevant to the payment of the benefit.

**What if my benefits are denied?**

Your request for Plan benefits will be considered a claim for Plan benefits, and it will be subject to a full and fair review. If your claim is wholly or partially denied, the Administrator will provide you with a written or electronic notification of the Plan's adverse determination. This written or electronic notification must be provided to you within a reasonable period of time, but not later than 90 days after the receipt of your claim by the Administrator, unless the Administrator determines that special circumstances require an extension of time for processing your claim. If the Administrator determines that an extension of time for processing is required, written notice of the extension will be furnished to you prior to the termination of the initial 90-day period. In no event will such extension exceed a period of 90 days from the end of such initial period. The extension notice will indicate the special circumstances requiring an extension of time and the date by which the Plan expects to render the benefit determination.

In the case of a claim for disability benefits, if disability is determined by a physician (rather than relying upon a determination of disability for Social Security purposes), then instead of the above, the Administrator will provide you with written or electronic notification of the Plan's adverse benefit determination within a reasonable period of time, but not later than 45 days after receipt of the claim by the Plan. This period may be extended by the Plan for up to 30 days, provided that the Administrator both determines that such an extension is necessary due to matters beyond the control of the Plan and notifies you, prior to the expiration of the initial 45-day period, of the circumstances requiring the extension of time and the date by which the Plan expects to render a decision. If, prior to the end of the first 30-day extension period, the Administrator determines that, due to matters beyond the control of the Plan, a decision cannot be rendered within that extension period, the period for making the determination may be extended for up to an additional 30 days, provided that the Administrator notifies you, prior to the expiration of the first 30-day extension period, of the circumstances requiring the extension and the date as of which the Plan expects to render a decision. In the case of any such extension, the notice of extension will specifically explain the standards on which entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim, and the additional information needed to resolve those issues, and you will be afforded at least 45 days within which to provide the specified information.

13

Case: 09-11078    Doc# 360-2    Filed: 11/25/09    Entered: 11/25/09 23:53:03    Page 17 of 56

The Administrator's written or electronic notification of any adverse benefit determination must contain the following information:

(a)  The specific reason or reasons for the adverse determination.

(b)  Reference to the specific Plan provisions on which the determination is based.

(c)  A description of any additional material or information necessary for you to perfect the claim and an explanation of why such material or information is necessary.

(d)  Appropriate information as to the steps to be taken if you or your beneficiary want to submit your claim for review.

(e)  In the case of disability benefits where disability is determined by a physician:

(i)  If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of the rule, guideline, protocol, or other similar criterion will be provided to you free of charge upon request.

(ii)  If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to your medical circumstances, or a statement that such explanation will be provided to you free of charge upon request.

If your claim has been denied, and you want to submit your claim for review, you must follow the Claims Review Procedure in the next question.

**What is the Claims Review Procedure?**

Upon the denial of your claim for benefits, you may file your claim for review, in writing, with the Administrator.

(a)  YOU MUST FILE THE CLAIM FOR REVIEW NO LATER THAN 60 DAYS AFTER YOU HAVE RECEIVED WRITTEN NOTIFICATION OF THE DENIAL OF YOUR CLAIM FOR BENEFITS.

HOWEVER, IF YOUR CLAIM IS FOR DISABILITY BENEFITS AND DISABILITY IS DETERMINED BY A PHYSICIAN, THEN INSTEAD OF THE ABOVE, YOU MUST FILE THE CLAIM FOR REVIEW NO LATER THAN 180 DAYS FOLLOWING RECEIPT OF NOTIFICATION OF AN ADVERSE BENEFIT DETERMINATION.

(b)  You may submit written comments, documents, records, and other information relating to your claim for benefits.

(c)  You may review all pertinent documents relating to the denial of your claim and submit any issues and comments, in writing, to the Administrator.

(d)  You will be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits.

(e)  Your claim for review must be given a full and fair review. This review will take into account all comments, documents, records, and other information submitted by you relating to your claim, without regard to whether such information was submitted or considered in the initial benefit determination.

In addition to the Claims Review Procedure above, if your claim is for disability benefits and disability is determined by a physician, then the Claims Review Procedure provides that:

(a)  Your claim will be reviewed without deference to the initial adverse benefit determination and the review will be conducted by an appropriate named fiduciary of the Plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual.

(b)  In deciding an appeal of any adverse benefit determination that is based in whole or part on medical judgment, the appropriate named fiduciary will consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment.

(c)  Any medical or vocational experts whose advice was obtained on behalf of the Plan in connection with your adverse benefit determination will be identified, without regard to whether the advice was relied upon in making the benefit determination.

(d)  The health care professional engaged for purposes of a consultation under (b) above will be an individual who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of the appeal, nor the subordinate of any such individual.

Case: 09-11078   Doc# 360-2   Filed: 11/25/09   Entered: 11/25/09 23:53:03   Page 18 of 56

The Administrator will provide you with written or electronic notification of the Plan's benefit determination on review. The Administrator must provide you with notification of this denial within 60 days after the Administrator's receipt of your written claim for review, unless the Administrator determines that special circumstances require an extension of time for processing your claim. If the Administrator determines that an extension of time for processing is required, written notice of the extension will be furnished to you prior to the termination of the initial 60-day period. In no event will such extension exceed a period of 60 days from the end of the initial period. The extension notice will indicate the special circumstances requiring an extension of time and the date by which the Plan expects to render the determination on review. However, if claim relates to disability benefits and disability is determined by a physician, then 45 days will apply instead of 60 days in the preceding sentences. In the case of an adverse benefit determination, the notification will set forth:

    (a)  The specific reason or reasons for the adverse determination.

    (b)  Reference to the specific Plan provisions on which the benefit determination is based.

    (c)  A statement that you are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits.

    (d)  In the case of disability benefits where disability is determined by a physician:

        (i)  If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of the rule, guideline, protocol, or other similar criterion will be provided to you free of charge upon request.

        (ii)  If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to your medical circumstances, or a statement that such explanation will be provided to you free of charge upon request.

If you have a claim for benefits which is denied, then you may file suit in a state or Federal court. However, in order to do so, you must file the suit no later than 180 days after the Administrator makes a final determination to deny your claim.

**What are my rights as a Plan Participant?**

As a Participant in the Plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all Plan Participants are entitled to:

    (a)  Examine, without charge, at the Administrator's office and at other specified locations, all documents governing the Plan and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

    (b)  Obtain, upon written request to the Administrator, copies of documents governing the operation of the Plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The Administrator may make a reasonable charge for the copies.

    (c)  Receive a summary of the Plan's annual financial report. The Administrator is required by law to furnish each Participant with a copy of this summary annual report.

    (d)  Obtain a statement telling you whether you have a right to receive a pension at Normal Retirement Age and, if so, what your benefits would be at Normal Retirement Age if you stop working under the Plan now. If you do not have a right to a pension benefit, the statement will tell you how many years you have to work to earn a right to a pension. THIS STATEMENT MUST BE REQUESTED IN WRITING AND IS NOT REQUIRED TO BE GIVEN MORE THAN ONCE EVERY TWELVE (12) MONTHS. The Plan must provide this statement free of charge.

In addition to creating rights for Plan Participants, ERISA imposes duties upon the people who are responsible for the operation of the Plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan Participants and beneficiaries. No one, including your Employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a pension benefit or exercising your rights under ERISA.

If your claim for a pension benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Administrator to provide the materials and pay you up to $110.00 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Administrator.

If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. In addition, if you disagree with the Plan's decision or lack thereof concerning the qualified status of a domestic relations order or a medical child support

Case: 09-11078   Doc# 360-2   Filed: 11/25/09   Entered: 11/25/09 23:53:03   Page 19 of 56

order, you may file suit in Federal court. You and your beneficiaries can obtain, without charge, a copy of the qualified domestic relations order ("QDRO") procedures from the Administrator.

If it should happen that the Plan's fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. The court may order you to pay these costs and fees if you lose or if, for example, it finds your claim is frivolous.

**What can I do if I have questions or my rights are violated?**

If you have any questions about the Plan, you should contact the Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in the telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

## ARTICLE XI
## GENERAL INFORMATION ABOUT THE PLAN

There is certain general information which you may need to know about the Plan. This information has been summarized for you in this Article.

**Plan Name**

The full name of the Plan is Humboldt Creamery Retirement Plan.

**Plan Number**

Your Employer has assigned Plan Number 001 to your Plan.

**Plan Effective Dates**

This Plan was originally effective on January 1, 1988. The amended and restated provisions of the Plan become effective on January 1, 2009. However, this restatement was made to conform the Plan to new tax laws and some provisions may be retroactively effective.

**Other Plan Information**

Valuations of the Plan assets are generally made annually on the last day of the Plan Year and may include any other date or dates deemed necessary or appropriate by the Administrator for the valuation of the Participants' Accounts during the Plan Year. Certain distributions are based on the Anniversary Date of the Plan. This date is the last day of the Plan Year.

The Plan's records are maintained on a twelve-month period of time. This is known as the Plan Year. The Plan Year begins on January 1 and ends on December 31.

The Plan and Trust will be governed by the laws of California to the extent not governed by federal law.

Benefits provided by the Plan are NOT insured by the Pension Benefit Guaranty Corporation (PBGC) under Title IV of the Employee Retirement Income Security Act of 1974 because the insurance provisions under ERISA are not applicable to this type of Plan.

Service of legal process may be made upon your Employer. Service of legal process may also be made upon the Trustee or Administrator.

**Employer Information**

Your Employer's name, address and identification number are:

Humboldt Creamery, LLC
572 Highway 1
Fortuna, California 95540
87-0736033

The Plan allows other employers to adopt its provisions. You or your beneficiaries may examine or obtain a complete list of employers, if any, who have adopted the Plan by making a written request to the Administrator.

Another Employer who has adopted the provisions of the Plan is:

Moovin Ice Cream

**Plan Administrator Information**

The Plan's Administrator is responsible for the day-to-day administration and operation of the Plan. For example, the Administrator maintains the Plan records, including your account information, provides you with the forms you need to complete for Plan participation, and directs the payment of your account at the appropriate time. The Administrator will also allow you to review the formal Plan document and certain other materials related to the Plan. If you have any questions about the Plan or your participation, you should contact the Administrator. The Administrator may designate other parties to perform some duties of the Administrator.

The Administrator has the complete power, in its sole discretion, to determine all questions arising in connection with the administration, interpretation, and application of the Plan (and any related documents and underlying policies). Any such determination by the Administrator is conclusive and binding upon all persons.

The name, address and business telephone number of the Plan's Administrator are:

Humboldt Creamery, LLC
572 Highway 1
Fortuna, California 95540
707-725-6182

**Plan Trustee Information and Plan Funding Medium**

All money that is contributed to the Plan is held in a trust fund. The Trustees are responsible for the safekeeping of the trust fund and must hold and invest Plan assets in a prudent manner and in the best interest of you and your beneficiaries. The trust fund established by the Plan's Trustee(s) will be the funding medium used for the accumulation of assets from which benefits will be distributed. While all the Plan assets are held in a trust fund, the Administrator separately accounts for each Participant's interest in the Plan.

The names and address of the Plan's Trustees are:

Richard Ghilarducci
Tony Titus
572 Highway 1
Fortuna, California 95540

The Trustees shall collectively be referred to as Trustee throughout this Summary Plan Description.

# APPENDIX
## PLAN EXPENSE ALLOCATIONS

The Plan will assess against an individual Participant's account the following Plan expenses which are incurred by, or are attributable to, a particular Participant based on use of a particular Plan feature, listed by type and the amount charged *(check all that apply, and fill in the charge or method of determining the charge)*. All fees are subject to change.

[X] **Distribution following termination.** Distribution of account upon termination of employment, including preparation of required notices and elections, distribution check or transfer of funds by direct rollover, as appropriate, and tax reporting forms.
Amount: $ pass through of third party charges

[X] **QDRO.** Qualified domestic relations order ("QDRO") review and processing, including notices to parties and preparation of QDRO distribution check. In addition to the amount indicated below, the Plan will charge the Participant's account for actual legal expenses and costs if the Plan consults with legal counsel regarding the qualified status of the order.
Amount: $ pass through of third party charges

[X] **Hardship distribution.** Hardship distribution, including application processing and preparation of required notices, elections and distribution check.
Amount: $ pass through of third party charges

[X] **Participant direction of investment: brokerage account option.** Annual fee for use of brokerage account option. *Note:* This fee is in addition to any costs associated with the Participant's investment decisions, which automatically will be charged against a Participant's account (e.g., broker's fees, other transactional charges, valuation or appraisal fees).
Amount: $ pass through of third party charges

*Note:* The Plan will charge on a pro rata basis to all Participants all other plan related expenses (not described above) that the Plan pays.

# APPENDIX
## ROLLOVERS FROM OTHER PLANS

The Plan will accept Participant rollover contributions and/or direct rollovers of distributions from the types of plans specified below:

**Direct Rollovers.** The Plan will accept a direct rollover of an eligible rollover distribution from:

[X]  a qualified plan described in section 401(a) of the Internal Revenue Code (including a 401(k) plan, profit sharing plan, defined benefit plan, stock bonus plan and money purchase plan), **excluding** after-tax employee contributions.

[ ]  a qualified plan described in section 401(a) of the Internal Revenue Code (including a 401(k) plan, profit sharing plan, defined benefit plan, stock bonus plan and money purchase plan), **including** after-tax employee contributions.

[X]  a qualified plan described in section 403(a) of the Internal Revenue Code (an annuity plan), **excluding** after-tax employee contributions.

[ ]  a qualified plan described in section 403(a) of the Internal Revenue Code (an annuity plan), **including** after-tax employee contributions.

[X]  an annuity contract described in section 403(b) of the Internal Revenue Code (a tax-sheltered annuity), **excluding** after-tax employee contributions.

[ ]  an annuity contract described in section 403(b) of the Internal Revenue Code (a tax-sheltered annuity), **including** after-tax employee contributions.

[ ]  a Roth elective deferral account under a qualified plan described in section 401(a) of the Internal Revenue Code (a 401(k) plan).

[ ]  a Roth elective deferral account under an annuity contract described in section 403(b) of the Internal Revenue Code (a tax-sheltered annuity).

[X]  an eligible plan under IRC §457(b) which is maintained by a governmental employer (governmental 457 plan).

**Participant Rollover Contributions from Other Plans.** The Plan will accept a Participant contribution of an eligible rollover distribution: (Check each that applies or none.)

[X]  a qualified plan described in section 401(a) of the Internal Revenue Code (including a 401(k) plan, profit sharing plan, defined benefit plan, stock bonus plan and money purchase plan).

[X]  a qualified plan described in section 403(a) of the Internal Revenue Code (an annuity plan).

[X]  an annuity contract described in section 403(b) of the Internal Revenue Code (a tax-sheltered annuity).

[X]  an eligible plan under IRC §457(b) which is maintained by a governmental employer (governmental 457 plan).

**Participant Rollover Contributions from IRAs:**

[X]  The Plan will accept a Participant rollover contribution of the portion of a distribution from a traditional IRA that is eligible to be rolled over and would otherwise be includible in gross income. Rollovers from Roth IRAs or a Coverdell Education Savings Account (formerly known as an Education IRA) are not permitted because they are not traditional IRAs. A rollover from a SIMPLE IRA is allowed if the amounts are rolled over after the Participant has been in the SIMPLE IRA for at least two years.

HUMBOLDT CREAMERY RETIREMENT PLAN

COMMON QUESTIONS ABOUT OUR 401(k) PLAN

### Introduction

The following questions and answers highlight some of the important parts of our Plan. Remember, these are only highlights. The Summary Plan Description ("SPD") describes the Plan in much greater detail. If you have any questions about these highlights, the SPD, or the Plan, you should ask the Plan Administrator.

Q. Why is your Employer sponsoring a 401(k) Plan?

A. Your Employer is sponsoring this Plan so that you may save for retirement. This Plan is a type of qualified retirement plan commonly referred to as a 401(k) Plan. As a Participant under the Plan, you may elect to contribute a portion of your compensation to the Plan. In addition, your Employer may make contributions to the Plan on your behalf.

Q. How do I participate in the Plan?

A. Provided you are not an Excluded Employee, you may begin participating under the Plan once you have satisfied the eligibility requirements and reached your "Entry Date." The following describes the eligibility requirements and Entry Date that apply.

**Salary Deferrals**

**Excluded Employees.** If you are a member of a class of employees identified below, you are an Excluded Employee and you are not entitled to participate in the Plan for purposes of salary deferrals. The Excluded Employees are:

- union employees whose employment is governed by a collective bargaining agreement under which retirement benefits were the subject of good faith bargaining

**Eligibility Conditions.** You will be eligible to participate for purposes of salary deferrals when you have attained age 21. However, you will actually enter the Plan once you reach the Entry Date as described below.

**Entry Date.** For purposes of salary deferrals, your Entry Date will be the first day of the Plan Year or the first day of the seventh month of the Plan Year coinciding with or next following the date you satisfy the eligibility requirements.

**Matching Contributions**

**Excluded Employees.** If you are a member of a class of employees identified below, you are an Excluded Employee and you are not entitled to participate in the Plan for purposes of matching contributions. The Excluded Employees are:

- union employees whose employment is governed by a collective bargaining agreement under which retirement benefits were the subject of good faith bargaining

**Eligibility Conditions.** You will be eligible to participate for purposes of matching contributions when you have attained age 21. However, you will actually enter the Plan once you reach the Entry Date as described below.

**Entry Date.** For purposes of matching contributions, your Entry Date will be the first day of the Plan Year or the first day of the seventh month of the Plan Year coinciding with or next following the date you satisfy the eligibility requirements.

**Profit Sharing Contributions**

**Excluded Employees.** If you are a member of a class of employees identified below, you are an Excluded Employee and you are not entitled to participate in the Plan for purposes of profit sharing contributions. The Excluded Employees are:

- union employees whose employment is governed by a collective bargaining agreement under which retirement benefits were the subject of good faith bargaining

**Eligibility Conditions.** You will be eligible to participate for purposes of profit sharing contributions when you have attained age 21. However, you will actually enter the Plan once you reach the Entry Date as described below.

**Entry Date.** For purposes of profit sharing contributions, your Entry Date will be the first day of the Plan Year or the first day of the seventh month of the Plan Year coinciding with or next following the date you satisfy the eligibility requirements.

**Q.** What are salary deferrals and how do I contribute them to the Plan?

**A.** **Salary Deferrals.** As a Participant under the Plan, you may elect to reduce your compensation by a specific percentage or dollar amount and have that amount contributed to the Plan on a pre-tax basis as a salary deferral. Your taxable income is reduced by the deferral contribution so you pay less in federal income taxes. Later, when the Plan distributes the deferrals and earnings, you will pay the taxes on those deferrals and the earnings. Therefore, federal income taxes on the deferral contributions and on the earnings are only postponed. Eventually, you will have to pay taxes on these amounts. However, the amount you defer is counted as compensation for Social Security taxes.

You may receive additional amounts from your Employer if you do contribute.

**Q.** When will I receive payments from the Plan?

**A.** The Plan is designed to encourage you to stay with the Employer until retirement. Payment will generally occur at your Normal Retirement Date, unless you postpone your actual retirement. Your Normal Retirement Date is the date on which you attain your Normal Retirement Age. You will attain your Normal Retirement Age when you reach your 65th birthday.

**Q.** How much will I be paid when I retire?

**A.** The amount you are paid when you retire will be based upon the amount of money your Employer has put into the Plan for you (including your salary deferrals), plus or minus any earnings or losses. You should review the Article in the SPD entitled "Employer Contributions" for an explanation of how your Employer makes contributions to the Plan and how they are shared by eligible employees.

**Q.** How will payments be made when I retire?

**A.** If you are married on the date your benefits are to begin, you will automatically receive a joint and 50% survivor annuity, unless you elect an alternative form of payment. This means that you will receive payments for your life, and after your death, your surviving spouse will receive a monthly benefit for the remainder of his or her life equal to 50% of the benefit you were receiving at the time of your death. You may elect a joint and 75%, or 100% survivor annuity instead of the standard joint and 50% survivor annuity. You should consult an advisor before making such election.

If you are not married on the date your benefits are to begin, you will automatically receive a life annuity, unless you elect an alternative form of payment. This means you will receive payments for as long as you live.

However, if your vested account balance does not exceed $5,000, then your vested account balance may only be distributed to you in a single lump-sum payment. In determining whether your vested account balance exceeds the $5,000 dollar threshold, "rollovers" (and any earnings allocable to "rollover" contributions) will not be taken into account.

If your vested account balance exceeds $1,000, you must consent to any distribution before it may be made. In addition, if your vested account balance exceeds $5,000 and you want the distribution to be in a form other than an annuity, you (and your spouse, if you are married) must first waive the annuity form of payment. In determining whether your vested account balance exceeds these dollar threshold(s), "rollovers" (and any earnings allocable to "rollover" contributions) will not be taken into account.

When you are about to receive any distribution, the Administrator will explain the joint and survivor annuity or the life annuity to you in greater detail. You will be given the option of waiving the joint and survivor annuity or the life annuity form of payment during the 180-day period before the annuity is to begin. IF YOU ARE MARRIED, YOUR SPOUSE MUST IRREVOCABLY CONSENT IN WRITING TO THE WAIVER IN THE PRESENCE OF A NOTARY OR A PLAN REPRESENTATIVE. You may revoke any waiver. The Administrator will provide you with forms to make these elections. Since your spouse participates in these elections, you must immediately inform the Administrator of any change in your marital status.

If your vested account balance exceeds $5,000 and you and your spouse elect not to take a joint and survivor annuity, or if you are not married when your benefits are scheduled to begin and have elected not to take a life annuity, you may elect to receive a distribution of your vested account balance in an alternative form of payment. This payment may be made in one of the following methods:

- a single lump-sum payment

- the purchase of a different form of annuity

You should review the Article in the SPD entitled "Benefits and Distributions Upon Termination of Employment" for a further explanation of the rules associated with the payment of benefits.

**Q.** What if I stop working before I retire?

**A.** **100% vested contributions.** You are always 100% vested (which means that you are entitled to all of the amounts) in your accounts attributable to the following contributions:

- salary deferrals including catch-up contributions

- rollover contributions

**Vesting schedules.** Your "vested percentage" for certain Employer contributions is based on vesting Years of Service. This means at the time you stop working, your account balance (attributable to contributions subject to a vesting schedule) is multiplied by your vested percentage. The result, when added to the amounts that are always 100% vested as shown above, is your vested interest in the Plan, which is what you will actually receive from the Plan. You will always, however, be 100% vested if you are employed on or after your Normal Retirement Age, or if you die or become disabled while employed by your Employer.

Your "vested percentage" in your account attributable to profit sharing contributions is determined under the following schedule.

<table>
<tr><td colspan="2" align="center">Vesting Schedule<br>Profit Sharing Contributions</td></tr>
<tr><td align="center">Years of Service</td><td align="center">Percentage</td></tr>
<tr><td align="center">Less than 2</td><td align="center">0%</td></tr>
<tr><td align="center">2</td><td align="center">20%</td></tr>
<tr><td align="center">3</td><td align="center">40%</td></tr>
<tr><td align="center">4</td><td align="center">60%</td></tr>
<tr><td align="center">5</td><td align="center">80%</td></tr>
<tr><td align="center">6</td><td align="center">100%</td></tr>
</table>

If you have completed an Hour of Service in a Plan Year beginning after December 31, 2001, then your "vested percentage" in your account attributable to matching contributions made for Plan Years beginning after December 31, 2001, is determined under the following schedule.

<table>
<tr><td colspan="2" align="center">Vesting Schedule<br>Matching Contributions</td></tr>
<tr><td align="center">Years of Service</td><td align="center">Percentage</td></tr>
<tr><td align="center">Less than 2</td><td align="center">0%</td></tr>
<tr><td align="center">2</td><td align="center">20%</td></tr>
<tr><td align="center">3</td><td align="center">40%</td></tr>
<tr><td align="center">4</td><td align="center">60%</td></tr>
<tr><td align="center">5</td><td align="center">80%</td></tr>
<tr><td align="center">6</td><td align="center">100%</td></tr>
</table>

However, the vesting schedule above will only apply to matching contributions that are made to the Plan in Plan Years beginning after December 31, 2001.

**Q.** If I stop working before retirement, when will my vested amount be paid?

**A.** If your employment terminates for reasons other than death, disability, or normal retirement, you will be entitled to receive only the "vested percentage" of your account balance.

You may elect to have your vested account balance distributed to you as soon as administratively feasible following your termination of employment. (See the question entitled "How will my benefits be paid to me?" for additional information.)

**Q.** What if I die before I retire?

**A.** Your beneficiary will be entitled to 100% of your interest in the Plan upon your death. If you are single, you may name anyone you like to be your beneficiary. If you are married, your spouse is your beneficiary with respect to 100% of your death benefit unless you and your spouse name someone else as your beneficiary for this portion of your death benefit. You may name anyone you like to be the beneficiary for the remaining portion of your death benefit. You should review the question entitled "Who is the beneficiary of my death benefit?" in the Article entitled "Benefits and Distributions Upon Death".

**Q.** Can I withdraw money from the Plan while I'm still working?

**A.** The Plan is designed to pay benefits at retirement. The Plan does not generally allow payments to be made while you are still working for the Employer.

However, in certain instances you may receive an in-service distribution if you incur a financial hardship. This hardship distribution is not in addition to your other benefits and will therefore reduce the value of the benefits you will receive at retirement.

There are various rules and restrictions regarding withdrawing money from your accounts in the Plan while you are still employed. Please review the SPD for more information on these rules and restrictions.

NOTE: THESE QUESTIONS AND ANSWERS ARE NOT MEANT TO BE A SUBSTITUTE FOR A THOROUGH READING OF THE SUMMARY PLAN DESCRIPTION. THE PROVISIONS OF THE 401(k) PLAN ARE VERY COMPLEX. IT IS NOT POSSIBLE TO FULLY EXPLAIN ALL ASPECTS OF THE PLAN IN THESE SHORT QUESTIONS AND ANSWERS. YOU SHOULD ALWAYS CONSULT THE SUMMARY PLAN DESCRIPTION IF YOU HAVE ANY QUESTIONS ABOUT THE PLAN. IF, AFTER READING THE SUMMARY PLAN DESCRIPTION, YOU STILL HAVE QUESTIONS, YOU SHOULD CONTACT THE PLAN ADMINISTRATOR.

# EXHIBIT B-1

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT Northern District of California | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Humboldt Creamery, LLC | Case Number: 09-11078 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Mona Daly | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>Mona Daly<br>P.O. Box 454<br>Fortuna, CA 95540-0454<br><br>**FILED**<br>**MAY – 4 2009**<br>**U.S. BANKRUPTCY COURT**<br>**SANTA ROSA, CA**<br><br>Telephone number: (707) 733-9557 | Court Claim Number:_____<br>(*If known*)<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

**1. Amount of Claim as of Date Case Filed:** $ 12,500.00

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Retirement Fund
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** 2779

**3a. Debtor may have scheduled account as:** Mona Windsor
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
**Describe:**

**Value of Property:** $_____ **Annual Interest Rate** ____%

**Amount of arrearage and other charges as of time case filed included in secured claim,**
if any: $_____ **Basis for perfection:** _____

**Amount of Secured Claim:** $_____ **Amount Unsecured:** $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☑ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507(a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

**Amount entitled to priority:**

$ 12,500.00

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

| Date: 5/2/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.   *Mona J Daly* | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

001283

# EXHIBIT B-2

Case: 09-11078    Doc# 360-2    Filed: 11/25/09    Entered: 11/25/09 23:53:03    Page 30 of 56

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT Northern District of California | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Humboldt Creamery, LLC | Case Number: 09-11078 |
|---|---|

**NOTE:** *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Craig Vevoda

Name and address where notices should be sent:
Craig Vevoda
~~Petty Cash Reimbursement~~
~~1270 Shaw Rd~~
~~Stockton, CA 95215-4016~~
2130 Lusitano St.
Danville, CA 94506

FILED
AUG 18 2009
U.S. BANKRUPTCY COURT
SANTA ROSA CA

Telephone number: Cell (925)-768-0781

☑ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)
- See attachment No. 4

Filed on: May 20, 2009

Name and address where payment should be sent (if different from above): Craig Vevoda
3451 Yosemite
El Cerrito, CA 94530

3451 Yosemite #C
El Cerrito, CA 94530

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 45,909.24

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Accrued Vacation, 401(k) Contribution (2008) & Severance
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☐ Other
Describe:

Value of Property: $_____ Annual Interest Rate ___%

Amount of arrearage and other charges as of time case filed included in secured claim, if any: $_____ Basis for perfection: _____

Amount of Secured Claim: $_____ Amount Unsecured: $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☑ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507 (a)(4).

☑ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**
$ 45,909.24

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

Date: 8/7/09 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | FOR COURT USE ONLY

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Craig Vevoda
2130 Lusitano St.
Danville, CA 94506

United States Bankruptcy Court
99 South E Street
Santa Rosa, CA 95404

August 17, 2009

To Whom It May Concern;

I am sending an amended claim to the one that I initially filed on May 20, 2009(see attachment 4). At this time I am claiming that I was not paid my accrued vacation of $9,159.24 (see attachment 2). Also, I have not received the 2008, $5,500.00 contribution towards my 401(k). The company had a contractual obligation under my employment agreement (see attachment 3 No. 8) to provide this. Per my employment contract I should have been entitled to 3 months of severance pay which I did not receive. The DSD routes domiciled in Stockton were sold prior to my position being eliminated and the acquiring entity did not retain me. There was a contractual obligation to pay me 3 months of severance for a sum of $31,250.00 (see attachment 3 No. 15). The total of my claim is $45,909.24.

Can you please send me a copy of the filed claim. I have provided a self addressed envelope in order for you to do this.

Thank you for your consideration,

Craig Vevoda

**Craig Vevoda**
**Accured Vacation, Pension and Servance**

|                        | Amount       | Support Document        |
|------------------------|--------------|-------------------------|
| Annual Salary          | $125,000     | Attachment 1            |
| Hourly Rate            | $60.10       | $125,000/2080 hrs/yr    |
| Monthly Rate           | $10,416.67   | $125,000/12 months      |
|                        | Amount Owed  |                         |
| Accrued Vacation       | $9,159.24    | Attachment 2            |
| Pension Contribution   | $5,500       | Attachment 3 No. 8      |
| Severance              | $31,250.00   | Attachment 3 No. 15     |
| **Total**              | **$45,909.24** |                       |

Attachment No. 1

**Humboldt Creamery**                                                60   -

|  | HOURS | UNITS | RATE | EARNINGS | OTHER $ | |
|--|-------|-------|------|----------|---------|--|
| REGULAR | 88.00 | | 60.100 | 5,288.80 | | 5,288.80 |

TOTAL EARNINGS   ****5,288.80

**Humboldt Creamery**  572 HIGHWAY 1, FORTUNA, CA 95540

| PERIOD ENDING | EMPLOYEE NO. | | EMPLOYEE NAME | | | CHECK DATE | CHECK NO. | EIC |
|---------------|--------------|--|---------------|--|--|------------|-----------|-----|
| 5/15/09 | 000000027 | | CRAIG P VEVODA | | | 5/18/09 | 30236 | .00 |
| | | | CURRENT PERIOD | | | | | |

| GROSS | FEDERAL | FICA SS | FICA MC | STATE | SDI | OTHER | NET |
|-------|---------|---------|---------|-------|-----|-------|-----|
| 5,288.80 | 624.28 | 327.91 | 76.69 | 254.79 | 58.18 | | 3,946.95 |

YEAR-TO-DATE

| GROSS | FEDERAL | FICA SS | FICA MC | STATE | SDI | | EIC |
|-------|---------|---------|---------|-------|-----|--|-----|
| 52,163.77 | 6,250.33 | 3,234.19 | 756.37 | 2,351.71 | 573.79 | | |

# HUMBOLDT CREAMERY ASSOCIATION
## 2009
### EMPLOYEE DATA CALENDAR

Name: **VEVODA, CRAIG**

Employed: **10/7/2002**

DOB: **4/19/1953**

Phone #: **(925) 964-9694**

Employee No.: **27**

Department: **70**

Social Security #: ██████**8430**

Address: **9724 BELLADONNA DRIVE**

**SAN RAMON, CA 94582**

## RECORD OF VACATION AND SICK LEAVE

| MONTH & YEAR | VACATION | | | SICK LEAVE | | |
| --- | --- | --- | --- | --- | --- | --- |
| | HOURS EARNED | HOURS TAKEN | BALANCE | HOURS EARNED | HOURS TAKEN | BALANCE |
| Balance Brought Forward | | | 134.40 | | | 64.00 |
| January | 10.00 | | 144.40 | 4.00 | | 68.00 |
| February | | 24.00 | 120.40 | 4.00 | | 72.00 |
| March        Vacation | 10.00 | | 136.40 | 4.00 | | 76.00 |
|                    Float | 8.00 | | | | | |
|             Birthday - Vac | 17.03 | 16.00 | 146.43 | 4.00 | | 80.00 |
| April | 2.97 | | 2.97 | | | 80.00 |
| May | 5.94 | 8.91 | 0.00 | | | 80.00 |
| June | | | 0.00 | | | 80.00 |
| July | | | 0.00 | | | 80.00 |
| August | | | 0.00 | | | 80.00 |
| September | | | 0.00 | | | 80.00 |
| October | | | 0.00 | | | 80.00 |
| November | | | 0.00 | | | 80.00 |
| December | | | 0.00 | | | 80.00 |
| TOTALS: | | | 139.43 | | | 80.00 |

## COMMENTS

**Paid 8.91 @ May 18, 2009**

LAST DAY    5/18/2009

149.43 hrs x $60.10/hr = $8980.74

2.97 hrs x 60.10/hr = 178.5...

# EMPLOYMENT AGREEMENT
# WITH HUMBOLDT CREAMERY ASSOCIATION

This employment agreement is effective as of September 29, 2002 between the Humboldt Creamery Association (hereinafter referred to as "Humboldt Creamery"), and Craig P. Vevoda (hereinafter referred to as "Vevoda").

A. Humboldt Creamery desires assurance of the continued association and services of Vevoda. In order to obtain Vevoda's experience, abilities and knowledge, Humboldt Creamery is therefore willing to engage Vevoda's services on the terms and conditions set forth below.

B. Vevoda desires to work for Humboldt Creamery and is willing to do so on the terms and conditions set forth below.

**THEREFORE**, in consideration of the above recitals and of the mutual promises and conditions in this agreement, it is agreed between Vevoda and Humboldt Creamery as follows:

1. This is at-will employment, which can be terminated by either party at anytime according to the provisions of this agreement.

2. Humboldt Creamery shall employ Vevoda to do such duties as will be assigned to Vevoda by the CEO/President of Humboldt Creamery. This assignment of duties will include what Vevoda shall and shall not do on behalf of the Humboldt Creamery as outlined in the 'MOO'vin Ice Cream General Manager job description (Exhibit "A").

3. During Vevoda's employment with Humboldt Creamery, Vevoda shall devote his full business time, energy and ability exclusively to the business and interests of Humboldt Creamery, and shall not, without Humboldt Creamery's prior written consent, render to others service of any kind for compensation or engage in any other business activity that would materially interfere with the performance of Vevoda's duties for Humboldt Creamery. Vevoda represents to Humboldt Creamery that he has no other commitments inconsistent with any of the terms of this agreement or the services to be rendered under it.

4. During the term of this agreement, Humboldt Creamery agrees to pay Vevoda a salary of at least $80,000 per year. This salary shall be payable as current salary in semi-monthly installments subject to all applicable withholding and deductions. The Board of Directors of Humboldt Creamery, with recommendations from the CEO/President, shall review Vevoda's salary then being paid to Vevoda not less frequently than every twelve (12) months.

5. In addition to the salary provided in paragraph 4 herein, Humboldt Creamery may choose to annually provide Vevoda a bonus from zero (0) percent to twenty (20) percent of that base salary amount should, in the discretion of the CEO/President, Vevoda and

the Company successfully complete and reach various business-related goals and accomplishments as pre-designated by Humboldt Creamery. These goals will be sixty percent (60%) personal and forty percent (40%) Company-related. Vevoda will not be eligible to earn this performance-based bonus in 2002 but will qualify to earn a bonus in the 2003 calendar year.

6. As an employee of Humboldt Creamery, Vevoda shall be entitled to receive the following holidays off as designated by Humboldt Creamery:

| | |
|---|---|
| Jan (New Years Day) | Sept (Labor Day) |
| May (Memorial Day) | Nov (Thanksgiving Day) |
| Jul (Independence Day) | Dec (Christmas Day) |
| Birthday | Floating Holiday (1 Day) |

7. As an employee of the Humboldt Creamery, Vevoda will be entitled to receive Medical, Dental, Vision, and Travel Insurance benefits as generally available to Humboldt Creamery's managerial employees. The cost of these benefits shall be covered by Humboldt Creamery.

8. As an employee of Humboldt Creamery, Vevoda shall be entitled to receive pension benefits as described in the Summary Plan Description (Exhibit "B") generally available to Humboldt Creamery's managerial employees. Humboldt Creamery shall, on behalf of Vevoda, contribute annually for each full year worked by Vevoda, up to $5,500 towards the pension plan (calculated at ten (10) percent of Vevoda's base salary, up to but not exceeding $5,500 per year).

9. Vevoda shall be entitled to three (3) weeks of paid vacation each twelve-month period, which shall accrue on a pro rata basis from the date Vevoda's employment commences with Humboldt Creamery. Vacation time will continue to accrue so long as Vevoda's total accrued vacation does not exceed twelve (12) weeks. Should Vevoda's accrued vacation time reach twelve (12) weeks, Vevoda will cease to accrue further vacation until Vevoda's accrued vacation falls below that twelve-week level.

10. Vevoda shall be entitled to earn up to four (4) hours of paid sick leave per each calendar month of full time employment. Vevoda shall accumulate sick leave to a maximum of forty (40) hours per calendar year, up to a maximum of 400 hours and in no event shall sick leave accumulate in excess of 400 hours. Accumulated sick leave to Vevoda shall have no termination value. Upon termination of Vevoda's employment with Humboldt Creamery, for any reason, Vevoda shall not be entitled to any compensation or consideration for accumulated sick leave.

11. Humboldt Creamery reserves the right to modify any and all of the benefit plans and policies at any time, so long as such action is also generally taken with respect to other similarly situated Humboldt Creamery employees.

12. Humboldt Creamery will reimburse Vevoda for reasonable business expenses which satisfy the criteria under the Internal Revenue Code for deductibility by Humboldt

Creamery for travel, parking, business meetings and similar expenses, made and substantiated in accordance with the policies and procedures established from time to time by Humboldt Creamery. Humboldt Creamery will initially reimburse Vevoda for mileage at the rate of $0.365 per mile and will supply Vevoda with a company car, which will be maintained by Humboldt Creamery, as soon as practicable.

13. As part of Vevoda's employment with Humboldt Creamery, Vevoda will have access to trade secrets and customer lists. For three years after termination of employment with Humboldt Creamery, Vevoda shall not disclose Humboldt Creamery's trade secrets and/or customer lists anywhere or to anyone with respect to product sales.

14. Vevoda or Humboldt Creamery may terminate this agreement by giving the other two (2) months prior written notice. Humboldt Creamery may terminate this agreement at any time without notice for inadequate job performance as determined by the CEO/President, or if Vevoda commits any material act of dishonesty, discloses confidential information, is guilty of misconduct or gross carelessness, unjustifiably neglects his/her duties, or acts in any way that has a direct, substantial and adverse effect on Humboldt Creamery's reputation or business.

15. In the event of a merger in which Humboldt Creamery is not the surviving entity, or of a sale of all or substantially all of Humboldt Creamery's assets, Humboldt Creamery may (1) assign this agreement and all rights and obligations under it to any business entity that succeeds to all or substantially all of Humboldt Creamery's business through that merger or sale of assets, or (2) with at least thirty (30) days prior written notice to Vevoda terminate this agreement effective on the date of the merger or sale of assets. Should Humboldt Creamery exercise option (1) of this paragraph and should the business entity which has been assigned Vevoda's employment agreement choose not to employ Vevoda for a period of at least three (3) months, Humboldt Creamery will pay Vevoda his base salary for any portion of the three (3) month period during which Vevoda is terminated from employment with the new entity prior to his working with that new entity for at least three (3) months.

16. There must be acquiescence by the parties hereto in writing in order for any changes to be made to this employment agreement.

_____          _____
CEO/President                       Craig P. Vevoda
For Humboldt Creamery Association

_____          Sept. 25, 2002
Date                                Date

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT Northern District of California | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Humboldt Creamery, LLC | Case Number: 09-11078 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Vevoda Craig

Name and address where notices should be sent:
Vevoda Craig
2130 Lusitano
Danville, CA 94506-5023

**ORIGINAL FILED**

**MAY 2 0 2009**

U.S. BANKRUPTCY COURT
SANTA ROSA, CA

Telephone number: Home 925 964-9694 (cell) 925-768-0781

Name and address where payment should be sent (if different from above):

**ORIGINAL FILED**

**AUG 2 0 2009**

U.S. BANKRUPTCY COURT
SANTA ROSA, CA

Telephone number:

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
*(If known)*

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed: $19,397.40

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim: Accrued Vacation & Severance
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____

    3a. Debtor may have scheduled account as: _____
    (See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☐ Other
Describe:

Value of Property: $_____ Annual Interest Rate ___ %

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $_____ Basis for perfection: _____

Amount of Secured Claim: $_____ Amount Unsecured: $_____

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☑ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

Amount entitled to priority:

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | FOR COURT USE ONLY |
|---|---|---|
| Date: 5/9/09 | Craig Vevoda | |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# EXHIBIT B-3

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT Northern District of California | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Humboldt Creamery, LLC | Case Number: 09-11078 |
|---|---|

**NOTE:** *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
David Hayes

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
David Hayes
2280 French Street
Livermore, CA 94550-7370

**Court Claim Number:**_____
*(If known)*

FILED

JUN 02 2009

U.S. BANKRUPTCY COURT
SANTA ROSA, CA

Filed on:_____

Telephone number:

Name and address where payment should be sent (if different from above):

Same

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number:

**1. Amount of Claim as of Date Case Filed:** $ 4,119.30

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Services performed - vacation pay
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

    **3a. Debtor may have scheduled account as:** _____
    (See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe:

**Value of Property:** $_____ **Annual Interest Rate**___%

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any:** $_____ **Basis for perfection:** _____

**Amount of Secured Claim:** $_____ **Amount Unsecured:** $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☑ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$ 4,119.30

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 6/1/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. DAVID K. Hayes *David K. Hayes* | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**B10 (Official Form 10) (12/08) - Cont.**

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a):**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

### DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)** Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

### INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

# HUMBOLDT CREAMERY ASSOCIATION
## 2008
### EMPLOYEE DATA CALENDAR

Name: HAYES, DAVID

Employed: 3/23/2007

DOB: 12/31/1954

Phone #: (925) 606-8425

Employee No.: 1340

Department: 61

Social Security #:

Address: ~~6492 ALTAMAR CIRCLE~~

LIVERMORE, CA 94551

*(3 weeks a year)*

*10 days taken*

*2007*

*2008*

*2008*

*3*

### RECORD OF VACATION AND SICK LEAVE

| MONTH & YEAR | VACATION | | | SICK LEAVE | | | |
|---|---|---|---|---|---|---|---|
| | HOURS EARNED | HOURS TAKEN | BALANCE | HOURS EARNED | HOURS TAKEN | | BALANCE |
| Balance Brought Forward | | | 99.65 | | | | 44.00 |
| January | 10.00 | | 109.65 | 4.00 | | | 48.00 |
| February | 10.00 | 8.00 | 111.65 | 4.00 | | | 52.00 |
| March    Vacation    Float | 10.00   8.00 | | 129.65 | 4.00 | | | 56.00 |
| April | 10.00 | | 139.65 | 4.00 | | | 60.00 |
| May | 10.00 | | 149.65 | 4.00 | | | 64.00 |
| June | 10.00 | | 159.65 | 4.00 | | | 68.00 |
| July | 10.00 | | 169.65 | 4.00 | | | 72.00 |
| August | 10.00 | 8.00 | 171.65 | 4.00 | | | 76.00 |
| September | 10.00 | 24.00 | 157.65 | 4.00 | | | 80.00 |
| October | 10.00 | | 167.65 | 4.00 | | | 84.00 |
| November | 10.00 | 32.00   8.00 | 137.65 | 4.00 | | | 88.00 |
| December | 10.00 | | 147.65 | 4.00 | | | 92.00 |
| TOTALS: | *10 days* 168 | 80 | 147.65 | | *0* | | 92.00 |

*(11 days left over)*

**COMMENTS**

## Humboldt Creamery Association
## Management Vacation Request Form

*(3 days)*

**Name:** DAVID HAYES

**Date:** JULY 9TH thru JULY 11TH, 200_

Employee Signature: *DAVID HAYES*

Approved by Supervisor: _____

### Vacation Request Procedure

1. Employee to complete vacation request form with name, vacation dates requested and signature.

2. Employee to give completed request form to Supervisor for approval.

3. Supervisor will give completed form to to the Office Manager who will notify employee via email that the request has been approved.

If your request is not approved, your supervisor will return it to you.

---

## Humboldt Creamery Association
## Management Vacation Request Form

**Name:** _____

**Date:** _____

Employee Signature: _____

Approved by Supervisor: _____

### Vacation Request Procedure

1. Employee to complete vacation request form with name, vacation dates requested and signature.

2. Employee to give completed request form to Supervisor for approval.

3. Supervisor will give completed form to to the Office Manager who will notify employee via email that the request has been approved.

If your request is not approved, your supervisor will return it to you.

**NAME** : DAVID HAYES

**DATE** : Dec. 28th, Dec. 31st. & Jan. 2nd (3 days)

*DAVID HAYES*
**Employee Signature:**

_____

**Approved by Supervisor:**

_____

---

## Vacation Request Procedure

1. Employee to complete vacation request form with name, vacation dates requested and signature.

2. Employee to give completed request form to Supervisor for approval.

3. Supervisor will give completed form to the Office Manager who will notify employee via email that the request has been approved.

If your request is not approved, your supervisor will return it to you.

*3 days*

**NAME** : DAVID HAYES

**DATE** : THURSDAY, SEPT. 18, 19TH & 22nd, 2008

DAVID HAYES
**Employee Signature:**

**Approved by Supervisor:**

---

## Vacation Request Procedure

1   Employee to complete vacation request form
with name, vacation dates requested and
signature.

2   Employee to give completed request form
to Supervisor for approval.

3   Supervisor will give completed form to the
Office Manager who will notify employee
via email that the request has been approved.

If your request is not approved, your
supervisor will return it to you.

**NAME** : DAVID HAYES

**DATE** : TUESDAY, AUGUST 26TH, 2008

DAVID HAYES
**Employee Signature:**

**Approved by Supervisor:**

---

| **Vacation Request Procedure** |
| --- |

1. Employee to complete vacation request form with name, vacation dates requested and signature.

2. Employee to give completed request form to Supervisor for approval.

3. Supervisor will give completed form to the Office Manager who will notify employee via email that the request has been approved.

   If your request is not approved, your supervisor will return it to you.

**NAME** : DAVID HAYES

**DATE** : THURSDAY, OCT. 23RD - NOV. 6TH, 2008

DAVID HAYES
**Employee Signature:**

**Approved by Supervisor:**

---

## Vacation Request Procedure

1  Employee to complete vacation request form with name, vacation dates requested and signature.

2  Employee to give completed request form to Supervisor for approval.

3  Supervisor will give completed form to the Office Manager who will notify employee via email that the request has been approved.

If your request is not approved, your supervisor will return it to you.

# HUMBOLDT CREAMERY ASSOCIATION
## 2009
### EMPLOYEE DATA CALENDAR

| | | | | |
|---|---|---|---|---|
| Name: | HAYES, DAVID | Employee No.: | 1340 | |
| Employed: | 3/23/2007 | Department: | 61 | |
| DOB: | 12/31/1954 | Social Security #: | | |
| Phone #: | (925) 606-8425 | Address: | 2280 FRENCH STREET | |
| | | | LIVERMORE, CA 94550 | |

( 3 weeks a year )

## RECORD OF VACATION AND SICK LEAVE

| MONTH & YEAR | VACATION | | | SICK LEAVE | | |
|---|---|---|---|---|---|---|
| | HOURS EARNED | HOURS TAKEN | BALANCE | HOURS EARNED | HOURS TAKEN | BALANCE |
| Balance Brought Forward | | | 147.65 | | | 92.00 |
| January | 10.00 | | 157.65 | 4.00 | | 96.00 |
| February | 10.00 | | 167.65 | 4.00 | | 100.00 |
| March     Vacation Float | 10.00 8.00 | | 185.65 | 4.00 | | 104.00 |
| Thru April 21, 2009 April | 7.03 2.97 | | 192.68 2.97 | 4.00 | | 108.00 |
| May | | | 2.97 | | | 108.00 |
| June | | | 2.97 | | | 108.00 |
| July | | | 2.97 | | | 108.00 |
| August | | | 2.97 | | | 108.00 |
| September | | | 2.97 | | | 108.00 |
| October | | | 2.97 | | | 108.00 |
| November | | | 2.97 | | | 108.00 |
| December     Birthday | | | 2.97 | | | 108.00 |
| TOTALS: | | 0 | 195.65 | | 0 | 108.00 |

## COMMENTS

HC Pension Plan Company Contribution - 4300.01

Total Vacation days   42
Vacation taken   21

LAST DAY                        21 days due

Humboldt Creamery                                    61  -

| | HOURS | UNITS | RATE | EARNINGS | OTHER $ |
|---|---|---|---|---|---|
| REGULAR · | 8.00 | | 20.670 | 165.36 | 165.36 |
| VACATION | 13.30 | | 20.670 | 274.91 | 274.91 |

TOTAL EARNINGS   ******440.27



*April 22-2009*
*June 1ST, 2009*

**Humboldt Creamery**  572 HIGHWAY 1, FORTUNA, CA 95540

| PERIOD ENDING | EMPLOYEE NO. | | EMPLOYEE NAME | | CHECK DATE | CHECK NO. | EIC |
|---|---|---|---|---|---|---|---|
| 6/15/09 | 000001340 | DAVID K HAYES | | | 6/01/09 | 30444 | .00 |
| | | | CURRENT PERIOD | | | | |

| GROSS | FEDERAL | FICA SS | FICA MC | STATE | SDI | OTHER | NET |
|---|---|---|---|---|---|---|---|
| 440.27 | .00 | 27.30 | 6.38 | .00 | 4.84 | | 401.75 |

YEAR-TO-DATE

| GROSS | FEDERAL | FICA SS | FICA MC | STATE | SDI | | EIC |
|---|---|---|---|---|---|---|---|
| 21,748.65 | 2,142.57 | 1,348.38 | 315.36 | 604.36 | 239.25 | | |

# EXHIBIT B-4

| UNITED STATES BANKRUPTCY COURT Northern District of California | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Humboldt Creamery, LLC | Case Number: 09-11078 |
|---|---|

**NOTE:** *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Anthony Titus

Name and address where notices should be sent:
Anthony Titus
P.O. Box 938
Ferndale, CA 95536-0938

FILED

JUL 15 2009

U.S. BANKRUPTCY COURT
SANTA ROSA, CA

Telephone number: (707) 786-9838

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 7,530.98

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Employee accrued vacation + retirement plan Contribution
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** 8291

**3a. Debtor may have scheduled account as:** Emp # 5
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

**Value of Property:** $ _____  **Annual Interest Rate** ___ %

**Amount of arrearage and other charges as of time case filed included in secured claim,**

if any: $ _____  **Basis for perfection:** _____

**Amount of Secured Claim:** $ _____  **Amount Unsecured:** $ _____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☒ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☒ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$ 7,530.98

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

| Date: 7/11/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. *Anthony Titus* | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## HUMBOLDT CREAMERY ASSOCIATION
## 2009
## EMPLOYEE DATA CALENDAR

| | | | |
|---|---|---|---|
| Name: | TITUS, ANTHONY | Employee No.: | 5 |
| Employed: | 3/19/2001 | Department: | 60 |
| DOB: | 11/9/1956 | Social Security #: | 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 |
| Phone #: | (707) 786-9838 | Address: | P.O. BOX 938 |
| | | | FERNDALE, CA 95536 |

### RECORD OF VACATION AND SICK LEAVE

| MONTH & YEAR | VACATION | | | SICK LEAVE | | |
|---|---|---|---|---|---|---|
| | HOURS EARNED | HOURS TAKEN | BALANCE | HOURS EARNED | HOURS TAKEN | BALANCE |
| Balance Brought Forward | | | -4.00 | | | 304.00 |
| January | 10.00 | | 6.00 | 4.00 | | 308.00 |
| February | 10.00 | | 16.00 | 4.00 | | 312.00 |
| March      Vacation Float | 10.00 8.00 | | 34.00 | 4.00 | | 316.00 |
| April | 2.97 | | 2.97 | 4.00 | | 320.00 |
| May | | | 2.97 | | | 320.00 |
| June | | | 2.97 | | | 320.00 |
| July | | | 2.97 | | | 320.00 |
| August | | | 2.97 | | | 320.00 |
| September | | | 2.97 | | | 320.00 |
| October | | | 2.97 | | | 320.00 |
| November      Birthday | | | 2.97 | | | 320.00 |
| December | | | 2.97 | | | 320.00 |
| TOTALS: | | | 44.00 | | | 320.00 |

### COMMENTS

HC Pension Plan Company Contribution - 5500.00

Accrued Vacation

41.03 HR @ 49⁵⁴/HR = 2030.98

LAST DAY

TOTAL CLAIM          $ 7530.98

# EXHIBIT B-5

B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Humboldt Creamery | Case Number: 09-11078 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| **Name of Creditor** (the person or other entity to whom the debtor owes money or property): Paul Adams | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| **Name and address where notices should be sent:** P.O. Box 1022 Ferndale Ca 95536 | **Court Claim Number:** _____ (*If known*) |
| **Telephone number:** 707-786-9872 | **Filed on:** _____ |
| **Name and address where payment should be sent** (if different from above): **Telephone number:** | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| | ☐ Check this box if you are the debtor or trustee in this case. |

FILED
JUL 17 2009
U.S. BANKRUPTCY COURT
SANTA ROSA, CA

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:** $_____ | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.** |
| If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. | |
| If all or part of your claim is entitled to priority, complete item 5. | Specify the priority of the claim. |
| ☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **2. Basis for Claim:** Vaccetion / pension (See instruction #2 on reverse side.) | ☑ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| **3. Last four digits of any number by which creditor identifies debtor:** _____ | |
| **3a. Debtor may have scheduled account as:** _____ (See instruction #3a on reverse side.) | |
| **4. Secured Claim** (See instruction #4 on reverse side.) Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information. | ☑ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5). |
| **Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☐ Other **Describe:** | ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7). |
| **Value of Property:** $_____ **Annual Interest Rate** _____% | |
| **Amount of arrearage and other charges as of time case filed included in secured claim, if any:** $_____ **Basis for perfection:** _____ | ☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| **Amount of Secured Claim:** $_____ **Amount Unsecured:** $_____ | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___). |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | **Amount entitled to priority:** $ 15,303.72 |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*) DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING. If the documents are not available, please explain: | *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

| Date: 7/16/09 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. Paul Adams | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## HUMBOLDT CREAMERY ASSOCIATION
## 2009
### EMPLOYEE DATA CALENDAR

Name: ADAMS, PAUL

Employed: 6/27/1994

DOB: 9/2/1960

Phone #: (707) 786-9872

Employee No.: 51

Department: 69

Social Security #: 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

Address: P.O. BOX 1022

FERNDALE, CA 95536

| MONTH & YEAR | PRE-PETITION VACATION | | | POST-PETITION VACATION | | |
|---|---|---|---|---|---|---|
| | HOURS EARNED | HOURS TAKEN | BALANCE | HOURS EARNED | HOURS TAKEN | BALANCE |
| **Balance Brought Forward** | | | **286.53** | | | **0.00** |
| January | 13.30 | 24.00 | **275.83** | | | **0.00** |
| February | 13.30 | | **289.13** | | | **0.00** |
| March   Vacation 13.30   Float | 8.00 | 16.00 | **294.43** | | | **0.00** |
| April | | 8.00 | **295.89** | 3.87 | | **3.87** |
| May | | 8.00 | **287.89** | 13.30 | | **17.17** |
| June | | 16.00 | **271.89** | 13.30 | | **30.47** |
| July | | | **271.89** | 13.30 | | **43.77** |
| August | | | **271.89** | | | **43.77** |
| September   Birthday | | | **271.89** | | | **43.77** |
| October | | | **271.89** | | | **43.77** |
| November | | | **271.89** | | | **43.77** |
| December | | | **271.89** | | | **43.77** |
| TOTALS: | | | **271.89** | | | **43.77** |

### RECORD OF VACATION

COMMENTS   36.05

HC Pension Plan Company Contribution - 5500.00

LAST DAY   271.89 hrs × 36.05 hr = 9803.72